# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL B. KESLOSKY, III,** | : | **No. 3:08cv1240** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF OLD FORGE,** | : | |
| **BOROUGH OF OLD FORGE** | : | |
| **COUNCIL,** | : | |
| **BOROUGH OF OLD FORGE POLICE** | : | |
| **DEPARTMENT,** | : | |
| **LAWARENCE A. SMENZA,** | : | |
| **ANTHONY J. TORQUATO, JR.,** | : | |
| **DAVID SCARNATO,** | : | |
| **JAMES J. PEPERNO, JR.** | : | |
| **ALAN HEYEN,** | : | |
| **SHIRLEY HELBING,** | : | |
| **JAMES P. MINELLA,** | : | |
| **OLD FORGE BOROUGH CIVIL** | : | |
| **SERVICE COMMISSION, and** | : | |
| **OLD FORGE BOROUGH POLICE** | : | |
| **OFFICERS' ASSOCIATION,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court are defendants' motions (Docs. 18, 26) to dismiss the

plaintiff's complaint. Having been fully briefed, the matter is ripe for disposition.

**Background**[1]

This case arises out of plaintiff's employment as a police officer with

_____

[1]The court takes the facts related here from the plaintiff's amended complaint, but adopts no position on their veracity.

Defendant Borough of Old Forge.  (Amended Complaint (Doc. 35) (hereinafter "Amend. Complt.") at ¶ 20).  Plaintiff began working for the Borough as a police officer in 1979.  (Id. at ¶ 23).  In 1992 and 1993, he brought two federal court actions against the Borough, alleging discrimination.  (Id. at ¶ 24).  In the first of those cases, plaintiff gained partial summary judgment on a wrongful termination claim.  (Id. at ¶ 25).  The second case ended with an agreement that plaintiff could retain his status as a Borough police officer, and that no notice of his previous suspension or termination would remain in his file.  (Id. at ¶ 26).

Plaintiff's return to the police force was not easy, however.  Borough officials made it difficult for plaintiff to obtain the training necessary to resume working, and union officials refused to let plaintiff pay back dues and then filed a grievance that attempted to remove him from the force for failing to pay dues.  (Id. at ¶¶ 27-28). The union also prevented plaintiff from becoming a member of the local Police Association, which meant that he could not join the Fraternal Order of Police.  (Id. at ¶ 29).

Plaintiff finally returned to work in September 1997.  (Id. at ¶ 30).  Plaintiff was not given the duties of other police officers, however, and did not receive a key to the department as other officers did.  (Id. at ¶ 31).  Instead, he was assigned clerical tasks.  (Id.).  Plaintiff could not respond to calls unless called by another officer.  (Id. at ¶ 32).  He was required to work alone.  (Id. at ¶ 36).  He was told not to provide backup for any other departments in the area, and was not allowed to call for backup

2

himself.  (Id. at ¶ 34).  Other officers were restricted in their communications with plaintiff.  (Id. at ¶ 35).  The mayor and the Chief of Police told plaintiff that rank and seniority rules applied to everyone in the department but him.  (Id. at ¶ 33).

Plaintiff also suffered other forms of mistreatment and harassment from the police department.  After his return to work, police officers issued plaintiff numerous traffic citations, including 42 separate citations for driving a police vehicle while his license was suspended for failing to respond to an earlier citation.  (Id. at ¶ 37). Defendants also denied plaintiff promotion to sergeant.  (Id. ¶ 38).  Previous to plaintiff's application for the position, the Borough had always employed three sergeants.  (Id.).  Though the Borough's code requires a written exam for such promotion, two officers promoted previous to plaintiff were not required to take the test.  (Id.).  Plaintiff challenged these officers' promotions to the Borough Council and the Borough Civil Service Commission, arguing that the officers should be required to take a written exam, and that he be allowed to sit for the exam as well.  (Id.).  The Borough responded to plaintiff's request by eliminating the third sergeant's position. (Id.).

In March 1998, plaintiff responded to a domestic call in Old Forge.  (Id. at ¶ 39).  At the scene, the victim informed plaintiff that her husband had been taken from the scene by members of the Old Forge Police Department.  (Id.).  They took her husband to the police station, where he had a meeting with members of the department, including Defendant Officer Semenza.  (Id.).  The officers solicited a

false criminal charge against the plaintiff from this person. (Id.). When he learned of this attempt to file false criminal charges against him, plaintiff became violently ill. (Id.). He was forced to go to the emergency room at Wilkes-Barre General Hospital. (Id.).

Plaintiff did not return to work after this incident for several years, contending that he had suffered an injury in the form of "abnormal working conditions." (Id. at ¶ 40). In March 2001, plaintiff received a release from his doctor to return to work. (Id.). Plaintiff provided a copy of this release to his employer. (Id.). Plaintiff had filed a workers' compensation claim, and defendants did not call plaintiff back to work while that claim was pending. (Id.). Instead, they kept plaintiff on the payroll as an employee with paid benefits. (Id.). Defendants did not pay plaintiff a salary during this period, however. (Id.).

On June 17, 2003, the Borough of Old Forge notified plaintiff that it had instituted written charges against him for failing to report to work since May 10, 1998. (Id. at ¶ 41). The complaint alleged that plaintiff had exhausted all of his approved leave time and had not provided a release from a health care provider that established he was fit to return to work as a police officer. (Id.).

The Borough held "pre-determination" hearings in the plaintiff's case on August 19, 2003 and December 9, 2003. (Id. at ¶ 42). On December 18, 2003, the Borough council voted to return plaintiff to work unconditionally. (Id. at ¶ 43). The Borough based its decision on plaintiff's March 2, 2001 release to return to work and

4

an opinion from Dr. Michael Church issued on September 11, 2003.  (Id.).  Dr.

Church's opinion confirmed that plaintiff could return to work.  (Id.).  Though plaintiff

contends that the Borough Council's decision on his case was favorable, he

appealed that decision to the Old Forge Civil Service Commission on January 14,

2004.  (Id. at ¶ 44).  Plaintiff alleges that the written decision signed by the council

president, Defendant Heyden, did not accurately record the Council's vote, and the

findings of fact as recorded in the decision had adversely impacted plaintiff's future

employment and his back wages claim.  (Id.).  The Civil Service Commission–also a

defendant in this case–did not address plaintiff's appeal for almost two years.  (Id. at

¶ 45).  Finally, on December 22, 2005, the Commission addressed plaintiff's appeal

by opening the record in response to plaintiff's appeal of another employment-

related decision by the Council.  (Id.).

On December 19, 2003, the day after the Borough Council decided to return

plaintiff to active duty, the United States Army National Guard activated plaintiff for

duty and deployed him outside the jurisdiction of Pennsylvania.  (Id. at ¶ 46).

Plaintiff returned from the active duty assignment on July 1, 2004.  (Id. at ¶ 47).  He

returned to Old Forge and provided a timely written request for placement on the

police department's active duty roster.  (Id.).  On August 1, 2004, plaintiff notified the

Chief of Police that he had been released from active duty and requested immediate

placement on the active duty roster.  (Id. at ¶ 48).  The defendants refused these

requests and instead required plaintiff to undergo the physical and mental

examinations required of new hires. (Id. at ¶ 49). Plaintiff maintains that these requirements were unnecessary, and that he needed only to update certain certifications to be eligible to work. (Id.). The Borough refused to schedule updates for these certifications for plaintiff, and this refusal caused another certification required by the plaintiff to expire. (Id. at ¶ 50). The Borough refused to allow plaintiff to return to work without this certification. (Id.). The Borough's refusal to forward plaintiff's request for this certification unless plaintiff submitted to mental and physical examination, plaintiff alleges, violated the law. (Id. at ¶ 51).

On February 16, 2005, the Borough's manager, Margaret Mazza, notified the plaintiff that written charges had been filed seeking his removal as a police officer. (Id. at ¶ 52). The charges asserted that plaintiff had failed to comply with a state police training and education law and failed to attend scheduled physical and psychological exams necessary for certification. (Id.). The Borough Council held "pre-determination" hearings about this matter on March 15, 2005 and April 19, 2005. (Id. at ¶ 53). On June 15, 2005, the Council, at a hearing, adopted the charges against the plaintiff and voted to suspend plaintiff without pay and benefits until he complied with legal training and certification requirements. (Id.). At that same meeting, the Council voted to make Defendant Semenza Chief of Police. (Id.).

Plaintiff appealed this decision by the Borough Council as well. (Id. at ¶ 54). The Old Forge Civil Service Commission held hearings on August 18, 2005 and December 22, 2005. (Id.). On July 31, 2006, the Commission issued a decision

affirming the Borough Council's decision to suspend plaintiff without pay or benefits. (Id.). Plaintiff appealed this decision to the Lackawanna County Court of Common Pleas. (Id. at ¶ 55). As of the date of plaintiff's complaint, the Commission had refused to file the certified record with that court. (Id. at ¶ 56).

The Commission finally heard plaintiff's civil service appeal regarding promotions on October 22, 2007. (Id. at ¶ 57). This hearing came nearly ten years after plaintiff first complained about these promotions to chief and sergeant. (Id.). Though Old Forge regulations require a decision to be issued within thirty days of the hearing, the Commission has not yet done so. (Id.). The Commission's Chairman, Defendant James P. Minella, informed the plaintiff that he would never be promoted, and plaintiff alleges that these actions indicate that Minella supported attempts to prevent plaintiff from working as a police officer. (Id. at ¶ 58).

Defendant Peperno, Chairman of the Police Pension fund, allegedly mishandled police pension funds, using those funds to fund buyouts of a former Chief and Captain. (Id. at ¶ 61). Plaintiff complained "continually" in public forums about what he considered a mishandling of pension funds. (Id. at ¶ 62). Plaintiff contends that these complaints led Pepero to use his influence with the Old Forge Mayor, Chief of Police and members of the Police Officers' Association and Police Pension Fund to engineer the removal of plaintiff from his position as police officer. (Id. at ¶ 63). The plaintiff alleges that Defendant Peperno mislead the Borough Council about the need for these buyouts, perhaps in an effort to ensure that

Defendant Semenza became Chief of Police.  (Id. at ¶¶ 67-70).

Plaintiff filed his initial complaint on June 30, 2008.  (Doc. 1).  He filed an amended complaint on December 29, 2008.  The instant amended complaint consists of nine counts.  Court I alleges that defendants violated plaintiff's constitutional right to due process by failing to provide him with pre- and post-termination hearings before removing him from his job.  Court II alleges that defendants violated plaintiff's rights by retaliating against him for speaking publicly about the misuse of police pension funds and wrongdoing by the individual defendants.  Count III, brought pursuant to 42 U.S.C. § 1983, repeats these accusations that defendants violated plaintiff's due process and First Amendment rights.  Count IV, brought pursuant to 38 U.S.C. § 4301, asserts that defendants violated plaintiff's right to re-employment as a member of the Army National Guard when they prevented him from returning to officer duty after his deployment by manipulating training requirements.  Count V alleges that defendants discriminated against plaintiff because of his absence for military service, in violation of 51 P.S. §7101.  Count VI contends that defendants discriminated against plaintiff because of his Russian ancestry in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a).[2]  Count VII alleges that defendants discriminated

---

[2]The court applies the same legal standards to claims brought under the Pennsylvania Human Relations Act as to claims brought under federal anti-discrimination laws that address the same subject matter. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (finding that "While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or

against plaintiff because of his Russian Orthodox religious faith in violation of the PHRA. Count VIII insists that defendants violated the PHRA by retaliating against him after he complained of ethnic discrimination. Count IX alleges ethnic origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

After the plaintiff served his initial complaint, the defendants filed motions to dismiss (Doc.18, 26). After the parties briefed the issue, plaintiff filed a motion to file an amended complaint that added Count IX. (Doc. 33). The motion represented that plaintiff had only recently received a right-to-sue letter from the Equal Employment Opportunity Commission on that issue. The parties agreed that the claim should be added to the complaint, and that the previously filed motion to dismiss should apply to all of the claims. The court granted this motion (Doc. 34), bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983 the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

---

the ADEA [citations omitted], its courts nevertheless generally interpret the PHRA in accord with its federal counterparts.").

**Legal Standard**

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files such a motion, all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The court will apply this standard when addressing

Defendant Carbon County's motion.

**Discussion**

### A. County Defendants' Motion

Defendants Borough of Old Forge, Borough of Old Forge Council, Borough of Old Forge Police Department, Lawrence A. Semenza, Anthony J. Torquato, David Scarnato, James J. Peperno in his official capacity as former Chairman of Old Forge Borough Police Pension Fund, Alan Heyen, Shirley Helbing, and James P. Minella ("County Defendants") provide several grounds for granting their motion to dismiss. The court will address each in turn.

### i. Individual Defendants in their Official Capacities

Defendants argue that claims brought by the plaintiff against the individual defendants in their official capacities should be dismissed. A suit against individual defendants in their official capacities is equivalent to a suit against the municipality. Since the municipality is a named defendant, an action against individuals in their official capacities is unwarranted. The court agrees. An official-capacity suit is generally merely another way of pleading an action against an entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Such a suit is properly treated as a suit against the entity. Id. at 166. The court will therefore dismiss the claims against the individual defendants in their official capacities.

### ii. Claims Against the Borough Council, Old Forge Police Department and Civil Service Commission

11

Defendants argue that claims against the Borough Council, Old Forge Police Department and the Old Forge Civil Service Commission should be dismissed. Under Pennsylvania law, the Council, Police Department and Civil Service Commission cannot be sued. They are subdivisions of the municipality, which is the only entity liable for suit in this instance. In any case, the municipality would be liable for any damages awarded against those entities, and the entities are therefore redundant.

The court agrees that the claims against these subdivisions of the Borough are redundant of the claims against the Borough. The Borough would ultimately be responsible for any damages assigned these entities. Because of this redundancy, the court will follow the lead of other courts in this circuit and grant the motion to dismiss on this point. See, e.g., Satterfield v. Borough of Schuylkill Haven, 12 F. Sup. 2d 423, 432 (E.D. Pa. 1998); Marburger v. Upper Hanover Twp., 225 F. Supp. 2d 503, 506 n.2 (E.D. Pa. 2002).

### iii. Claims Against the Borough

Defendants contend that plaintiff's claims against the Borough in Counts I through V should likewise be dismissed. They argue that plaintiff has not alleged that any official policy or custom caused the deprivation of his rights. Plaintiff responds that establishing liability under Section 1983 requires only that a plaintiff establish that "the conduct complained of [was] committed by a person acting under color of state law . . . [and that] conduct must deprive the complainant of rights

12

secured under the Constitution or federal law." (Plaintiff's Brief in Opposition (Doc. 27) at 8).  The plaintiff misapprehends the applicable legal standard.  Under the law, a municipality cannot be liable for civil rights violations on a *respondeat superior* basis.  Instead, a plaintiff must establish that the violation occurred pursuant to the municipality's policy or custom.  Monell v. Department of Social Svcs., 436 U.S. 658, 694 (1978).

The Court finds, however, that plaintiff has stated a claim that the deprivation of his rights occurred pursuant to an official policy or custom.  In Count III of plaintiff's complaint[3], he alleges that the conduct of the defendants in this case, including that of the Borough, "constituted a policy, custom and/or pattern of subjecting police officers, such as the Plaintiff herein, to differential treatment thus depriving him of his constitutional rights to equal protection under the law."  (Amend. Complt. at ¶ 104).  After discussing the alleged retaliation he faced, in that count plaintiff also alleges that "[d]efendants deprived the Plaintiff of his constitutional rights, as aforementioned, acting under color of ordinance, regulation, statute, custom, and/or usage of the Commonwealth of Pennsylvania."  (Id. at ¶ 111).  While not artfully pleaded, the court finds that these allegations constitute a claim that the Defendant Borough deprived plaintiff of his rights pursuant to an official policy or

---

[3]Counts I, II and III of the complaint appear largely redundant.  The first two counts allege violations of plaintiff's rights pursuant to the United States Constitution, and Count III uses 42 U.S.C. § 1983 to seek damages for those violations.  Since Section 1983 is the means by which Congress allows persons to sue for violations of their constitutional rights, those three counts raise essentially the same claims.

custom.  The court will deny the defendants' motion on these grounds.

### iv. Punitive Damages

Defendants seek dismissal of the punitive damages claims raised by the plaintiff against the municipality in Counts I, II and III of his action.  They argue that such damages cannot be obtained against a municipality in such an action.  Similarly, a plaintiff cannot obtain punitive damages, defendants argue, under the PHRA.  Plaintiff agrees that he cannot obtain punitive damages under the PHRA and against a municipality under Section 1983.  As such, the court will grant the motion as it applies to punitive damages against the municipality and against all defendants under the PHRA.

### v.  Municipal law and police certification requirements

Defendants argue that the borough was required to employ only those police officers who complied with state-mandated training requirements.  They contend that plaintiff's police certification had lapsed, and he could not be returned to work until he completed the required training.  Because plaintiff's claims in counts I, III, IV and V rely on plaintiff's ability to return to work and plaintiff did not obtain the required training, he could not prevail on those claims.

Here, plaintiff has alleged that the Borough denied him re-employment in part because he lacked the proper certifications.  He also claims, however, that the defendants' actions prevented him from returning to work because he could not gain access to certification classes.  Plaintiff alleges that he attempted to obtain required

training to return to work after he resolved earlier lawsuits against the Borough, only to have the Borough act to prevent him from obtaining this training. (Amend. Complt. at ¶ 27). The Borough would not schedule the plaintiff for required update classes, causing him to miss the only classes offered in Lackawanna and Luzerne Counties. (Id.). Plaintiff was forced to have the Borough Manager intervene with the Municipal Police Training Commission in an attempt to secure such training. (Id.). Eventually, plaintiff had to "go on his own to obtain these qualifications." (Id.). Once plaintiff actually scheduled a time to qualify with his service weapon, "he was told the wrong place and time to appear." (Id.). Later, after plaintiff returned form active military duty, he sought immediate placement on the active roster of the Old Forge Police Department. (Id. at ¶ 48). The Borough would not allow plaintiff to return immediately to work, insisting that he was a new hire and needed to undergo the physical and psychological examinations required of a new hire. (Id. at ¶ 49). Plaintiff insists that such examinations were unnecessary and he needed only to update his certifications for municipal police officer updates, CPR, First Aid and weapons qualifications. (Id.). The plaintiff alleges that the Borough refused to schedule him for his needed updates and went to "extraordinary lengths" to prevent him from taking the required courses. (Id. at ¶ 50). The Borough then allegedly refused to return plaintiff to active duty, contending that he lacked the required certifications and refusing to forward a request for recertification to state agencies unless he participated in unnecessary examinations. (Id. at ¶¶ 50-51). The Borough

15

sought to have plaintiff removed from the police force for failing to meet training requirements.  (Id. at ¶ 52).

The court finds that plaintiff has alleged that defendants acted to prevent him from being employed with the police department.  Defendants are correct to contend that under Pennsylvania law they could not employ a police officer who lacked the proper certifications.  See, e.g., 53 Pa. C.S. § 2161(b); 37 Pa. Code § 203.11.  A police officer who has not received the appropriate training and certifications is "ineligible to receive any salary, compensation or other consideration for the performance of duties as a police officer."  53 Pa. C.S. § 2167(b).  Plaintiff alleges, however, that he lacked these certifications because of the defendants' actions.  If plaintiff could prove that defendants acted deliberately to prevent him from receiving the training he needed to be eligible to receive compensation, plaintiff would not be precluded from prevailing on his claims due to his lack of certification.  The court will deny defendants' motion on this point.

### vi.  Identical claims pending in state court

Defendants also argue that plaintiff pled many of the same claims in a state-court petition for review.  Since plaintiff must choose his forum, he is precluded from bringing counts I-V in this court.  Defendants also argue that plaintiff pled all of the facts before a workers' compensation judge, who issued a final decision on the merits.  As such, he is collaterally estopped from bringing those claims in this court.  In any case, defendants argue that the court should stay this case pending the

outcome of the state-court proceedings because the issues are the same in both proceedings and thus the court would be collaterally estopped from issuing decision contrary to those of the state court.

As part of their motion, defendants include copies of various state-court and administrative documents.  Plaintiff argues in part that the court should not consider any information outside the complaint in determining whether to grant defendants' motions, and thus should not evaluate the defendants' motion using this information. Federal law makes clear, however, that the court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" when evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court will therefore use those documents supplied by the defendants which are indisputably matters of public record in evaluating this motion.

Defendants argue that plaintiff should be collaterally estopped from bringing claims I-V in this proceeding because he has already litigated the factual issues at question here in a workers' compensation proceeding which was resolved on the merits.  "The doctrine of collateral estoppel, which is sometimes referred to as issue preclusion, operates to prevent questions of law or issues of fact which have once been litigated and adjudicated finally in a court of common jurisdiction from being relitigated in a subsequent suit."  Nelson v. Heslin, 806 A.2d 873, 876-77 (Pa. Super.

17

Ct. 2002). Collateral estoppel applies when: "[1] an issue decided in a prior action is identical to one presented in a later action; [2] the prior action resulted in a final judgment on the merits; [3] the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and [4] the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." Frederick v. Action Tire Co., 744 A.2d 762, 766 (Pa. Super. Ct. 1999). Defendants argue that the issues plaintiff litigated in an earlier workers' compensation proceeding are identical to factual issues which form the basis of plaintiff's claim in this court, and plaintiff is thus barred from relitigating them here.

Workers' Compensation Judge William J. Hall issued the decision here in question on October 15, 2002. (See Exh. 1 to Defendants' Brief (Doc. 25-3) (hereinafter "WCJ Opinion")). A judge on the Pennsylvania Commonwealth Court affirmed that opinion on February 25, 2004. (See Exh. 2 to Defendants' Brief (Doc. 25-4)). The Pennsylvania Supreme Court declined review of this decision on December 29, 2004. (See Exh. 3 to Defendants' Brief (Doc. 25-4)). Judge Hall's decision addressed a claim petition plaintiff filed with the Pennsylvania Bureau of Workers' Compensation on March 5, 2001. (WCJ Opinion at 1). In his petition, plaintiff complained that he had sustained and/or aggravated a work-related mental and/or physical injury on March 3, 1998. (Id.). He alleged that this injury had left him disabled since he provided notice to his employer of his injuries on March 13,

18

1998.  (Id.).  The opinion considered testimony provided in two hearings in

November 2001 and April 2002, as well as other evidence submitted by the plaintiff

and his employer/insurer.  (Id.).

The Workers' Compensation Judge ("WCJ") concluded that plaintiff failed to

prove either that he had been exposed to abnormal working conditions as police

officer in the Borough of Old Forge, or that he suffered from any mental injury or

aggravation of a previous injury as a result of his work conditions.  (Id. at 22).  The

Judge reviewed testimony from a variety of witnesses about plaintiff's experiences

working for the Borough's Police Department, addressing particularly complaints that

plaintiff was prevented from working specific jobs in the department, was not given

access to department facilities, was harassed by facing numerous traffic citations

and was given particularly odious duties.  (Id. at 25).  In the end, the WCJ concluded

that plaintiff's "working conditions were normal for a Police Officer working in a small

municipality.  The incidents in which the [plaintiff] became involved were brought

about by the [plaintiff's] actions and activities and were not instigated or controlled by

the Borough or the [plaintiff's] supervisors in the Police Department."  (Id. at 26).

Moreover, the WCJ found that plaintiff did not face "any disabling psychological

condition."  (Id.).  Though he suffered from a "personality disorder," his work did not

cause or exacerbate the condition.  (Id.).  As such, the WCJ denied plaintiff's appeal.

Defendants argue that the WCJ's decision precludes plaintiff from raising any

of the "factual issues which were necessary for the WCJ to make his decision that

19

Plaintiff did not suffer a psychic injury at work." (Defendants' Brief at 40-41). The factual issues surrounding those alleged psychic injuries "form the basis of Plaintiff's claims in District Court." (Id. at 41). Since, defendants insist, the WCJ found that most of the incidents in question did not occur, the court must give those findings "preclusive effect." (Id.). Defendants do not point to any particular incidents that are the subject of this lawsuit that did not occur, however, and in any case the question that the WCJ addressed was whether the incidents in question caused a psychic injury to the plaintiff, not whether they occurred altogether. In this case plaintiff need not prove that he was mentally or physically disabled in order to prevail. Instead, he must prove that defendants' actions violated his federal constitutional and statutory rights. The counts which defendants seek to dismiss on these grounds allege violations of plaintiff's due process and First Amendment rights in suspending him from employment; the workers' compensation judge did not address the suspension from employment about which plaintiff complains or the events leading to it. As such, there is no identity of facts or issues here, and no collateral estoppel. Moreover, the Workers' Compensation opinion covered events that occurred before 2002, and Counts IV and V address specifically events that occurred after that date. Preclusion could not apply there. The court will deny the motion on those grounds.

The defendants also argue, however, that plaintiff should be barred from bringing his claims in counts I, III, IV and V because he has filed a claim in state court that addresses events after the WCJ's decision. The doctrine of *res judicata*,

defendants insist, bars plaintiff from bringing such claims in this court. "*Res judicata*, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication." Wilkes v. Phoenix Home Life Mut. Ins. Co., 902 A.2d 366, 376 (Pa. 2006). "For the doctrine of *res judicata* to prevail, Pennsylvania courts require that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 549 (3d Cir. 2006).

Plaintiff filed a petition for review in the Court of Common Pleas of Lackawanna County on August 30, 2006. (See Defendants' Exhibit 4 (Doc. 25-5)). The petition appealed decisions of the Old Forge Civil Service Commission made on July 31 and August 14, 2006. (Id. at ¶ 3). The July 31, 2006 decision upheld a Borough decision that suspended plaintiff without pay until he completed required training. (Id. at ¶ 24). The August 14, 2006 opinion upheld a Borough decision to return plaintiff to work. (Id. at ¶¶ 6, 11). Plaintiff had appealed that decision because the findings of fact and conclusions of law allegedly failed to match those in the Borough's actual ruling on his case. (Id. at ¶ 24). The Commission also denied plaintiff's request for back pay. (Id.). In his petition, plaintiff argued that the Commission erred in its interpretation of Pennsylvania law related to police training. (Id. at ¶ 27). Plaintiff also contended that the Commission erred in relying on certain

materials collected in plaintiff's workers' compensation case in assessing his mental state.  (See, e.g., ¶ 35).

Res judicata cannot apply here, since the litigation in the Court of Common Pleas has not been completed.  Moreover, though the petition references an alleged "vendetta by the former Mayor Torquato, the Borough Council or its members and/or the Police Department and/or its members," the petition does not address any discrimination on the basis of plaintiff's military service or retaliation because of plaintiff's attempts to protect his rights against discrimination.  (Id. at ¶ 26). Pennsylvania courts have found that "'*res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims'" and courts should consider "'the identity of the acts complained of, the demand for recovery, the identity of witnesses, documents and facts alleged[.]'" McArdle v. Tronetti, 627 A.2d 1219, (Pa. Super. Ct. 1993) (quoting In re Jones & Laughlin Steel Corp., 477 A.2d 527, 531 (Pa. Super. Ct. 1984)).   Thus, even if the litigation in state court had been completed, the lack of "essential similarity" between the claims in this court and state court would prevent the court from precluding plaintiff's claims here.[4]

The court will also deny the defendant's request that the case be stayed

---

[4]Defendants do not raise the Rooker-Feldman doctrine, which "deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication" and is limited to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Turner, 449 F.3d at 547 (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)).  If they had, the court would find it did not apply, since plaintiff is not seeking review of any state-court decision, but is raising separate federal causes of action.

pending the outcome of the state court proceedings. "[T]he power to stay

proceedings is incidental to the power inherent in every court to control disposition of

the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants." Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 737 (3d

Cir. 1983). Defendants point to United Sweetner USA, Inc. v. Nutrasweet, 766 F.

Supp. 212 (D. Del. 1991), to argue that a district court, in determining whether to

grant a stay, should "'evaluate the possible damage, hardship and inequities to the

parties to the lawsuit and the relationship of the stay to the fulfillment fo the judicial

objectives of simplification of the issues in question and the trial of the case.'" United

Sweetner, 766 F. Supp. at 217 (quoting United Merchants & Mfrs., Inc. v.

Henderson, 495 F. Supp. 444, 447 (N.D. Ill. 1980)). Here, the court has found that

the issues raised in the state court proceeding do not implicate the case in this court

and therefore have no preclusive effect. As such, delaying the litigation on this

matter would not create any judicial efficiency. A decision in state court would not

simplify matters in this court; the same issues would remain in the case and the

same discovery would be necessary. As such, the court will deny the defendants'

request to stay the case.

### vii. Due Process Claims in Counts I and III

Defendants argue that the court should dismiss counts I and III of the

complaint, which contend that defendants denied plaintiff his due process rights.

They admit that plaintiff had a property right to his employment, but insist that he

received all of the process he was due under the circumstances.

The state cannot deprive a person of a property right "without due process of law." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the Fourteenth Amendment's protection of life, liberty, or property." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). Here, the parties agree that plaintiff has been conferred a protected property interest in his employment and was entitled to due process. Still, "'the question remains what process is due.'" Id. at 541 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). A court must determine "whether . . . the procedures available provided the plaintiff with 'due process of law.'" Alvin, 227 F.3d at 116. There is no rote formula for sufficient protections under the Due Process Clause." Wilson v. MVM, Inc., 475 F.3d 166, 178 (3d Cir. 2007). Instead, "'due process is flexible and calls for such procedural protections as the particular situation demands.'" Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 334 (1976)). At the least, "due process requires notice and a hearing." Id. "[W]hen that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would provide, and (3) the government's interest." Id.

24

Plaintiff alleges that Pennsylvania law required defendants to provide him with process both prior to and after his termination. (Amend. Complt. at ¶ 81). Plaintiff alleges that defendants attempted to terminate him in July 2003 for failing to report to work after exhausting his sick leave. (Id. at ¶ 41). He received a hearing before the Borough's council, and the council agreed that he should be returned to work in December 2003. (Id. at ¶¶ 42-43). Before plaintiff could enjoy his reinstatement, however, he was called to active duty by the United States Army National Guard. (Id. at ¶ 46). Plaintiff nevertheless appealed this decision to the Old Forge Civil Service Commission because of inconsistencies between the written opinion and the evidence on the record of his hearing. (Id. at ¶ 44). When plaintiff returned from active duty in August 2004, he applied for reinstatement to active duty, but the defendants, insisting that he undergo examinations and testing, refused to allow him to return to work. (Id. at ¶¶ 48-51). In February 2005, the Borough, through its manager, notified plaintiff that it intended to remove him from the police force for failing to obtain proper certifications and training. (Id. at ¶ 52). The Borough Council, after a hearing, voted to suspend the plaintiff without pay and benefits until he received the proper certifications and training. (Id. at ¶ 53). Plaintiff appealed this decision to the Old Forge Civil Service Commission, which affirmed the Borough Council and upheld plaintiff's suspension. (Id. at ¶ 54). Plaintiff appealed the decision on July 31, 2006 to the Court of Common Pleas of Lackawanna County, Pennsylvania. (Id. at ¶¶ 55-56). Defendants have not filed the required certified

record in that court. (Id. ¶ 56). Plaintiff alleges that defendants took these actions for the purpose of preventing him from exercising his legal right to challenge his termination. (Id. ¶ 81). Though this suspension allegedly exceeds the maximum under civil service rules and regulations, plaintiff's civil service appeal is stalled by defendants' refusal to file a certified record. (Id.).

The court will grant the defendants' motion to dismiss plaintiff's procedural due process claims as they relate to plaintiff's suspension and/or termination. Plaintiff's allegations demonstrate that he was given notice and an opportunity to be heard in relation to his complaints about this termination and later suspension. He alleges that he brought his complaint about the allegedly pretextual basis for his suspension by the Borough Council, Borough Civil Service Commission and Court of Common Pleas of Lackawanna County. He does not allege that he was unaware of the reasons for his suspension or that those adjudicatory bodies refused to hear his complaint. Instead, his complaint appears to be that the Borough has refused to participate fully in legal proceedings in Lackawanna County Court and that the reasons for his suspension were inadequate. Plaintiff's allegations, then, are not that he did not receive the process that he was due, but that the defendants have not met procedural obligations in state court. He does not allege that the procedures available to him were inadequate. Defendants' alleged failure to comply with discovery obligations in state court does not create a procedural due process claim, especially when plaintiff does not allege that he sought any remedies available in

state court for these failings.  See Alvin, 227 F.3d at 116 (finding that "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.").  The court will therefore dismiss plaintiff's procedural due process claims.

### viii.  Retaliation Claims in Count II

Defendants argue that plaintiff cannot prevail on his First Amendment retaliation claim in Count II, since he has not alleged that he engaged in any protected activity, suffered any retaliatory action, or that there was a causal link between the retaliation and the protected activity.  "'A public employee has a constitutional right to speak on matters of public concern without fear of retaliation.'" Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (quoting Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001)).  Courts limit this right to speech by public employees, however; they employ a three-part test to determine whether such speech enjoys First Amendment protection against retaliation.  First, they determine whether the speech is "protected."  Id.  "Purely personal" speech does not qualify for such protection.  Id.  Instead, "the speech in question 'must involve a matter of public concern.'"  Id.  (quoting Connick v. Meyers, 461 U.S. 138, 147 (1983)).  Second, if the speech in question involves a matter of public concern, "the plaintiff must then 'demonstrate his[/her] interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides

through its employees.'" Id at 413 (quoting Baldassare, 250 F.3d at 195). Third, a plaintiff who meets the first two elements of this test "'must then show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.'" Id. at 414 (quoting Baldassare, 250 F.3d at 195). An employer can rebut this element by demonstrating that the employment decision would have been the same even without the protected speech. Id.

The court will deny the motion. In his complaint, plaintiff alleges that he "continually" spoke in public forums regarding misuse of public funds and public corruption, and that the Borough's decisions to deny him employment and block his access to train were motivated by a desire to punish him for this speech. (See Complt. at ¶¶ 87-90). The speech in which the plaintiff allegedly engaged involved matters of public concern, addressed a matter of sufficient importance to outweigh any public interest promoted by silence as a means of promoting efficiency of public service, and served as a motivating factor in the decision to deny plaintiff employment. As such, plaintiff has stated a retaliation claim and the court will deny the motion on this point.

### ix. National Origin/Ancestry Claims in Count VI

Defendants contend that plaintiff cannot prevail on his claims that he was the victim of discrimination based on his Russian ancestry. They insist that plaintiff's claims are based on the fact that he was not promoted to sergeant in 1997. No sergeant's position was open in 1997, and thus plaintiff is "collaterally estopped"

from making such a claim.  Since plaintiff did not make any claim before the WCJ that he had been denied union membership because of his ancestry, defendants also argue that he cannot now make that argument in this setting.  Moreover, being denied membership in the bargaining unit is not a tangible employment action for which the court could provide relief.  Plaintiff has also not pled that his working conditions were altered because of his ethnicity, nor has alleged the elements of a nation origin/ancestry discrimination claim under federal law.

"Title VII prohibits employment discrimination based on national origin or religion."  Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 762 (3d Cir. 2004) (citing 42 U.S.C. § 2000e-2(a)(1)).  At this initial stage of the proceedings, "the plaintiff need only set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).  Still, "only a person 'claiming to be aggrieved' may bring an action under Title VII."  Id. (quoting 42 U.S.C. § 2000e-5).  Defendants' argument here is that plaintiff has not claimed any adverse employment action connected to his ancestry that would entitle him to relief.  Under Title VII, "'an adverse employment action'" is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey, 390 F.3d at 764 (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).  "The Supreme Court has defined a tangible, adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a

significant change in benefits.'" <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 430-31 (3d. Cir. 2001) (quoting <u>Burlington Indus. Inc. v. Ellerth</u>, 524 U.S. 742, 749 (1998)).

Plaintiff alleges that he is of Russian ancestry, and faced frequent "derogatory" language in reference to this heritage in the workplace. (Amend. Complt. at ¶ 143). Coworkers and superiors referred to him as a "roundhead" or a "hard-headed Russian," especially after he applied for promotion to sergeant. (<u>Id.</u> at ¶ 144). Employees who were not of Russian ancestry did not face the same harassment and mistreatment that plaintiff did. (<u>Id.</u> at ¶ 147). Borough officials knew of this harassment, and did nothing to stop it. (<u>Id.</u> at ¶¶ 145-46). Moreover, plaintiff was denied membership in the bargaining unit of the Borough Police Department by the defendants. (<u>Id.</u> at ¶ 148). Plaintiff avers that defendants acted in this fashion because of his national origin and ancestry. (<u>Id.</u> at ¶ 150). Plaintiff was the only member of the force who was not a member of the Police Association and the Fraternal Order of Police, and he thus had no representation in those bodies and none of the grievances he has filed have been accepted by the Police Association or the Fraternal Order. (<u>Id.</u> at ¶ 29). The Mayor and Chief of Police also told plaintiff that rank structure and seniority applied to every officer but him. (<u>Id.</u> at ¶ 33).

The court finds these allegations sufficient to support plaintiff's claim. Plaintiff alleges that he was discriminated against because of his Russian ancestry by fellow officers and supervisors. Other employees who were not of Russian heritage did not face the same discrimination. Plaintiff claims to have been denied important benefits

of employment because of his ancestry, and also alleges that "unlawful employment practices," described elsewhere in the complaint, were motivated by his heritage. (Id. at ¶ 149). Plaintiff has therefore alleged that he was the victim of discrimination on the basis of his ethnic heritage and the court will deny the motion on this point.

### x. Religious Discrimination in Count VII

Defendants argue that plaintiff's claim for religious discrimination must fail because he does not allege that he held a sincere religious belief that conflicted with a job requirement, told his employer about the conflict, or suffered any discipline as a result of a conflict between the job requirement and his belief.

The parties agree that in order to prevail on this claim plaintiff must demonstrate "(1) a sincere religious belief that conflicts with a job requirement; (2) she told the employer about the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." Wilkerson v. New Media Tech. Carter Sch., 522 F.3d 315, 319 (3d Cir. 2008). In his complaint, plaintiff alleges that he subscribes to the Russian Orthodox religious faith. (Amend. Complt. at ¶ 152). At the time of his hire, he requested not to be scheduled to work on any Orthodox holidays. (Id. at ¶ 153). Despite this request, defendants scheduled plaintiff to work on all of the Orthodox holidays. (Id. at ¶ 154). The court finds that the plaintiff has stated a claim on this matter. Plaintiff alleges that he informed his employer of his religious belief and the requirement of that belief that he be excused from work on religious holidays. In response, the defendants allegedly scheduled him to work on

every religious holiday.  See, e.g., Abramson v. William Paterson College, 260 F.3d 265, 285 (3d Cir. 2001) (finding summary judgment for the defendant inappropriate when plaintiff claimed religious discrimination when employer refused to allow plaintiff days off for religious holidays).

### xi.  Retaliation Claim in Count VIII

Defendants argue that plaintiff has not stated a claim for retaliation based on complaints about discrimination due to his Russian ancestry.  Plaintiff does not allege that he engaged in any protected activity in relation to his ancestry or that any retaliatory action he faced was due to his ancestry, and has thus failed to state a claim.

Under Title VII, an employer may not retaliate against an employee for opposing a discriminatory employment practice.  42 U.S.C. § 2000e(3)(a).  A plaintiff makes out a prima facie case for retaliation by showing "that '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action.'" Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). "[W]here unlawful retaliation is claimed, the plaintiff need only show that an action is 'materially adverse' in that it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 348 (quoting Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

In his amended complaint, plaintiff alleges that on December 2, 1997, he "informed the Borough Council that the Borough was discriminating against him on the basis of his Russian ancestry" by refusing to administer the Sergeant's exam and refusing to address plaintiff's demands that he be given an opportunity to be promoted. (Amend. Complt. at ¶ 161). On December 27, 1997, plaintiff avers, the Borough Council eliminated an open sergeant's position for which plaintiff had applied. (Id. at ¶ 162). Plaintiff then informed the Borough of his desire to apply for one of the remaining open sergeant's positions. (Id. at ¶ 163). In late July 2001, James Minella, Chairman of the Borough Civil Service Commission, advised the plaintiff that he would not be promoted, that the promotion test would not be offered, and that he should simply sue the Borough. (Id. at ¶ 165). Borough officials did nothing when plaintiff complained about this process. (Id. at ¶ 166).

The court finds that these allegations are sufficient to survive a motion to dismiss. Plaintiff alleges that he suffered discrimination on the basis of his Russian ancestry, and that he complained to Borough officials about this discrimination. After making these complaints, plaintiff was denied an opportunity at promotion when the Borough made it impossible for him to apply for the job he sought. The Borough allegedly eliminated a position to prevent the plaintiff from obtaining it. Assuming, as the plaintiff alleges, that the Borough prevented the plaintiff from obtaining the position for which he applied as retaliation for plaintiff's complaints about discrimination, a reasonable person could have been dissuaded from making future

complaints by the Borough's actions.

### B. Defendant James J. Peperno's Motion

Defendant James J. Peperno also filed a motion to dismiss (Doc. 26). Defendant Peperno's brief in support of this motion (Doc. 31) indicates that he adopts the arguments made by the other defendants, and the court will adopt the same reasoning on those issues. Defendant offers the additional argument, however, that he cannot be liable because plaintiff does not allege that he acted under color of state law. The allegations in the complaint merely aver that Peperno acted in his role as chair of the police pension fund and a consult to the police officer's association.

Section 1983 applies only to parties who act under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988) (holding that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").[5] Private individuals may be liable under Section 1983, but a plaintiff must allege conduct that "involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant"

---

[5]Section 1983 establishes that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

or "involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with governmental policies or management." Leshko v. Servis, 423 F.3d 337, 340 (3d Cir. 2005).

The allegations against Defendant Peperno are that he acted as a member of the Old Forge Police Pension Fund, using "his influence with the members of Council, the Mayor, the Chief of Police, and police officers . . . to have the Plaintiff removed from his employment as a police officer in the Borough of Old Forge." (Amend. Complt. at ¶ 63). Plaintiff alleges that this action was part of a larger scheme to remove the Chief of Police and replace him with Defendant Semenza by using an "orchestrated buyout." (Id. at ¶ 64). Part of the money that funded this buyout came from funds that would have been used to pay the plaintiff if he succeeded in litigating his way to a return to work. (Id. at ¶ 68). The court reads the plaintiff's allegations to be that plaintiff lost his job as part of a scheme involving the defendants, including defendant Peperno, to financially orchestrate his firing and that of the previous police chief. In this respect, Defendant Peperno was allegedly intimately involved in the state action that gave rise to the complaint. As such, Peperno could be a state actor and thus can be liable under Section 1983. The court will deny Defendant Peperno's motion to dismiss on this point.

**Conclusion**

For the reasons stated above, the court will grant the motions to dismiss in part and deny them in part. The plaintiff's claims against the individual defendants in

their official capacities will be dismissed, as well as plaintiff's claim for punitive damages against the municipality. The Old Forge Borough Council, Borough Police Department and Civil Service Commission will be dismissed from the case. Plaintiff's procedural due process claims will also be dismissed. The motions will be denied in all other respects. As a result, plaintiff's claims against the Borough of Old Forge and against the individual defendants for retaliation under Title VII and the First Amendment and religious and ethic discrimination shall remain in the case. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL B. KESLOSKY, III,** | : | **No. 3:08cv1240** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF OLD FORGE,** | : | |
| **BOROUGH OF OLD FORGE** | : | |
| **COUNCIL,** | : | |
| **BOROUGH OF OLD FORGE POLICE** | : | |
| **DEPARTMENT,** | : | |
| **LAWARENCE A. SMENZA,** | : | |
| **ANTHONY J. TORQUATO, JR.,** | : | |
| **DAVID SCARNATO,** | : | |
| **JAMES J. PEPERNO, JR.** | : | |
| **ALAN HEYEN,** | : | |
| **SHIRLEY HELBING,** | : | |
| **JAMES P. MINELLA,** | : | |
| **OLD FORGE BOROUGH CIVIL** | : | |
| **SERVICE COMMISSION, and** | : | |
| **OLD FORGE BOROUGH POLICE** | : | |
| **OFFICERS' ASSOCIATION,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 25th day of August 2009, the defendants' motions to

dismiss (Docs. 18, 26) are hereby **GRANTED** in part and **DENIED** in part, as follows:

1.  The motions are **GRANTED** with respect to plaintiff's claims against the

individual defendants in their official capacities;

37

2.  The motions are **GRANTED** with respect to all claims against the Borough of Old Forge Council, Borough of Old Forge Police Department, and Borough of Old Forge Civil Service Commission, and the Clerk of Court is dismiss these parties from the case;

3.  The motions are **GRANTED** with respect to plaintiff's claims for punitive damages against the Borough of Old Forge;

4.  The motions are **GRANTED** with respect to plaintiff's due process claims; and

5.  The motions are **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**