## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL KESLOSKY,          :
                                :
       **Plaintiff**          :
                                :
   **v.**                        :
                                :
BOROUGH OF OLD FORGE, et al.,  :    **3:08-CV-1240**
                                :    **(JUDGE MARIANI)**
      **Defendants**      :
                                :
   **v.**                        :
                                :
MUNICIPAL POLICE OFFICERS    :
EDUCATION AND TRAINING      :
COMMISSION,                 :
                                :
     **Third-Party Defendant**  :

## <u>MEMORANDUM OPINION</u>

### I.  Introduction

Presently before the Court is Old Forge Borough Defendants' (collectively hereinafter

"Old Forge")[1] Motion for Summary Judgment (Doc. 104). Defendant James Peperno and

Third-Party Defendant Municipal Police Officers Education and Training Commission

("MPOETC") also moved for summary judgment (Docs. 101, 108). The Court will address

MPOETC and Peperno's motions in separate opinions. The issues have been fully briefed

and the parties have submitted extensive documentary evidence in support of their

---

[1] The Old Forge Defendants consist of the Borough of Old Forge; former Borough of Old Forge Chief of Police Lawrence Semenza; former Mayor of the Borough of Old Forge Anthony Torquato, Jr.; Borough of Old Forge Council members David Scarnato, Alan Heyen, and Shirley Helbing; and James Minella, Chairman of the Old Forge Civil Service Commission. (Doc. 104; Doc. 35, ¶¶ 9-11, 13-15, 17).

respective positions. For the reasons that follow, the Court will grant Old Forge's motion for summary judgment on all of Plaintiff's claims except those that the Court has recognized herein under §§ 4311, 4312, and 4313 of the Uniformed Services Employment & Re-employment Rights of Members and the Pennsylvania Department of Military and Veterans Affairs Act.

## II. PROCEDURAL HISTORY

Plaintiff, Michael Keslosky, filed his Complaint (Doc. 1) with this Court on June 30, 2008. On December 29, 2008, he filed an Amended Complaint (Doc. 35) against Defendants Borough of Old Forge, Borough of Old Forge Council, Borough of Old Forge Police Department, Old Forge Borough Police Officers' Association, Old Forge Civil Service Commission, Lawrence Semenza, Anthony Torquato, Jr., David Scarnato, Alan Heyen, Shirley Helbing, James Peperno, Jr., and James Minella. The Amended Complaint set forth nine counts: Count I, against all defendants, asserted a violation of Plaintiff's constitutional right to due process in the form of pre- and post-deprivation hearings; Count II, against all defendants, asserted a First Amendment retaliation claim; Count III, against all defendants, for violation of 42 U.S.C. § 1983; Count IV, against all defendants, for violation of the Uniformed Services Employment & Re-employment Rights of Members ("USERRA") under 38 U.S.C. § 4301, *et seq.*; Count V, against all defendants, for violation of Pennsylvania Department of Military and Veterans Affairs Act ("PMAA") under 51 P.S. § 7101, *et seq.*; Count VI, against Borough of Old Forge and Old Forge Borough Police Department, for

2

violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), specifically, discrimination on account of national origin/ancestry; Count VII, against Borough of Old Forge and Old Forge Borough Police Department, for violation of the PHRA, 43 P.S. § 955(a), specifically, discrimination on account of religion; Count VIII, against Borough of Old Forge and Old Forge Borough Police Department, for violation of the PHRA, 43 P.S. § 955(d), specifically, retaliation; and Count IX, against the Borough of Old Forge and Old Forge Borough Police Department, for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Doc. 35).

Judge Munley addressed Defendants' Motions to Dismiss (Docs. 18, 26) by dismissing: (1) Plaintiff's procedural due process claims, including Count I in its entirety; (2) all claims against individual defendants in their official capacities; (3) Defendants Borough of Old Forge Council, Borough of Old Forge Police Department, and Borough of Old Forge Civil Service Commission; and (4) the claim for punitive damages against the Borough of Old Forge. Judge Munley denied the motions to dismiss in all other respects. (Doc. 38).

In May 2012, following the completion of discovery, the remaining defendants filed Motions for Summary Judgment. (Docs. 101, 104, 106, 108).

On March 5, 2013, this Court issued an Order staying the case pending the resolution of Plaintiff's appeal to the Pennsylvania Commonwealth Court of the Old Forge Borough Council's decision on June 15, 2005 to suspend Plaintiff without pay or benefits until he obtained a current Municipal Police Officers Education and Training Commission

3

certification. (Doc. 159). On July 23, 2013, the Commonwealth Court issued its Opinion in the matter of *Keslosky v. Old Forge Civil Serv. Comm'n and Old Forge Borough*, 73 A.3d 665 (Pa. Commw. Ct. 2013), affirming the decision of the Court of Common Pleas of Lackawanna County, which had previously denied Plaintiff's Petition for Review of the Old Forge Civil Service Commission's decision affirming Plaintiff's suspension. (Doc. 157, Ex. 2; Doc. 160).

Plaintiff's case was re-opened by this Court on October 8, 2013, and upon the request of both Old Forge and Keslosky (Doc. 160), the Court held oral argument on Defendants' motions for summary judgment. During oral arguments, with the consent of Plaintiff, the Court dismissed the Old Forge Borough Police Officers' Association with respect to all causes of action in the case. (Unoff. Tr., at 52-53, 71).

On April 29, 2014, the Pennsylvania Supreme Court denied Keslosky's Petition for Allowance of Appeal from the Order of the Commonwealth Court. (*See* Doc. 165).

### III. STATEMENT OF UNDISPUTED FACTS

In addition to the Commonwealth Court's findings, which are entitled to collateral estoppel such as to limit the scope of this Court's identification of disputed triable issues of fact,[2] the following is a statement of the material facts which the parties agree are undisputed.

---

[2] Our determination that we are collaterally estopped from departing from the findings affirmed by the Pennsylvania Commonwealth Court is discussed in Section V(A), *infra*.

On September 1, 1979, Michael Keslosky began working for Old Forge Borough as a Patrolman. (Doc. 105, ¶ 1). Following his termination in 1990, Keslosky filed Complaints in 1992 and 1993 in the U.S. District Court for the Middle District of Pennsylvania against Old Forge Borough and others, alleging violations of his civil rights. (*Id*. at ¶¶ 3-5). As a result of a settlement in the second action, Keslosky returned to work in September, 1997. (*Id.* at ¶¶ 7-10). Upon his return, Keslosky received a card from MPOETC (*Id*. at ¶ 11), which Plaintiff characterizes as his "MPOTEC certification" (Doc. 139, ¶ 11).

Keslosky worked as a Patrolman from September 1997 through March 13, 1998 when he ceased to work, claiming to be suffering a stress related work injury due to harassment at work. (Doc. 105, ¶¶ 12-13; Doc. 139, ¶ 13). Because of the alleged hostile work environment from September 1997 through March 1998, Keslosky received treatment from a family doctor, Richard Lazar; a psychologist, Michael Church; and a psychiatrist, David Liskov, for the job-related stress. (Doc. 105, ¶ 35). Dr. Liskov last saw Keslosky on November 5, 1999. (*Id*. at ¶ 36). In the treatment note from November 5, 1999, Dr. Liskov opined that he "[w]ould be very reluctant to psychiatrically clear this individual to continue in the capacity of a Police Officer if paranoid symptoms are indeed pathological (which they appear at this time)". (*Id*. at ¶ 37). On March 2, 2000, Dr. Lazar released Keslosky to work, stating that "Michael may return to work when released by Dr. Liskov and Dr. Church." (*Id*. at ¶ 39).

On March 5, 2001, Keslosky filed a Claim Petition with the Bureau of Workers'

Compensation, stating that due to this harassment, he "has been disabled from performing

his pre-injury job." (Oct. 15, 2002, Opinion of William Hall, Doc. 105, Ex. 5, at 4). Workers'

Compensation Judge William Hall denied Keslosky's claim for workers' compensation

benefits, and the Commonwealth Court upheld Judge Hall's decision on February 25, 2004.

(Doc. 105, ¶¶ 14, 16).

On January 28, 2002, Keslosky filed a Complaint with the Pennsylvania Human

Relations Commission ("PHRC"), which was cross-filed with the U.S. Equal Employment

Opportunity Commission ("EEOC"). (Id. at ¶ 17).

On May 9, 2002, William J. Rinaldi, Solicitor for Old Forge, wrote a letter to

Keslosky's counsel regarding whether Keslosky intended to return to work and requesting a

medical release from his treating physicians indicating that he was physically and mentally

able to return to work as a Police Officer. (Doc. 105, ¶ 41). On May 15, 2002, Keslosky's

attorney wrote to Plaintiff:

Dear Mike:
Enclosed herein please find a copy of correspondence received from William
Rinaldi, Esquire inquiring as to your intentions respecting returning to work as
an Old Forge Police Officer. Please advise if you are able to do so at this time
and whether you will be able to obtain a note from your doctor setting forth
your physical and mental ability to return to work. Upon review please call my
office and advise your position regarding same.

(Id. at ¶ 42). The parties dispute whether the Borough Solicitor and the Borough received a

response to their May 9, 2002, letter. (Doc. 105, ¶ 43; Doc. 139, ¶ 43).

6

Since Keslosky had not returned to work since March, 1998 (Doc. 105, ¶ 21; Doc. 139, ¶ 21), on August 19, 2003, the Borough held a Pre-Determination Hearing regarding Keslosky and the record remained open until December 9, 2003. (Doc. 105, ¶¶ 44, 46).

On September 11, 2003, Dr. Church provided a letter to Plaintiff's counsel in which he stated that "[i]t is my understanding that you need information regarding whether or not Mr. Keslosky was psychologically fit to return to work during my last professional contact with him. Mr. Keslosky was last evaluated and seen by this clinician/examiner during April 2001. He was given psychological assessments and interviewed at that time. It was this clinician's opinion that he was capable of returning to work at that time, as he showed no evidence of gross effective or thought disturbance. I have not seen Mr. Keslosky on a professional basis since this time." (Id. at ¶ 40).

On December 18, 2003, the Borough issued a written conclusion regarding the Pre-Determination hearing, writing that:

> Based on the . . . Findings of Fact, the Borough Council has decided to allow you to return to work based upon your representations and Dr. Church's letter, dated September 11, 2003, regarding your fitness for duty and that you have been released to return to work.

(Predetermination Hearing Findings of Fact and Conclusions, Doc. 105, Ex. 17, at 2).

Soon after this decision, Keslosky presented orders to Old Forge dated December 6, 2003, ordering his Army National Guard Unit to active duty and Keslosky immediately began active duty service. (Doc. 105, ¶ 48; Doc. 139, ¶ 48). On August 1, 2004, Keslosky wrote to the Old Forge Chief of Police and informed him that he had been "honorably released

from active duty." (Doc. 105, ¶ 49). As a result, on August 10, 2004, Mayor Torquato wrote to Major Richard Mooney, Executive Director of MPOETC, "request[ing his] assistance and guidance concerning [the Borough's] rights as they relate to an employee requesting to return to police duty after an extended absence." (Aug. 10, 2004 Letter from Torquato to Mooney, Doc. 105, Ex. 22; Doc. 105, ¶ 52). On August 16, 2004, Mooney responded to Torquato, writing that Keslosky's certification had expired on June 30, 1999 and outlining the necessary steps for Keslosky to become eligible for certification as a police officer.[3] (Aug. 16, 2004 Letter from Mooney to Torquato, Doc. 105, Ex. 24; Doc. 105, ¶¶ 56, 177, 230). Keslosky was notified of these purported requirements on September 1, 2004. (Sept. 1, 2004 Letter from Old Forge to Keslosky, Doc. 105, Ex. 26). In response, Keslosky's attorney, Scott Schermerhorn, sent the Borough a letter stating that Keslosky "will not submit to the physical and psychological examinations . . . Further, he will not submit to all other requests as they are simply not required by law" and that "all other items that you require are illegal, and constitute a continuing pattern of discrimination against [Keslosky] by the Borough of Old Forge." (Sept. 10, 2004 Letter from Schermerhorn to Old Forge, Doc. 105, Ex. 27). Rinaldi replied to Schermerhorn's letter, advising him that before Keslosky

---

[3] In response to Old Forge's statement of fact, ¶ 56, Plaintiff only admits that "Major Mooney wrote the letter" but apparently denies everything else. (Doc. 139, ¶ 56). However, Plaintiff's denial is misleading, as he is not disagreeing with the actual contents of the letter, but only with the letter's conclusions, which are not at issue in this factual paragraph. Therefore, we deem the entire statement of fact to be admitted. This issue occurs with respect to multiple letters referenced and cited throughout the defendants' statement of facts and Plaintiff's response. In such cases, wherein Plaintiff admits that the letter was written and admits its content but disputes the letter's validity or accuracy, we accept Defendants' statements of fact as undisputed.

could be scheduled for work, he must comply with the requirements of the Municipal Police Officers' Education and Training Law, Act 120 of 1974, and that if Keslosky "does not, refuses or fails to become certified within a reasonable amount of time Council will take the appropriate action." (Sept. 28, 2004 Letter from Rinaldi to Schermerhorn, Doc. 105, Ex. 28).

On February 16, 2005, Semenza, as Officer in Charge of the Old Forge Police Department, wrote to Mooney asking him to reaffirm the contents of Mooney's August 16, 2004 correspondence to Torquato. (Feb. 16, 2005 Letter from Semenza to Mooney, Doc. 105, Ex. 29). Mooney responded to the letter, "confirm[ing] and restat[ing] the requirements outlined to Mayor Anthony Torquato in 2004 in regard to certification of Michael B. Keslosky III" and stating again that Keslosky's certification expired June 30, 1999. (Feb. 22, 2005 Letter from Mooney to Semenza, Doc. 105, Ex. 30).

Purportedly as a result of Keslosky's non-compliance with the requirements set forth in the September 1, 2004 letter,[4] on February 16, 2005, Old Forge sent Keslosky a letter "serv[ing] as . . . [his] written notice of the charges made against [him] for [his] removal as a Police Officer from the Old Forge Borough Police Department." (Letter of Removal from the Old Forge Police Force, Doc. 105, Ex. 53). The Borough held hearings on March 15 and April 19, 2005, regarding the charges set forth in the letter. (Doc. 105, ¶ 288). On June 15, 2005, Old Forge suspended Keslosky "without pay and benefits, effective immediately until such time as he complies with the provisions of the Municipal Police Officers' Education and

---

[4] That Keslosky did not fulfill the requirements listed in the September 1, 2004, letter is undisputed.

9

Training Law, Act 120 of 1974, to meet the certification requirements in order to obtain a current certification from the Municipal Police Officer's Education and Training Commission." (Notes of Special Meeting of June 15, 2005, Doc. 105, Ex. 54). Plaintiff appealed this decision to the Civil Service Commission, which affirmed Plaintiff's suspension due to Plaintiff's failure to obtain an updated MPOETC certification. (Doc. 157, Ex. 2). Plaintiff subsequently appealed to the Court of Common Pleas of Lackawanna County.

On July 11, 2012, Judge Peter O'Brien of the Court of Common Pleas denied Plaintiff's Petition for Review of the Old Forge Civil Service Commission's decision affirming Plaintiff's suspension from the Old Forge Police Department. (*Id.*). In his opinion, Judge O'Brien held that he was "persuaded that the Commission's adjudications should be upheld because they are supported by the substantial evidence." (*Id.* at 5). Among the substantial evidence he cited was correspondence from Major Mooney, stating that Plaintiff's "certification expired on June 30, 1999 for failure to comply with the mandatory in-service requirements." Citing to 37 PA. CODE § 203.13(c)(1), Judge O'Brien concluded that Plaintiff's "MPOETC certification expired due [to] his failure to complete the in-service training requirements, thus precluding him from obtaining a renewal certificate." (*Id.*). Therefore, "the only avenue available to [Plaintiff] since he cannot obtain a renewal certificate is to begin the certification process anew, which is exactly what MPOETC has suggested from the outset." (*Id.*). Finally, Judge O'Brien commented that Plaintiff "is merely

10

suspended at this point, and upon completion of his certification, it would appear to purge

the condition of his suspension." (*Id*. at 6).

Keslosky appealed Judge O'Brien's decision to the Commonwealth Court, raising

two issues: (1) whether the trial court erred in upholding his suspension; and (2) whether the

trial court erred by denying his request for back pay. *Keslosky*, 73 A.3d at 670. The

Commonwealth Court found that "Keslosky's appellate argument rests upon the date of his

certification expiration" and that despite Keslosky's contention that his certification expired in

2001, "substantial evidence supports the finding that Keslosky's police officer certification

expired in 1999." *Id*. at 670-671. As a result,

> When Keslosky's certification expired on June 30, 1999, he had a two-year
> grace period for getting re-certified. During this period, Keslosky had left work
> and the parties were in litigation over Keslosky's psychological injury claim.
> Keslosky's requests to have the Borough schedule him for training were made
> after June 30, 2001, and are irrelevant. The Borough could not have granted
> the request. Keslosky's claim that the Borough caused his certification to
> lapse lacks merit.

*Id*. at 671.

With respect to back pay, the Court found Keslosky's allegations that "the Borough

intentionally caused his certification to expire . . . [and] that the Borough is estopped from

arguing that it cannot pay Keslosky when it paid him health benefits up until his suspension

in 2005 and paid him a bonus check in December 2003 after reinstating him to employment"

unpersuasive for two reasons:

> First, Keslosky did not raise the issue of back pay in the Borough hearing. He
> did not request back pay until after the Borough Council voted to reinstate

11

him; accordingly, its written decision is silent on the issue of back pay. Second, the Officer Training Law prohibits a municipality from paying a salary to a police officer unless the officer is 'duly certified.' 53 Pa.C.S. § 2167(b). Keslosky has not been certified since June 1999. The fact that Keslosky may have received health benefits and a bonus check does not entitle him to compensation the Borough is prohibited from paying. 53 Pa.C.S. § 2167(c).

*Keslosky*, 73 A.3d at 672.

In addition to the factual summary above, Keslosky admitted to several key material facts.

With respect to Plaintiff's religion and ethnicity, Keslosky alleges that Defendant Torquato, the Mayor of Old Forge from January 2002 through December 2005, made a comment regarding Keslosky "not celebrating the right Christmas and being a hard headed Russian", but could not identify when this occurred during the Mayor's tenure. (Doc. 105, ¶¶ 26-27; Dep. of Michael Keslosky, Jan. 24, 2012, at 115). Keslosky also stated that he could not recall Defendants, Old Forge councilmembers Heyen, Scarnato, and Helbing,[5] making any comments in regards to his ethnicity or religion. (Doc. 105, ¶¶ 28-30; Dep. of Michael Keslosky, Jan. 24, 2012, at 115-116).

Keslosky claims that Defendant Minella, Chairman of the Old Forge Civil Service Commission, told him that he would not be promoted and that he should just sue the Borough. (Doc. 105, ¶ 31; Dep. of Michael Keslosky, Jan. 24, 2012, at 117; Dep. of Michael Keslosky, Feb. 24, 2012, at 75-76). Plaintiff does not identify the timeframe for these

---

[5] Shirley Helbing was a Borough Councilwoman as of June 2004; Alan Heyen served as a Borough Councilman from January 1998 through June or July 2007; and David Scarnato served as a Borough Councilman from 2002 through 2005. (Doc. 105, ¶¶ 211, 216, 220).

comments, stating that "[i]t may have been around the time of the promotions of Semenza and Bossi[6] and it may also have been at another time after that." (Dep. of Michael Keslosky, Jan. 24, 2012, at 117). During his depositions, Keslosky was unable to identify the other occasion(s) that these comments were made (Dep. of Michael Keslosky, Jan. 24, 2012, at 117-118; Dep. of Michael Keslosky, Feb. 24, 2012, at 76), however in his PHRC Complaint, Keslosky claimed that on July 24, 2001, Minella told him he would not be promoted, the promotion test to sergeant would not be given, and that Keslosky should sue the Borough (PHRC Complaint, ¶ 13).

Keslosky further admits that he spoke before Borough Council several times regarding the promotions of Officers Bossi and Semenza, but was unable to identify the time period other than "believ[ing]" it was between September 1997 and March 1998, although "it may have extended beyond that time period, I am not absolutely certain at this time." (Doc. 105, ¶ 33; Dep. of Keslosky, Jan. 24, 2012, at 50-51).

Keslosky also testified that between September 1997 and March 1998 Officer Semenza threatened to assault him and put pressure on other Officers not to communicate with him or back him up when he was on duty. (Doc. 105, ¶ 34; Dep. of Michael Keslosky, Jan. 27, 2012, at 8; *see also* Dep. of Michael Keslosky, Jan. 24, 2012, at 51-53 (discussing threats of physical harm by Semenza and Bossi during this same time period)).

---

[6] Semenza and Bossi were promoted to sergeant in 1997. (Doc. 105, ¶ 32; Doc. 139, ¶ 32).

## IV. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough*

*Corp.,* 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, . . . [o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct.

3177, 111 L.Ed.2d 695 (1990). Therefore, the non-moving party may not oppose summary

judgment simply on the basis of the pleadings, or on conclusory statements that a factual

issue exists. *Anderson,* 477 U.S. at 248. Rather, the opposing party must point to a factual

dispute requiring trial and the district court "may limit its review to the documents submitted

for the purposes of summary judgment and those parts of the record specifically referenced

14

therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030-1031 (9th Cir.

2001); *see also Forsyth v. Barr*, 19 F.3d 1527 1527, 1537 (5th Cir. 1994). "Inferences

should be drawn in the light most favorable to the non-moving party, and where the non-

moving party's evidence contradicts the movant's, then the non-movant's must be taken as

true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992),

*cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L Ed.2d 659 (1993).

## V. ANALYSIS

**A. The Pennsylvania Commonwealth Court's determination that the Old Forge Civil Service Commission was correct in deciding that Keslosky's certification as a police officer lapsed in 1999 and that thereafter he refused to take the necessary steps to re-acquire certification is entitled to deference under the doctrine of issue preclusion.**

Under the Full Faith and Credit Act, federal courts must give state judicial

proceedings "the same full faith and credit in every court within the United States . . . as

they have by law or usage in the courts of such State . . . from which they are taken." 28

U.S.C. § 1738. As a result, the Act "requires that federal courts give the state-court

judgment . . . the same preclusive effect it would have had in another court of the same

State." *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 525, 106 S.Ct. 768, 88

L.Ed.2d 877 (1986). Furthermore, pursuant to § 1738, federal courts must also give state

administrative decisions that have been reviewed by a state court preclusive effect.

*Mclaughlin v. Fisher*, 277 Fed.Appx. 207, 214 (3d Cir. 2008).

15

Under the principles of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)(citing *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210). As such, "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Mclaughlin*, 277 Fed.Appx. at 213-214 (quoting *Yamaha Corp. of Am. v. U.S.*, 961 F.2d 245, 254 (D.C.Cir. 1992))(italics in original). Thus, collateral estoppel may preclude "relitigation of an issue of evidentiary fact, of ultimate fact (i.e., the application of law to fact), or of law." *Id*. at 214 (quoting Restatement (Second) of Judgments § 27 cmt. c).

A suit will therefore be barred by the doctrine of collateral estoppel when: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Nat'l R.R. Passenger Corp. v. Pa. Public Utility Com'n*, 342 F.3d 242, 252 (3d Cir. 2003)(internal quotations omitted).

All four elements are applicable to Plaintiff's arguments regarding the date his certification expired. Similarly to Plaintiff's current action, Plaintiff's suit in state court turned significantly on the date of the expiration of his certification, and was thoroughly litigated as demonstrated by Judge O'Brien's Opinion for the Court of Common Pleas and affirmed by the Commonwealth Court. This finding must be deemed a final and valid judgment, as it

16

constitutes a state administrative decision, specifically the Civil Service Commission, that has been reviewed by a state court, which is alone sufficient, but whose opinion was also affirmed by the state court above it.

Due to the preclusive effect of the state court's decision with respect to many of the issues that Plaintiff raises and "facts" upon which he relies, the Court will give deference to the state court's findings and will not undertake a parallel analysis. As such, we accept as fact that Keslosky's police officer certification expired in 1999. *Keslosky*, 73 A.3d at 671. Further, the Commonwealth Court found that "it was the Police Commission, not the Borough, that determined that Keslosky's certification had expired in 1999 and that he had to undergo the re-certification process" and that "Keslosky's claim that the Borough caused his certification to lapse lacks merit." *Id.* at 671-672. These matters have been litigated, determined, and as a matter of state law, the highest Court that had mandatory jurisdiction has ruled on the issues and affirmed the lower court and state administrative agency's decisions. Therefore, we reject Plaintiff's arguments with respect to his certification expiring in 2001, as well as his arguments that the Borough's actions or inactions allegedly caused this expiration.

Relying on the District Court's August 31, 2009 Opinion in this case (Doc. 38), Plaintiff argues that this Court is not collaterally estopped by the state courts' decisions regarding the timing of Plaintiff's certification from deciding the discrimination claims. (Unoff. Tr., at 24). Specifically, in the Court's August 31, 2009 Opinion (Doc. 38), Judge

Munley stated that "[i]f plaintiff could prove that defendants acted deliberately to prevent him

from receiving the training he needed to be eligible to receive compensation, plaintiff would

not be precluded from prevailing on his claims due to his lack of certification." (Doc. 38, at

16). The Court further found that:

> though the petition references an alleged "vendetta by the former Mayor
> Torquato, the Borough Council or its members and/or the Police Department
> and/or its members," the petition does not address any discrimination on the
> basis of plaintiff's military service or retaliation because of plaintiff's attempts
> to protect his rights against discrimination. . . . [T]he issues raised in the state
> court proceeding do not implicate the case in this court and therefore have no
> preclusive effect.

(*Id.* at 22-23).

Plaintiff misinterprets the Court's ruling. A state law determination, such as the

timing of the expiration of Keslosky's certification, is entitled to deference. As a result,

Keslosky's claims of retaliation are not precluded in themselves, but the state law

determinations made by the state courts are entitled to deference in determining whether

Plaintiff's discrimination claims can survive summary judgment. Because Plaintiff's

certification has been determined, as a matter of state law, to have lapsed as of 1999, the

analysis of Plaintiff's federal claims will reflect this expiration of the certification where that

fact is relevant to Plaintiff's establishment of the elements necessary to show genuine

issues of fact for trial on those federal claims.

18

## B. Count II – First Amendment Retaliation

Count II of Plaintiff's Amended Complaint, brought against all defendants, alleges a violation of Keslosky's First Amendment right to freedom of speech and association. (Doc. 35).

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)(citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). "The first factor is a question of law; the second factor is a question of fact." *Id.* (internal citations and quotation marks omitted).

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L. Ed. 2d 689 (2006). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418.

As such, a Court must apply a three-step analysis in evaluating a public employee's

retaliation claim for engaging in protected activity. *Baldassare v. State of N.J.*, 250 F.3d

188, 194 (3d Cir. 2001).[7]

> First, plaintiff must establish the activity in question was protected. For this
> purpose, the speech must involve a matter of public concern. Once this
> threshold is met, plaintiff must demonstrate his interest in the speech
> outweighs the state's countervailing interest as an employer in promoting the
> efficiency of the public services it provides through its employees.
>
> If these criteria are established, plaintiff must then show the protected activity
> was a substantial or motivating factor in the alleged retaliatory action. Lastly,
> the public employer can rebut the claim by demonstrating it would have
> reached the same decision even in the absence of the protected conduct.

*Id.* at 195 (internal citations and quotation marks omitted).

In response to Defendants' statement of fact that "Mr. Keslosky is alleging that his

First Amendment Rights were infringed upon because he was being asked to step away

from the podium during Council meetings, that Council was not going to address the issues

of which Mr. Keslosky spoke, and that other individuals were not similarly restricted", (Doc.

105, ¶ 108), Plaintiff states:

> Admitted, but it involved more than just that allegation. By way of further
> answer, the Plaintiff spoke about matters involving the police department,
> pension fund, council members, Borough issues, etc., over years, and up to
> the present. The actions of the Defendants to deny him his First Amendment
> Rights include those alleged by the Defendant, but further include the
> Defendant's ongoing and intentional refusal to allow the Plaintiff to return to
> employment by first causing his MPOETC certification to expire, and second,

---

[7] The Third Circuit's decision in *Baldassare* preceded the Supreme Court's ruling in *Garcetti*.
However, a review of both decisions demonstrates that the *Baldassare* decision and the principles upon
which it is based are entirely consonant with the Supreme Court's holding in *Garcetti* as well as its
reasoning.

refusing to submit a Change of Status Form to MPOETC, or undertaking any
action to assist the Plaintiff in attending updates and training.

(Doc. 139, ¶ 108).

Plaintiff's response to Defendants' statement of material facts consists of mere
conclusory assertions.  Plaintiff has failed to come forward with evidence to support his
claims of retaliation and refute Defendants' statements that no dispute of material fact exists
such as to allow Keslosky's First Amendment claim to proceed further.

First, Plaintiff does not identify when he was asked to step away from the podium
during Council meetings or told that the Council would not address his issues.  Second,
Plaintiff's argument that Defendants caused his MPOETC certification to expire was
specifically rejected by the Commonwealth Court, a finding which is entitled to deference by
this Court. See Keslosky, 73 A.3d at 672 ("Keslosky's claim that the Borough caused his
certification to lapse lacks merit.").  With respect to Plaintiff's allegation that Defendants
refused to undertake any action to assist him in attending updates and training, this position
is contrary to the Commonwealth Court's affirmance of the Civil Service Commission's
decision wherein the Commonwealth Court stated that "Keslosky's requests to have the
Borough schedule him for training were made after June 2001, and are irrelevant" because
the Borough could not have granted such a request, Keslosky, 73 A.3d at 672.  Even if
Keslosky's claim that Defendants did not assist him was supported by more than a scintilla
of evidence, there is nothing in the record to indicate that Plaintiff made any effort to obtain
re-certification in the time period between 1999 through June 2001.

21

The Court will therefore only apply the *Baldasarre* three-step analysis to evaluate

Plaintiff's First Amendment claim as it relates to allegations of being asked to step away

from the podium during Council meetings and being told that the Council would not address

the issues of which Plaintiff spoke, and Plaintiff's suspension in June 2005.

### 1. Consideration of Plaintiff's Speech as Protected

"To be protected, the speech must implicate a matter of public concern . . . . Speech

implicates a matter of public concern if the content, form, and context establish that the

speech involves a matter of political, social, or other concern to the community." *Miller v.*

*Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008)(citing *Connick v. Myers*, 461 U.S. 138, 146-

148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). For instance, speech may be a matter of

public concern when the speaker seeks to "bring to light actual or potential wrongdoing or

breach of public trust" on the part of government officials. *Borden v. Sch. Dist. of Twp. of*

*East Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008)(quoting *Connick*, 461 U.S. at 148).

It is undisputed that Keslosky spoke at Council meetings "over the years" on matters

within the scope of the First Amendment (Doc. 132, at 20). However, Plaintiff offers

insufficient evidence to refute Defendants' contention that he "cannot identify with any

particularity the speech he claims was the basis for retaliation" or when this speech

occurred (Doc. 132, at 19). Keslosky states that he "constantly spoke publicly at Borough

Council meetings" and that "the topics ranged from complaints about the police department,

to community issues, and about the Mayor, certain council members, Sgt. Semenza, other officers, and the department's refusal to schedule updates and trainings." (Doc. 140, at 33).

While Keslosky fails to identify with any specificity when the aforementioned speech took place,[8] and his broad enumeration of the topics discussed are insufficient to demonstrate in what speech he engaged that implicated one or more matters of public concern, Plaintiff does cite to two newspaper articles to support his claim. In 2001, Keslosky reportedly spoke as to "the manner in which municipal police departments hire new officers", terming it "institutional racism" (*see* Rick Staren, *Area policeman launches campaign against 'institutional racism'*, CITIZENS' VOICE, Aug. 5, 2001), and in 1997, he "warned council . . . that if he is not allowed to take the sergeant's test soon, he could hold up a $74,406 COPS-FAST grant" (*see* Wendy Maopolski, *Cop warns he might stall grant*, THE TRIBUNE, Dec. 5, 1997). (*Id*.). Plaintiff's threat to "hold up" a grant clearly does not implicate actual or potential wrongdoing or breach of public trust on the part of government officials; but Plaintiff's speech that the department was engaged in "institutional racism" can reasonably be considered to be addressing a matter of public concern. Nonetheless, on the record, there is no specific evidence that Keslosky's comments on this topic were directed at the practices of the Old Forge Borough, as opposed to "any or all of the municipalities

---

[8] In his deposition, Keslosky states that he spoke before Borough Council several times regarding the promotions of Officers Bossi and Semenza, but was unable to identify the time period other than "believ[ing]" it was between September 1997 and March 1998, although "it may have extended beyond that time period, I am not absolutely certain at this time." (Dep. of Michael Keslosky, Jan. 24, 2012, at 50-51). Plaintiff's uncertainty with respect to whether this speech took place after 1998 precludes a determination that such speech was within the statute of limitations.

which follow the procedure." See Rick Staren, Area policeman launches campaign against 'institutional racism', CITIZENS' VOICE, Aug. 5, 2001.

Drawing inferences in favor of Plaintiff as the non-moving party and therefore crediting Keslosky's deposition testimony, he still must demonstrate triable issues of fact that his interest in the speech outweighs the Borough's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. See Baldassare, 250 F.3d at 194. Plaintiff fails to meet, or even address, this burden.

Ultimately, Plaintiff's failure to come forward with evidence showing issues of fact for trial as to the occurrence and protected nature of his speech, as well as whether it outweighs the Borough's countervailing interest, precludes a determination that these elements are at issue.

### 2. Plaintiff's Evidence Showing Disputed Issues of Material Fact as to his

#### Speech as a Substantial or Motivating Factor

Keslosky also fails to point to specific evidence on the record to establish a genuine issue of material fact to demonstrate that any protected speech was a substantial or motivating factor in the alleged retaliatory action(s). With respect to this factor, Plaintiff states, in conclusory fashion, that "[t]he Borough did respond with retaliation" as a result of Keslosky's constitutionally protected activity, and that Defendants' actions were motivated or substantially caused by protected activity as demonstrated by both Officer Harris'

24

testimony and the fact that "[Keslosky] had to return to work that day to face the very people he accused of doing it." (Doc. 140, at 33-34).

Officer Harris, a police officer with the Old Forge Borough, has been employed by the Borough for over 25 years and gave a deposition in this matter on August 3, 2010. (Dep. of Robert Harris, at 6, 8). Officer Harris only worked with Plaintiff through the 1990s and stated that to his knowledge, he did not believe that Chief Semenza, Bossi, or any of the councilmen, retaliated against Keslosky. (Id. at 13, 34). Plaintiff admits that Harris had no knowledge of any councilperson doing anything to Keslosky to retaliate against him. (Doc. 105, ¶ 157; Doc. 139, ¶ 157). Plaintiff's reliance on Officer Harris' testimony does not support his claims, and regardless, Officer Harris' opinions are irrelevant and do not present evidence of a motivation or a substantial cause for retaliation. As to Plaintiff's claim that "he had to return to work that day to face the very people he accused of doing it," it is unclear what event Plaintiff is referring to, the content of his purported speech, or in what manner he was retaliated against for such speech. Further, this claim establishes that the supposed retaliatory action, if any, necessarily occurred prior to Plaintiff's departure in March 1998 for an alleged stress related injury, thereby making it time-barred.

With the exception of the two aforementioned newspaper articles, Plaintiff does not provide dates with any specificity regarding when the alleged protected speech occurred or the actual content of this speech. Plaintiff also fails to put forth facts demonstrating why certain actions, such as being asked to step away from the podium during Council meetings

and being told that the Council would not address the issues of which Plaintiff spoke, and his suspension in June 2005, constitute retaliation for having engaged in protected speech. Without showing specific evidence on the record and by only offering vacuous arguments, Plaintiff does not establish any triable issues of fact. By not pointing to specific speech or the timing of such speech, Keslosky does not demonstrate a material issue with respect to a causal connection or temporal proximity between his protected speech and his suspension. (See Deps. of Michael Keslosky, Docs. 151, 152, 153, wherein Plaintiff's statements of protected activity are general, unspecific, and wholly conclusory, and are not identified as to the particular date, time, or specific content of the speech.).

As such, Keslosky does not point to any evidence on the record that creates an issue of fact as to whether Keslosky's protected speech was a substantial factor in Defendants' alleged retaliatory actions. Moreover, with respect to Keslosky's suspension, as discussed infra, Plaintiff does not put forth any evidence to refute, or otherwise place at issue, Defendants' contention that their decision was reasonably based on an inability to reinstate Keslosky as a police officer due to his lack of certification. As a result, Plaintiff cannot establish a causal link between his protected speech and Defendants' purportedly retaliatory actions. Consequently, Plaintiff is unable to show a triable issue of fact as to whether any protected speech was a substantial or motivating factor in the alleged retaliatory action. Thus, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim on this basis alone.

### 3. Basis for Defendants' Decision

Even if Plaintiff was successful in meeting his initial burden of establishing that he engaged in protected speech and that such speech was a substantial or motivating factor in Defendants' alleged retaliatory action, Defendants can successfully rebut his claims by demonstrating that they would have reached the same decision even in the absence of the protected conduct. *See Baldassare,* 250 F.3d at 195.

To succeed on his constitutional claims, including First Amendment retaliation, Keslosky must have first established that he was otherwise qualified to serve as a police officer, which in turn depends on when his certification expired. As previously discussed, Keslosky's certification expired in 1999, and this certification is necessary to serve as an Old Forge police officer. Keslosky's repeated refusals to comply with the requirements set forth in the September 1, 2004 letter from the Borough to Keslosky prevented the Borough from reinstating Keslosky to the position of police officer. Plaintiff fails to establish a genuine issue of material fact by putting forth any specific facts regarding his certification to contradict those offered by Old Forge demonstrating that they would have reached the same decision, specifically, Keslosky's suspension in 2005, even in the absence of any protected speech. This failure on Plaintiff's part presents a separate and independent basis for the grant of summary judgment to Defendants.

### 4. Statute of Limitations as Barring Plaintiff's Claim

On the record evidence, Plaintiff's claims are barred by the applicable statute of limitations. As extensively discussed with respect to Count III (42 U.S.C. § 1983), *infra*, Keslosky's constitutional claims are subject to a two-year statute of limitations. Here, Plaintiff is well-outside the requisite time period. Any evidence of purported retaliation put forth by Plaintiff that took place during the time Keslosky was working, necessarily occurred prior to March 1998. This includes the time period in which Plaintiff claims he was denied the opportunity to take the Sergeant's test, as well as when he was allegedly "harassed, disciplined, restricted in speech . . . [and] restricted in his ability to perform his job duties." (Doc. 35, ¶ 86). Further, any alleged retaliatory actions occurring prior to June 30, 2006 as a result of any protected speech that Keslosky may have engaged in are equally time barred, and Plaintiff offers no evidence of retaliatory actions after 2005, thereby also precluding him from asserting a continuing violation argument as a basis for extending the statute of limitations past 2005.[9] As such, even assuming that Keslosky's suspension in 2005 was in retaliation for his protected speech, for which Plaintiff provides no evidence, this suspension was more than three years prior to the filing of his original complaint with this Court. Therefore, Plaintiff's First Amendment claims are time-barred which provides an additional basis for the grant of summary judgment in favor of Old Forge Defendants.

---

[9] The reasons that Plaintiff's arguments with respect to a continuing violation fail are detailed in Section V(C)(2).

## C. Count III - 42 U.S.C. § 1983

In Count III, Plaintiff brings a 42 U.S.C. § 1983 claim against all defendants.

Keslosky states that his § 1983 claims "arise from the Borough's continuing actions to deny

the Plaintiff his updates and training for police certification" due to Plaintiff's prior lawsuits

against the Borough, speaking out in public forums against the Police Department and

Council members, and "[standing] in the way of Semenza becoming Chief." (Doc. 140, at

18). Specifically, in his Amended Complaint, Keslosky contends that:

> Defendants failed to afford the Plaintiff due process by refusing to allow him
> to return to employment, by barring his employment opportunities, and/or
> undertaking actions designed to keep the Plaintiff indefinitely suspended from
> employment, including but not limited to failing to issue Civil Service
> Decisions, failing to issue decisions in a timely manner and as required by
> law, failing to undertake and abide by rule and regulation and/or order to
> comply with procedural requirements, all of which was designed to delay
> and/or stall the Plaintiff from obtaining relief through the administrative
> processes and/or courts.

(Doc. 35, ¶ 96). Plaintiff's Amended Complaint also alleges that Defendants' actions

deprived him of equal protection under the law, violated his liberty interest, and were

retaliatory for exercising his right to free speech, and that the pattern and practices of the

defendants constituted a policy, custom and/or pattern of subjecting police officers, such as

Keslosky, to differential treatment. (Doc. 35, ¶¶ 103, 104, 109, 110).

Preliminarily, we note that Plaintiff's claims that he was denied due process when the

Borough did not return him to work and that he remained "indefinitely suspended" are claims

that have already been dismissed by Judge Munley's Memorandum Opinion and Order

29

(Doc. 38). Judge Munley's Opinion specifically explains the basis for the dismissal of these

claims:

> The court will grant the defendants' motion to dismiss plaintiff's procedural
> due process claims as they relate to plaintiff's suspension and/or termination.
> Plaintiff's allegations demonstrate that he was given notice and an opportunity
> to be heard in relation to his complaints about this termination and later
> suspension. He alleges that he brought his complaint about the allegedly
> pretextual basis for his suspension by the Borough Council, Borough Civil
> Service Commission and Court of Common Pleas of Lackawanna County. He
> does not allege that he was unaware of the reasons for his suspension or that
> those adjudicatory bodies refused to hear his complaint. Instead, his
> complaint appears to be that the Borough has refused to participate fully in
> legal proceedings in Lackawanna County Court and that the reasons for his
> suspension were inadequate. Plaintiff's allegations, then, are not that he did
> not receive the process that he was due, but that the defendants have not
> met procedural obligations in state court. He does not allege that the
> procedures available to him were inadequate.

(Doc. 38, at 26). In light of Judge Munley's Opinion, it is unnecessary to address any

arguments by Plaintiff with respect to violations of his procedural due process rights,

including any violation of his liberty interest.

We now turn to Plaintiff's other claims brought under § 1983 and a review of whether

such claims can survive summary judgment.

To succeed on a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate the

violation of a right protected by the Constitution or laws of the United States, committed by a

person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)(en

banc). Section 1983 is not in itself a source of substantive rights, instead providing a

remedy for violations of rights protected by other federal statutes or by the U.S. Constitution.

*City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L. Ed.2d 791 (1985).

Therefore, in evaluating a § 1983 claim, a Court must first "identify the exact contours of the

underlying right said to have been violated" and determine "whether the plaintiff has alleged

a deprivation of a constitutional right at all." *Id.* (citing *Cnty of Sacramento v. Lewis,* 523

U.S. 833, 841 n.5, 118 S.Ct. 1708, 140 L. Ed. 1043 (1998)). As applied in a case such as

the one currently before this Court, Plaintiff's remaining claims under § 1983 arise under the

First Amendment and Fourteenth Amendment Equal Protection Clause. Having previously

found no triable issues of fact with respect to Keslosky's First Amendment claim, we now

only address Plaintiff's equal protection claim.

## 1. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment directs that "all persons

similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S.

432, 439, 150 S.Ct. 3249, 87 L.Ed.2d 313 (1985). There are two theories by which a

plaintiff may assert an equal protection claim. Under the traditional theory, a plaintiff may be

protected from discriminatory treatment based on membership in a protected class such as

gender or race. *See, e.g., Cleburne,* 473 U.S. at 440 (finding that mental retardation was

not a suspect or quasi-suspect class). In contrast, a plaintiff who is not a part of a protected

class may still have an equal protection claim under the "class of one" theory. *See Village*

*of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

Although not specifically identified in the Amended Complaint, both parties argue

that Plaintiff alleges a "class-of-one" theory of equal protection. (*See* Doc. 132, at 16-17;

Doc. 140, at 31-33). Under the "class of one" doctrine, a plaintiff may obtain relief for equal

protection violations so long as a plaintiff shows that he or she has been "intentionally

treated differently from others similarly situated and that there is no rational basis for the

difference in treatment", *Willowbrook*, 528 U.S. at 564. According to the Third Circuit, to

prevail on a class of one equal protection claim, the plaintiff must demonstrate that "(1) the

defendant treated him differently from others similarly situated, (2) the defendant did so

intentionally, and (3) there was no rational basis for the difference in treatment." *Walsifer v.

Borough of Belmar*, 262 Fed.Appx. 421, 425 (3d Cir. 2008)(citing *Hill v. Borough of

Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

We examine the record evidence to determine if Plaintiff has come forward with facts

showing a genuine issue for trial as to any of these elements.

### a. Similarly Situated

The first step in an equal protection analysis is to ascertain whether a plaintiff was

treated differently than similarly situated entities. *Cleburne*, 473 U.S. at 439; *Melrose, Inc.

v. City of Pittsburgh*, 613 F.3d 380, 394 (3d Cir. 2010). Persons are similarly situated when

"they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203

(3d Cir. 2009)(internal quotations omitted).

Keslosky does not present evidence of any similarly situated individuals. Here,

Keslosky had not worked in any capacity for Old Forge since 1998. (Doc. 105, ¶ 21).[10]

Plaintiff himself chose to stop working, claiming to be suffering a stress related work injury

due to harassment at work, and filed a Workers' Compensation Claim, which was denied on

October 15, 2002, and affirmed by the Commonwealth Court on February 25, 2004. (Doc.

105, ¶¶ 13, 14, 16; Doc. 139, ¶ 13). While on leave, Plaintiff consulted with a family doctor,

psychologist, and psychiatrist "for the job-related stress that was the basis for his workers

compensation claim." (Doc. 105, ¶ 35).

In his Brief in Opposition to Summary Judgment, Plaintiff does not address

Defendants' argument that he is not similarly situated to any other Old Forge employee. At

best, he states that:

> When the Plaintiff was on sick leave, he was not allowed to obtain updates
> and training, but all other officers who went on sick leave were able to train.
> When any other officer showed up on a list for missing updates or training,
> the police department took care of the same; but not for Plaintiff. When the
> mayor was elected, he singled out the Plaintiff saying he would never work
> again as compared to other police officers.

(Doc. 140, at 32). Without pointing to any evidence on the record to support these

statements, Plaintiff's broad assertions fail to establish that any other Old Forge employee

---

[10] Plaintiff denies Defendants' statement of fact that he "ha[d] not worked as a Patrolman or in any other capacity for Old Forge since March 13, 1998" (Doc. 105, ¶ 21), arguing that "to the contrary, the Plaintiff was reinstated on December 16, 2003" (Doc. 139, ¶ 21). However, regardless of whether Plaintiff was technically employed by the Borough, the Court deems the fact that Plaintiff did not perform any job duties for Old Forge as undisputed.

was even arguably similarly situated to Plaintiff.[11]  Keslosky does not refer to any specific

evidence on the record identifying the officers allegedly on sick leave; the length of time

these unidentified officers were on sick leave; the reason for their sick leave, including

whether their leave involved a psychiatric and/or psychological disability; whether the

officers had filed workers' compensation claims; or whether they were notified while on

leave, as opposed to upon their return, that they were "on a list for missing updates or

training."  As a result, Plaintiff fails to establish a genuine issue of material fact to negate

Defendants' statement that he was not similarly situated to other police officers.

### b. Rational Basis

Even if Plaintiff could maintain that he was similarly situated to others, summary

judgment must still be granted in favor of Defendants on this claim because Old Forge had

a rational basis for their treatment of him, specifically their refusal to reinstate him as a

police officer.

"[R]ational-basis review in equal protection analysis 'is not a license for courts to

judge the wisdom, fairness, or logic' of government activity." *Holt Cargo Sys., Inc. v. Del.*

*River Port Auth.*, 20 F.Supp.2d 803, 825 (E.D. Pa. 1998)(quoting *Heller v. Doe*, 509 U.S.

312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)); *see also F.C.C. v. Beach Commns,*

---

[11] Plaintiff's statement that "[w]hen the mayor was elected, he singled out the Plaintiff saying he would never work again as compared to other police officers" is misleading and fails to demonstrate that he was similarly situated.  In his deposition, Mayor Torquato admitted to saying that Keslosky would not work and that "under no circumstances [would he] be assigned a shift without having had the proper credentials from the MPOETC." (Dep. of Anthony Torquato, at 13).  He further stated that this "was just a comment in passing . . . that not only Michael Keslosky but any other Officer that worked under my direction during my term as Mayor would not be on a schedule without the proper certifications from the state." (*Id.* at 14).

*Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)(holding that government actions will be found rational "if there is any reasonably conceivable state of facts" that could support it).

In accordance with the Municipal Police Officers' Education and Training Law, Act 120 of 1974, prior to performing the duties of a municipal police officer, individuals must have a current certification. The Commonwealth Court specifically found both that "substantial evidence supports the finding that Keslosky's police officer certification expired in 1999" and that "Keslosky's requests to have the Borough schedule him for training were made after June 30, 2001, and are irrelevant. . . . Keslosky's claim that the Borough caused his certification to lapse lacks merit." *Keslosky*, 73 A.3d at 671. Therefore, as a result of Keslosky's refusal to comply with the requirements set forth in the Borough's September 1, 2004 to him, he was neither entitled to return to work in the capacity of a police officer, nor could the Borough legally allow him to do so. Plaintiff offers no evidence to the contrary. Consequently, Plaintiff does not create any triable issue of fact with respect to whether Defendants' actions were rationally related to a legitimate state interest.

As a result of Plaintiff's failure to demonstrate a genuine issue of fact for trial on his equal protection claim, Old Forge Defendants are entitled to judgment as a matter of law on this claim.[12]

---

[12] Our finding that Plaintiff fails to raise a triable issue of fact with respect to his equal protection claim is supported by the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture. See, Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008)). In *Engquist*, the Supreme Court held that a class-of-one equal protection claim is not cognizable in the context of public

## 2. Statute of Limitations

All of Plaintiff's claims under § 1983 are also barred by the statute of limitations.

Under Pennsylvania law "the appropriate limitation period for § 1983 actions . . . is the two-

year limitation provided by 42 Pa.Cons.Stat.Ann. § 5524." *Smith v. City of Pittsburgh*, 764

F.2d 188, 194 (3d Cir. 1985). This statute of limitations begins to run when the plaintiff's

cause of action accrues, to wit, "as soon as a potential claimant either is aware, or should

be aware, of the existence of and source of an injury." *Oschiver v. Levin, Fishbine, Sedran*

*& Berman,* 38 F.3d 1380, 1385-1386 (3d Cir. 1994).

Here, Plaintiff asserts that Old Forge is incorrect that Keslosky's claims pursuant to §

1983 are barred by the applicable statute of limitations, for two reasons: (1) Plaintiff's claims

are subject to the continuing wrong doctrine, and (2) the September 1, 2004 letter, which

Defendant Old Forge contends begins the statute of limitations period, is not in fact the

trigger. (Doc. 140, at 14). Plaintiff's arguments fail on both fronts.

"The continuing violations doctrine is an 'equitable exception to the timely filing

requirement.'" *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001)(quoting *West v.*

*Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). "Thus, 'when a defendant's

---

employment. *Engquist,* 553 U.S. at 603-605. The Court explained that the Equal Protection Clause may still apply to public employers, but is not "implicated in the specific circumstance where . . . government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id.* at 605. Here, Keslosky's statements that he was treated differently than other employees are insufficient to classify him "in a way that raises equal protection concerns." *Id.* Instead, Old Forge's actions are an "exercise [of] the broad discretion that typically characterizes the employer-employee relationship." *Id.*

36

conduct is part of a continuing practice, an action is timely so long as the last act evidencing

the continuing practice falls within the limitations period; in such an instance, the court will

grant relief for the earlier related acts that would otherwise be time barred.'" *Cowell*, 263

F.3d at 292 (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927

F.2d 1283, 1295 (3d Cir. 1991)). For a plaintiff to benefit from the continuing violations

doctrine, the Third Circuit has adopted a non-exhaustive list of factors "to aid in

distinguishing between the occurrence of isolated acts of discrimination and a persistent,

ongoing pattern," including the subject matter of the alleged violations, specifically "whether

the violations constitute the same type of discrimination", and the frequency of the acts.

*Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013).[13]

As a preliminary matter, many of Plaintiff's arguments are foreclosed by the

Commonwealth Court's opinion. Plaintiff contends it is important to note that "the Borough

continually misrepresented that the Plaintiff's expiration of his MPOETC certification was

June 30, 1999 when it was in fact June 30, 2001" and that Plaintiff was not able to discover

the truth of this misrepresentation until 2008. (Doc. 140, at 15). However, the

Commonwealth Court found that "substantial evidence supports the finding that Keslosky's

---

[13] Relying on Third Circuit case law, both Plaintiff and Old Forge also cite "the degree of permanence" as a factor that this Court should consider. (Doc. 140, at 21-23; Doc. 157, at 5-7). However, the Third Circuit recently held that "it is clear that there is no longer a permanency requirement under the continuing violation doctrine." *Mandel*, 706 F.3d at 166. Therefore, the degree of permanence is no longer "the most important of the factors" that a court should consider, as previously stated in *Cowell*, 263 F.3d at 292 (citing *Berry v. Bd. of Supervisors of La. State Univ.*, 715 F.2d 971, 981 (5th Cir.1983)).

police officer certification expired in 1999" and therefore "Keslosky's requests to have the Borough schedule him for training were made after June 30, 2001, and are irrelevant." *Keslosky*, 73 A.3d at 671. Consequently, it is also irrelevant whether or not, as Plaintiff suggests, MPOETC's August 16, 2004 letter regarding Keslosky's certification requirements was the result of the Borough "mislead[ing]" MPOETC or whether MPOETC was aware of a possible "ill-motivated agenda by the Borough" (Doc. 140, at 15).

Further, Plaintiff contends that "for the September 1, 2004 date to constitute a harm that triggers a 2 year statute of limitations, the Borough would have to admit that its actions were indeed an unlawful employment practice." (Doc. 140, at 14-15). An admission by the Borough is unnecessary to this inquiry, and impermissibly shifts the burden, as it is clearly established that a statute of limitations begins to accrue "as soon as a *potential claimant* either is aware, or should be aware, of the existence of and source of an injury" and "hinges upon actual, as opposed to legal, injury", *Oschiver,* 38 F.3d at 1386, 1391 n.9 (emphasis added). Here, as of September 10, 2004, Plaintiff was clearly aware of the alleged injury, as evidenced by his attorney's letter with respect to Plaintiff's certification that "all other items that [the Borough] require[s] are illegal, and constitute a continuing pattern of discrimination against [Keslosky] by the Borough of Old Forge." (Doc. 105, Ex. 27).

Even if the Court were to determine that the statute of limitations did not begin to run

upon Plaintiff's receipt of Old Forge's letter in September, 2004, Plaintiff cannot establish a

continuing violation. A continuing violation requires the repetition, or recurrence, of acts by

the alleged offender. As such, "[t]he focus of the continuing violations doctrine is on

affirmative acts of the defendants" and a "continuing violation is occasioned by continual

unlawful acts, not continual ill effects from an original violation." *Weis-Buy Servs., Inc. v.*

*Paglia*, 411 F.3d 415, 423 (3d Cir. 2005)(citing *Cowell*, 263 F.3d at 293). The last

affirmative act taken on the part of Old Forge is the Borough Council's decision to suspend

Plaintiff as of June 15, 2005. Since this time, Old Forge has engaged in no affirmative

actions that could be construed as discrimination against Plaintiff, nor does Plaintiff offer

any record evidence to the contrary.

> While Keslosky argues that "no line has been drawn in the sand", he states:

> If any line were to be drawn, it would be the deposition of Major Mooney
> clearing up the Borough's role, what to do, and actually exposing the
> Borough's wrongs against the Plaintiff. Throughout every proceeding, the
> Plaintiff was told that he could not return to work because "this is what
> MPOETC" requires. In 2010, we learned that such representations by the
> Borough were outright false.

(Doc. 140, at 19). At best, Mooney's deposition demonstrates continual ill effects from any

potentially unlawful acts that Defendants took on and/or before June 15, 2005. Because

Plaintiff was clearly aware of the acts, and their purported illegality, well prior to Mooney's

deposition, and no other affirmative acts were taken after June 15, 2005, there are no

"continual unlawful acts" upon which Keslosky can base his argument that his cause of action under the applicable statute of limitations did not accrue until 2010. Further, this argument collapses of its own weight when the Court considers this claim in light of Keslosky's own actions, beginning with his adamant refusal to take the necessary steps to regain certification as reflected in his counsel's letter of September 10, 2004 letter to the Borough (Doc. 105, Ex. 27) and his filing of suit on June 30, 2008, some two years before the deposition of Mooney.

Despite any contention Keslosky makes that "[h]is § 1983 claims arise from the Borough's continuing actions to deny the Plaintiff his updates and training for police certification", and his assertions as to Defendants' purported numerous motives for doing so (Doc. 140, at 18), ultimately, even if the Court were to determine that Keslosky's § 1983 action did not accrue as of September, 2004, upon his receipt of the letter addressed to him from the Borough of Old Forge which detailed the steps necessary for re-certification (Doc. 105, Ex. 26), all of Plaintiff's claims stem from actions taken by the defendants prior to his June 15, 2005 suspension. Thus, the actions and events giving rise to Plaintiff's claims occurred more than three years prior to the filing of his Complaint with this Court. As a result, Plaintiff is outside the requisite two year statute-of-limitations, cannot assert any continuing violation after June 2005, and is time-barred from bringing a § 1983 claim.

Summary judgment therefore must be entered in favor of the Old Forge Defendants on Plaintiff's § 1983 claims.

## D. Count IV - Uniformed Services Employment & Re-employment Rights of Members ("USERRA") [14]

Plaintiff's Amended Complaint states that in accordance with USERRA, "as of July 1,

2004, [he] was entitled to re-employment with the Borough of Old Forge as a police officer,

as well as, his rights to retention, promotions, and any other benefits of employment by the

Old Forge Borough" (Doc. 35, ¶ 118). While the Commonwealth Court's state law

determinations preclude Plaintiff's arguments, specifically, Plaintiff's allegations that

Defendants "improperly demanded that the Plaintiff produce a current certification from the

---

[14] While Plaintiff originally brought his USERRA and PMAA claims against all Defendants (Doc. 35), the claim is only potentially viable against the Borough of Old Forge.

Under USERRA:

the term "employer" means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including--

(i) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities. . .

38 U.S.C. § 4303(4)(A).

Councilmembers Scarnato, Heyen, and Helbing cannot be held liable as they did not individually have the authority to hire or fire Plaintiff, nor was Plaintiff required to report to them individually. *See Satterfield v. Borough of Schuylkill Haven*, 12 F.Supp.2d 423, 438 (E.D. Pa. 1998)(finding that because plaintiff did not report to any single Borough Councilmember and no single Councilmember had individual power over the plaintiff, the Councilmembers were not "employers" within the meaning of USERRA). The same analysis applies to Minella, as a single member of the Civil Service Commission. With respect to Torquato, Plaintiff admits that the Mayor has no responsibility for the hiring and firing process (Doc. 105, ¶ 237; Doc. 139, ¶ 237). Further, nothing in the record evidence shows Torquato had a supervisory role or other role or responsibilities in monitoring compliance with the police officers' obligation to acquire and maintain certification under MPOETC.

Plaintiff is also unable to bring a USERRA and PMAA claim against Semenza. On August 1, 2004, Keslosky notified the Old Forge Borough Chief of Police, Frank Avvisato, that he had been "honorably released from active duty" and wished to be reinstated. (Aug. 1, 2004 Letter from Keslosky to Avvisato, Doc. 105, Ex. 19). Semenza was not voted Officer in Charge until January or February of 2005 (Dep. of Lawrence Semenza, at 51-52), and was appointed Chief of Police on June 15, 2005 (Notes of Special Meeting of June 15, 2005, Doc. 105, Ex. 54). Plaintiff points to no evidence on the record indicating that prior to January, 2005, Semenza had the ability to hire or fire Keslosky, that he was Keslosky's immediate supervisor, or that the Old Forge Police Chief had delegated any employment-related responsibilities to Semenza that would have placed Semenza within the definition of an "employer" pursuant to USERRA at the time that Keslosky was originally seeking reinstatement upon his return from the armed service.

[MPOETC]" and "put obstacles in the path of the Plaintiff obtaining his updates for MPOETC

certification" (Doc. 35, ¶¶ 122, 123), issues of fact remain as to whether Defendants were

required to re-employ Plaintiff in a position of like seniority to that of a police officer, which

he was qualified to perform, pursuant to 38 U.S.C. §§ 4312 and 4313, as well as whether

Keslosky's military status rises to the level of a motivating or substantial factor in the

Defendants' adverse employment action, as required to establish a claim under 38 U.S.C. §

4311.

### 1. Statute of Limitations

In 1990, Congress enacted 28 U.S.C. § 1658 "in response to criticism regarding the

lack of a uniform federal statute of limitations. Among other purposes, Congress sought to

minimize the federal courts' practice of borrowing statutes of limitations from the states.

The result was a 'catch all' statute of limitations for federal claims." *Middleton v. City of*

*Chicago*, 578 F.3d 655, 665 (7th Cir. 2009)(citing *Jones v. R.R. Donnelley & Sons Co.*, 541

U.S. 369, 377-80, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)). Pursuant to § 1658, "[e]xcept

as otherwise provided by law, a civil action arising under an Act of Congress enacted after

the date of the enactment of this section [Dec. 1, 1990] may not be commenced later than 4

years after the cause of action accrues." 28 U.S.C. § 1658(a).

On October 10, 2008, Congress enacted the Veterans' Benefits Improvement Act

("VBIA"), striking a provision in USERRA that prohibited applying state statutes of limitation.

The VBIA provides: "If any person seeks to file a complaint or claim with . . . a Federal or

State court under [USERRA] alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim." 38 U.S.C. § 4327(b).

Keslosky filed this action on June 30, 2008 before the VBIA's passage, so the four-year catch-all statute of limitations applies to his USERRA claim. *See Baldwin v. City of Greensboro*, 714 F.3d 828, 837 (4th Cir. 2013)(holding that VBIA did not apply retroactively to the plaintiff's USERRA claim and applying Section 1658's statute of limitations); *Middleton*, 578 F.3d at 665. Regardless of whether the Court were to determine that the statute of limitations began to run as of Plaintiff's receipt of Old Forge's letter in September, 2004 or as of the Old Forge Borough Council's vote to suspend Plaintiff in June, 2005, Keslosky's USERRA claim is timely.

## 2. Reemployment and Discrimination under USERRA 38 U.S.C. §§ 4301-4333

Under USERRA, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of [USERRA]." 38 U.S.C. § 4312(a). USERRA's provisions operate to provide job security to returning veterans, namely, "Sections 4312 and 4313, the 'reemployment provisions,' entitle veterans to reemployment after military service and prescribe the positions to which they are entitled upon returning. 38 U.S.C. §§ 4312, 4313. Section 4311, the 'discrimination provision,' prohibits employers from discriminating against veterans on the basis of their military

43

service.  38 U.S.C. § 4311." *Petty v. Metro. Gov't of Nashville & Davidson Cnty. (Petty II)*, 687 F.3d 710, 716 (6th Cir. 2012).

"§ 4312 requires an employer to rehire covered employees; § 4311 then operates to prevent employers from treating those employees differently after they are rehired; and § 4316 prevents employers from summarily dismissing those employees for a limited period after they are rehired." *Id.* at 304 ("Section 4312 places service people and employers on notice that, upon returning from service, veterans are entitled to their previous positions of employment.  After being reemployed, the service person is protected by §§ 4316(c)[15] and 4311."). "An employee proceeding under § 4311 has the burden of proving that the employer discriminated against him or her based on a status or activity protected by USERRA.  Section 4312 imposes no such burden." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006)(citing 20 C.F.R. § 1002.22).

### a. Keslosky's Re-Employment Claim

Under Count IV, the following questions of fact remain with respect to Keslosky's re-employment claim:

*(1) Whether Keslosky's re-employment would have imposed an undue hardship on the Borough of Old Forge.*

---

[15] In relevant part, § 4316(c) provides that "[a] person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause . . . within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days."  38 U.S.C. § 4316(c).

To be eligible for re-employment under § 4312, Keslosky "is not required to prove that the employer discriminated against him or her because of the employee's uniformed service." 20 C.F.R. § 1002.33. Therefore, despite Old Forge's contention that Plaintiff has failed to establish that his membership or participation in the Uniformed Services was the substantial or motivating factor in Defendants' adverse employment actions (Doc. 132, 38-40), such a showing by Plaintiff is not necessary to sustain his re-employment claim under USERRA. This showing is only necessary to successfully refute Defendants' contention that they did not violate § 4311, the discrimination provision. Instead, under § 4212, Plaintiff must have given advance verbal or written notice to his employer, the cumulative length of his absence and all previous absences by reason of service must not have exceeded five years, Plaintiff must have reported to, or submitted an application for re-employment to, his employer, and his separation from military service must have been under "honorable conditions". 38 U.S.C. § 4312; *see also Petty v. Metro. Gov't of Nashville & Davidson Cnty. (Petty I)*, 538 F.3d 431, 442 (6th Cir. 2008). Here, it is undisputed that Plaintiff provided the Borough with his orders prior to his deployment, was absent for a period of six months, and upon his return immediately notified the Old Forge Chief of Police that he had been "honorably released from active duty" and wished to be reinstated. Therefore, Plaintiff can pursue his claim for violations of his right to re-employment under § 4212. However, a

triable question of fact remains as to whether the re-employment of Keslosky would impose an "undue hardship" on Old Forge, thereby precluding recovery by Plaintiff.[16]

*(2) Whether another job was available to Keslosky, other than the one for which he was not qualified due to his lack of certification.*

Assuming Plaintiff successfully meets the pre-requisites under § 4312, Keslosky is entitled to the protections of § 4313.

Section 4313 provides that a returning veteran whose period of service was greater than 90 days is entitled to be reemployed "in the position of employment in which the person would have been employed if the continuous employment . . . had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A). This subsection provides for so-called "escalator" promotions, which places "the returning employee in the position he or she would have occupied 'with reasonable certainty'[17] had employment not been interrupted by military service." *Milhauser v. Minco Prods., Inc.*, 701 F.3d 268, 271 (8th Cir. 2012)(citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284-85, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946)); *see also Williams v. Dep't of the Air Force*, 2013 WL 1339017, at \*2-3 (Fed. Cir. 2013)("Williams has not refuted the agency's showing that he could not have been

---

[16] Pursuant to § 4312, "[a]n employer is not required to reemploy a person under this chapter if . . . in the case of a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313, such employment would impose an undue hardship on the employer." 38 U.S.C. § 4312(d)(1)(B).

[17] 20 C.F.R. § 1002.191. "Depending on the circumstances, the escalator principle may cause an employee to be reemployed in a higher or lower position, laid off, or even terminated." *Id.* § 1002.194.

46

'qualified to perform the duties of the GS–9 position . . . until he completed his training

requirement, or that it would have taken him about 44 weeks longer to complete that training

requirement after his return from active duty.").

If the individual would not have qualified for an escalator promotion, then he is

entitled to return to his original position, that is:

> the position of employment in which the person was employed *on the date of
> the commencement of the service in the uniformed services*, or a position of
> like seniority, status and pay, the duties of which the person is qualified to
> perform, only if the person is not qualified to perform the duties of a position
> referred to in subparagraph (A) after reasonable efforts by the employer to
> qualify the person.

38 U.S.C. § 4313(a)(2)(B) (emphasis added).

In the case of an individual who has a disability incurred in, or aggravated during, his

period of service, and who, following reasonable efforts by the employer to accommodate

the disability, is not qualified due to the disability to be employed in the position of

employment in which he would have been employed if his continuous employment had not

been interrupted by the military service, USERRA provides that the person is entitled to

return:

> (A) in any other position which is equivalent in seniority, status, and pay, the
> duties of which the person is qualified to perform or would become qualified to
> perform with reasonable efforts by the employer; or
> (B) if not employed under subparagraph (A), in a position which is the nearest
> approximation to a position referred to in subparagraph (A) in terms of
> seniority, status, and pay consistent with circumstances of such person's
> case.

38 U.S.C. § 4313(a)(3).

Because an individual must have a current certification prior to performing the duties

of a municipal police officer and Keslosky's certification expired in 1999, Keslosky was not

qualified to be reinstated in the capacity of a police officer upon his return from his military

service. Further, Keslosky states that he "did not incur any disability in service" (Doc. 140,

at 39) and does not found his claims under USERRA in whole or in part on § 4313(a)(3)'s

protections.[18] Accordingly, the Borough of Old Forge is entitled to summary judgment on

any claim by Plaintiff that he was entitled to return to work as a police officer under §

4313(a)(2)(A) or (B) or § 4313(a)(3).[19] However, this does not end our inquiry. An issue of

fact exists as to whether another job was available to Keslosky under § 4313(a)(4) other

than that of a municipal police officer.

If the individual is not qualified to be employed under the provisions of §

4313(a)(2)(A) or (B) or § 4313(a)(3), and cannot become qualified with reasonable efforts by

the employer as required under § 4313(a)(2)(B), he is nonetheless entitled to employment

> in any other position which is the nearest approximation to [the position of
> employment in which the person would have been employed if the continuous

---

[18] Our ruling that Plaintiff has neither asserted nor presented a triable issue of fact that §
4313(a)(3)'s provisions were violated by the Borough of Old Forge in connection with his request to be re-
employed on the conclusion of his military service does not compel a similar determination in connection
with Plaintiff's discrimination claim under § 4311. Evidence in the record suggests that the Borough may
have had concerns about whether Keslosky's military service affected his mental health. (*See* Aug. 10,
2004 Letter from Torquato, Doc. 105, Ex. 21 (wherein Mayor Torquato explains to the Borough Council and
others that he requested Keslosky provide him with additional information regarding his discharge from the
military "in an effort to protect the Borough of Old Forge from being subjected to a situation involving
possible medical conditions or health issues which may directly relate to the suitability of Mr. Keslosky to
return to employment in the Old Forge Police Department.")).

[19] Notwithstanding our entry of summary judgment under § 4313(a)(2)(A) or (B) or § 4313(a)(3),
Plaintiff is not foreclosed from returning to work as a police officer if, and when, he re-acquires MPOETC
certification.

employment of such person with the employer had not been interrupted by such service, or in the position of employment in which such person was employed on the date of the commencement of the service in the uniformed services] which such person is qualified to perform, with full seniority.

*Id.* § 4313(a)(4). "The burden of proving that a returning veteran is not qualified under § 4313 falls on the employer, not the employee." *Petty I*, 538 F.3d at 444.

Despite Plaintiff's claim that the Borough's reinstatement of Keslosky in December 2003 was unconditional (Doc. 140, at 5), this claim is not factually supported. Plaintiff does not point to any evidence on the record that demonstrates the Borough would not have required Keslosky to obtain proper certification or meet any other requirements necessary to perform the duties of a police officer prior to beginning work in that capacity. Instead, the Borough's Predetermination Hearing Findings of Fact and Conclusions, reinstating Keslosky, broadly states that "the Borough Council has decided to allow you to return to work." (Doc. 105, Ex. 17). The issue thus becomes to what position did Plaintiff have a right to return. As Defendants correctly state, regardless of whether Plaintiff's certification expired in 1999 or 2001, "[t]here is no question that as of December 18, 2003 Mr. Keslosky lacked the qualifications necessary to serve as a Municipal Police Officer as his MPOTEC certification had expired . . . [and] under Pennsylvania law, Mr. Keslosky was an individual who needed MPOETC certification prior to being legally qualified to serve as a Police Officer in Pennsylvania." (Doc. 132, at 39-40).

While it is clear that Keslosky was not qualified to return to his position as a police officer, Defendants provide no evidence that there were no other positions available or that

Plaintiff was not qualified to perform *any* available non-police officer duties within the Police Department, or that they were unable to qualify Keslosky for a different job should qualifications be necessary.[20] Further, Plaintiff contends that, upon returning to work in 1997, he was both given a desk job and received his MPOETC certification "after missing approximately 7 years of updates and training." (Doc. 139, ¶ 11; Doc. 140, at 40). As a result, there are factual issues with respect to what positions were available to Plaintiff, if any, and if so, whether any may qualify as a position of like seniority and status which Plaintiff was, or could be, qualified to perform.

### b. Keslosky's Discrimination Claim

Defendants request summary judgment on Plaintiff's USERRA claim largely in reliance upon § 4311. As such, they argue that "for a plaintiff to establish a *prima facie* case and thereby survive Summary Judgment, he must show that his membership or participation in the Uniform Services was the substantial or motivating factor behind the employer's adverse employment action." (Doc. 132, at 38). As previously stated, unlike a re-employment claim under USERRA, a claim brought under USERRA's discrimination provision requires a plaintiff to demonstrate that an employer discriminated against him based on a status or activity protected by USERRA. *See Francis*, 452 F.3d at 303 (citing 20 C.F.R. § 1002.22; 20 C.F.R. § 1002.33).

---

[20] The Borough's September, 2004, letter to Keslosky and the subsequent measures it took to inform Keslosky of the steps necessary to re-certify as a police officer demonstrate they engaged in reasonable efforts to qualify Plaintiff for his prior position. However, there is a question whether there were other positions available that may have required different qualifications by Keslosky, and if so, whether he would have applied for them and completed any requisite qualification and training.

Section 4311 prohibits an employer from denying a military service member "initial

employment, reemployment, retention in employment, promotion, or any benefit of

employment . . . on the basis of that membership, . . . performance of service, . . . or

obligation." 38 U.S.C. § 4311(a). This provision is violated "if the person's membership, . . .

service, . . . or obligation for service . . . is a motivating factor in the employer's action,

unless the employer can prove that the action would have been taken in the absence of

such membership. . . ." *Id*. at § 4311(c)(1). By these very terms, USERRA "establishes a

two-step burden-shifting framework by which to analyze such claims [of discrimination]."

*Murphy v. Radnor Tp.*, 542 Fed.Appx. 173, 176 (3d Cir. 2013).

> First, the plaintiff alleging the discriminatory act bears the initial burden of
> showing that the employee's military service was a substantial or motivating
> factor in the adverse employment action.
> . . .
> If the plaintiff meets his burden, the burden of proof then shifts to the
> employer, who must prove that it would have taken the adverse action for
> non-discriminatory reasons, regardless of the employee's military
> service. This standard of proof is the "but for" test.

*Id*. at 176-177 (internal citations and quotations omitted).

"[M]ilitary status is a motivating factor if the defendant relied on, took into account,

considered, or conditioned its decision on that consideration." *Id*. at 177. Plaintiff may rely

on both direct and circumstantial evidence to meet his initial burden of demonstrating that

his military status was a motivating or substantial factor in the employer's adverse

employment action. Such factors include:

proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed.Cir. 2001). In determining whether the employee has met his burden of proof, the Court may consider all record evidence, including the agency's explanation for its actions. *Id.*

Once the burden shifts to the employer, the "but for" test requires that "if the employer had two reasons for taking an adverse action against the employee, one of them forbidden by the statute and the other not, and the employer can show that even if the forbidden one had been absent the adverse action would still have been taken, the employee loses." *Murphy*, 542 Fed.Appx. at 177 (quoting *Madden v. Rolls Royce Corp.*, 563 F.3d 636, 638 (7th Cir. 2009)).

In the present case, as a matter of law, Keslosky could not return to the Borough of Old Forge as a police officer. Therefore, Plaintiff cannot demonstrate that the Borough discriminated against him under § 4311 with respect to § 4313(a)(2)(A) or (B) or § 4313(a)(3). Plaintiff's cause of action under § 4311 is only viable if there was a position available to him pursuant to the catch-all provision of §4313(a)(4).

Here, an issue of fact as to whether Plaintiff's military status constitutes a "substantial" or "motivating" factor in Defendants' actions, allows Plaintiff to marginally meet his initial burden of proof. Defendants contend:

There is no reference in any of the correspondence between Old Forge and MPOETC regarding Mr. Keslosky's Military status. There is no reference in any of the correspondence from Old Forge Borough to Mr. Keslosky regarding his Military status. There is no reference in Old Forge Council's June 2005 minutes or vote suspending Mr. Keslosky without benefits of his Military status.

(Doc. 132, at 40). Plaintiff does not respond to these assertions or offer any evidence indicating that his military status was a consideration of any Defendant. Instead, Plaintiff's brief in opposition to summary judgment merely states that "[t]here is absolutely no excuse for the Defendant's refusal to employ the Plaintiff . . . and there is only one logical conclusion to draw from the Plaintiff being on the police roster, being activated to the military, and being refused re-employment when he returned – that the Defendant violated [USERRA]." (Doc. 140, at 40).

At best, the Court can read Plaintiff's sparse assertion as arguing a temporal connection between his military status and Old Forge's refusal to reemploy him. However, this fact alone presents only tenuous and weak circumstantial evidence of Defendants' motivation. As previously stated, Keslosky could not have been on the police roster at the time of his military activation due to his lack of certification. Rather, the Borough's decision in December, 2003, only guaranteed him employment in some capacity for which he was qualified.

Ironically, Defendants point to the one piece of evidence that creates a genuine issue of material fact with respect to their motivation, thereby preventing the grant of summary judgment in their favor. Defendants state that "the most that can be stated

regarding Mr. Keslosky's Military discharge was that Mayor Torquato had a concern that the

discharge paperwork received from Mr. Keslosky was redacted . . . [and s]pecifically, Mr.

Torquato was concerned regarding any health issues of Mr. Keslosky." (Doc. 132, at 40

(citing Dep. of Anthony Torquato, Doc. 105, Ex. 48, at 62-63)).   Compounding Defendants'

statement is Torquato's August 10, 2004 letter to "All Members of Borough Council[;]

Margaret Mazza, Borough Manager[;] Chief Frank Avvisato[; and] Mr. William Rinaldi,

Esquire", wherein he provides the recipients with "information . . . provided to [him] at [his]

request to have additional details regarding Mr. Keslosky's separation from the US Army

and National Guard." (Aug. 10, 2004 Letter from Torquato, Doc. 105, Ex. 21).   Torquato

explains that

> [he] had requested this additional information from Mr. Keslosky in an effort to
> protect the Borough of Old Forge from being subjected to a situation involving
> possible medical conditions or health issues which may directly relate to the
> suitability of Mr. Keslosky to return to employment in the Old Forge Police
> Department.

(Id.). The letter concludes by "requesting an urgent meeting . . . to further discuss this

matter." (Id.).   Torquato's letter and deposition indicate that the Borough's decision not to

immediately reinstate Plaintiff and/or place him in an appropriate position was conceivably

based in large part on his military service or that Plaintiff's service may possibly have been

used as a pretense to prevent Keslosky from returning.   Additionally, to the extent that

Plaintiff is arguing that Defendants should have inquired into his certification immediately

upon the Borough's December, 2003, decision as opposed to waiting until August, 2004,

54

Torquato's letter presents an issue of fact as to whether Keslosky's military status motivated

Defendants' actions. Consequently, there is sufficient evidence in the record to create a

triable issue of fact as to whether Keslosky's military status rises to the level of a motivating

or substantial factor in the Defendants' adverse employment action, specifically Old Forge

Borough's failure to re-employ Plaintiff in a position for which he may have been entitled

under § 4313(a)(4).[21]

Accordingly, Defendants' motion for summary judgment on Count IV is denied with

respect to Keslosky's re-employment and discrimination claims.

### E. Count V – Pennsylvania Department of Military & Veterans Affairs

Unlike Plaintiff's USERRA claim, wherein he asserts a re-employment claim in

addition to a possible discrimination claim, Plaintiff's PMAA claim relies entirely on

allegations of discrimination by Old Forge (*see* Doc. 35, ¶¶ 136-141; Doc. 140, at 40).

PMAA prohibits discrimination by employers on the basis of an individual's military

service. Under PMAA,

> [i]t is unlawful for the Commonwealth or any of its departments, boards,
> commissions, agencies or any political subdivision, or for any private
> employer, to refuse to hire or employ any individual not on extended active
> duty because of his membership in the [military] . . . or to discharge from
> employment such individual, or to otherwise discriminate against such
> individual with respect to compensation, hire, tenure, terms, conditions or
> privileges of employment because of such membership. . . .

51 PA. CONS. STAT. ANN. § 7309(a).

---

[21] As a result of genuine issues of material fact with respect to Plaintiff's ability to meet his initial burden of proof, the second prong of the § 4311 analysis is an issue for trial.

With respect to PMAA, the Third Circuit has recognized that "there is scant case law in our Circuit." *Murphy*, 542 Fed.Appx. at 180. In the absence of such case law, the Circuit has predicted that the Pennsylvania Supreme Court would interpret PMAA's provisions in conformity with USERRA and that the same § 4311 two-step burden-shifting framework should be applied. *Id.* When an issue is unsettled under Pennsylvania case law, we are bound by the Third Circuit's determination when it has predicted how the Pennsylvania Supreme Court will decide the issue. *See, e.g., Martin v. Ford Motor Co.*, 765 F.Supp.2d 673, 685 n.8 (E.D. Pa. 2011)(quoting *DeFebo v. Andersen Windows, Inc.*, 654 F.Supp.2d 285, 293 (E.D. Pa. 2009)).

Because we have determined that there are triable issues of fact with respect to Plaintiff's USERRA claim of discrimination under § 4311, the Court will also deny Defendants' motion for summary judgment on Count V.

## F. Counts VI, VII, VIII, IX – Violations of the Pennsylvania Human Relations Act and Title VII

Plaintiff alleges violations by the Borough of Old Forge of the PHRA and Title VII, specifically, violations of (1) 43 P.S. § 955(a) for discrimination on account of national origin/ancestry (Count VI); (2) 43 P.S. § 955(a) for discrimination on account of religion (Count VII); (3) 43 P.S. § 955(d) for retaliation (Count VIII); and (4) Title VII (Count IX) by "discriminat[ing] against the plaintiff with respect to his compensation, terms, conditions, or privileges of employment based on his national origin and religion . . . ." (Doc. 35).

Title VII and the PHRA both prohibit discrimination by an employer against an individual on the basis of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a); 43 P.S. § 955(a). In applying the PHRA, the Act is construed consistently with interpretations of Title VII. *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-1084 (3d Cir. 1995).

Each of Plaintiff's claims under the PHRA and Title VII fail due to Keslosky's lack of qualification for the position upon which he bases his claim, specifically, a police officer in the Old Forge Borough. Furthermore, a significant number of the alleged acts upon which Plaintiff bases his claims are either time-barred or Plaintiff has failed to identify the time of their occurrence. We will therefore grant Old Forge's motion for summary judgment on Counts VI, VII, VIII, and IX.

### 1. Statute of Limitations

The PHRA requires that "any complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination". 43 P.S. § 959(h). In a deferral state, such as Pennsylvania, a claim with the Pennsylvania Human Relations Commission is dual filed with the U.S. Equal Employment Opportunity Commission, which allows a claimant to file his complaint within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1). However, the 300-day statute of limitations only applies to allegations in support of a plaintiff's Title VII claim, not claims brought pursuant to the PHRA. *See Mandel*, 706 F.3d at 165 (concluding that Plaintiff's PHRA claims were

time-barred because "[t]he 300-day extended statute of limitations applies only to the Charge, not to the PHRA filing.").

Keslosky filed a Complaint with the PHRC on January 28, 2002, which was then cross-filed with the EEOC. (Doc. 105, ¶ 17). He subsequently filed an amended complaint on February 8, 2008 with both the PHRC and the EEOC. (*Id.* at ¶ 18). On May 13, 2008, the PHRC issued Plaintiff a notice of closing letter, stating that "the complaint should be dismissed because the facts of the case do not establish that probable cause exits to credit the allegations of unlawful discrimination." (Doc. 105, Ex. 10).

Defendants argue that the acts which form the basis of Counts VI and VII, violations of the PHRA based on discrimination on account of national origin/ancestry and discrimination on account of religion, occurred more than 180 days prior to Plaintiff's filing of the PHRC Complaint, and the Counts are therefore barred by the statute of limitations. (Doc. 132, at 22-24). Plaintiff's rebuttal that because the PHRC dual filed the Complaint with the EEOC, Keslosky's allegations are within the requisite statutory period, "and other allegations were continuous in nature up to and beyond the filing" (Doc. 140, at 34) is without merit. The 180-day statute of limitations operates to bar any alleged unlawful employment practices brought pursuant to the PHRA. The allegations that occurred within 300 days of the filing of the PHRC Complaint, but more than 180 days of the filing, survive only with respect to Keslosky's Title VII claim.

Keslosky's PHRC Complaint includes a broad array of allegations, all of which are time-barred under the PHRA, and the majority of which are time-barred under Title VII. Keslosky's PHRC Complaint includes his application for the sergeant's position in 1997, and the subsequent events ultimately resulting in its denial; allegations that since his hiring, he has been the subject of comments such as "Roundhead" and "hard headed Russian" by unidentified "co-workers and superiors"; and that since his hiring, he has been scheduled to work all the Christian holidays, but not given time off for Orthodox holidays despite his requests to not be scheduled on those days. (PHRC Complaint, Doc. 150, Ex. 39, ¶¶ 5-11, 18, 25-26).

Temporally, none of the aforementioned actions is within 180-days of Plaintiff's PHRC Complaint. The only actions which Plaintiff references in his PHRC Complaint with respect to violations of the PHRA based on discrimination on account of national origin/ancestry that fall within the 300-day statute of limitations, and therefore may support his Title VII claim, are allegations that on July 24, 2001, James Minella, Borough Civil Service Commission Chairman, told him he would not be promoted, the promotion test would not be given, and that Keslosky should sue the Borough, and that upon reporting these comments to Borough officials on August 21, 2001, the officials refused to take any action. (PHRC Complaint, ¶¶ 13-14).[22] All other actions enumerated in the PHRC

_____

[22] Despite the fact that Minella's 2001 comment initially appears to survive the Title VII statute of limitations requirement, such a finding may not be made. During his deposition, Keslosky stated that Minella made these comments "around the time of the promotions of Semenza and Bossi and it may also have been at another time after that." (Dep. of Michael Keslosky, Jan. 24, 2012, at 117). Keslosky was

Complaint are time-barred. However, as will be discussed, even if such events were not

barred, Plaintiff presents insufficient evidence as to these alleged actions to create any

genuine issues of material fact to support his PHRA and Title VII claims.

Furthermore, Plaintiff does not present any evidence to establish a triable issue of

fact with respect to discrimination on the part of most of the individual Old Forge

defendants. Keslosky stated that he could not recall Old Forge councilmembers Heyen,

Scarnato, and Helbing, making comments in regard to his ethnicity or religion. (Doc. 105,

¶¶ 28-30; Dep. of Michael Keslosky, Jan. 24, 2012, at 115-116). With respect to Semenza,

Keslosky stated in his deposition that Semenza made comments "over the years" including

"referring to me as a round head, a hard headed Russian, and making derogatory remarks

in regards to . . . not eating meat on Friday, my holiday not being on [December] 25th."

(Dep. of Michael Keslosky, Jan. 24, 2012, at 110-111). Keslosky could not identify the

timing of these comments, but in response to a question regarding whether the statements

unable to identify the other occasion(s) that these comments occurred. (Dep. of Michael Keslosky, Jan. 24, 2012, at 117-118; Dep. of Michael Keslosky, Feb. 24, 2012, at 76). Plaintiff therefore fails to support his PHRC allegations in his own deposition and offers no evidence, other than his own unsubstantiated opinions, to indicate why Minella allegedly made such a statement. Even assuming that Minella did make the same comments in 2001 as he did in 1997, Keslosky's deposition demonstrates he is attempting to resurrect a claim of which he was aware in 1997.

To the extent that Keslosky's claim against Minella is either that Minella was responsible for Keslosky's failure or inability to be promoted to sergeant or that Minella was responsible for the denial of Keslosky's appeal to the Civil Service Commission on his claim for promotion, it is well-settled that a single member of a body, such as the Civil Service Commission, cannot be held individually liable for the collective action of that body. See Watson v. Borough of Susquehanna, 532 Fed.Appx. 233, 236 (3d Cir. 2013)(holding that an individual decision maker could not be held liable unless a majority of the council was held liable for retaliation); see also, Coogan v. Smyers, 134 F.3d 479, 485 (2d Cir.1998). Keslosky brings no claims against any other members of the Civil Service Commission thereby precluding a challenge to the denial by the Commission of his claims or appeals regarding his failure to be promoted. If Plaintiff's First Amendment claim was not time-barred, this analysis would apply equally to that claim against Minella.

were made between September 1997 and March 1998, Plaintiff stated he was unsure because "it may have been or it may have been prior to that." (Id. at 112-113). Keslosky's admission with respect to the timing of Semenza's comments demonstrates that Plaintiff is time-barred from using Semenza's comments as evidence of ethnic or religious discrimination by the Borough.

Keslosky also alleges that Torquato made a comment regarding Keslosky "not celebrating the right Christmas and being a hard headed Russian", but could not identify when this occurred during the Mayor's tenure from 2002 to 2005. (Doc. 105, ¶¶ 26-27; Dep. of Michael Keslosky, Jan. 24, 2012, at 115). Keslosky's allegations regarding Torquato's comments, though made by Keslosky in his deposition in 2012, were never asserted in Keslosky's PHRC Complaint, thereby removing them from this Court's jurisdiction. While Plaintiff did allege in his PHRC Complaint he had been "referred to as a Roundhead, after the domes on Orthodox Churches, or hard headed Russian by co-workers and superiors" (PHRC Complaint, ¶ 18), this statement, as broad and unspecific as it is, cannot be deemed to include Plaintiff's allegations of statements made by Torquato because Torquato's statements were asserted by Keslosky to have been made during the Mayor's tenure from 2002 to 2005, whereas Plaintiff's PHRC Complaint was signed by him and filed on January 28, 2002. Keslosky's inability in his deposition to identify when these statements were made during Torquato's three year tenure as mayor does not allow this Court to manufacture a timely date for the statements that Plaintiff attributes to Torquato.

With respect to Plaintiff's allegations of religious discrimination, the entirety of these claims are statutorily time-barred. Plaintiff states that he is Orthodox and that the Borough of Old Forge scheduled him to work on all Orthodox holidays despite his requests to not be scheduled. (Doc. 35, ¶¶ 152-154). Plaintiff does not allege that his religion was the basis for any other purported acts of discrimination on the part of the defendants. It is undisputed that Keslosky has not been scheduled to work since March, 1998. Consequently, any scheduling disputes necessarily occurred prior to this date. Plaintiff did not file his first PHRC Complaint until January 28, 2002, well past the administrative filing requirements prescribed by both the PHRC and EEOC. On review of the record, Plaintiff has come forward with no facts showing an issue for trial as to the existence of a nexus between his religion and the actions taken against him by Defendants which are not otherwise barred by the statute of limitations. Therefore, summary judgment must be granted in favor of the Borough of Old Forge as to Keslosky's claims of religious discrimination.

### 2. Discrimination on Account of National Origin/Ancestry

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to establish a *prima facie* claim of discrimination under Title VII, a plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Johnson v. Keebler-Sunshine Biscuits, Inc.,* 214

Fed.Appx. 239, 241 (3d Cir. 2007)(citing *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410-11 (3d Cir.1999)). If a plaintiff meets these requirements, the burden shifts to the employer to establish a "legitimate, non-discriminatory reason for the adverse employment decision." *Id.* (citing *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318-19 (3d Cir. 2000)). If the employer meets this burden, the plaintiff must then show that the defendant's stated reasons are merely a pretext for the discrimination. *Id.* (citing *Jones,* 198 F.3d at 410).

Here, Defendants concede that Plaintiff has established the first and third elements of the *McDonnell Douglas* analysis necessary for Plaintiff to establish his *prima facie* claim as "Plaintiff is a member of a protected class pursuant to his Russian ancestry and . . . Plaintiff suffered an adverse employment action when Borough Council voted on June 15, 2005 to suspend Mr. Keslosky." (Doc. 132, at 26). However, Defendants argue that Plaintiff cannot satisfy the second or fourth elements "as he is neither qualified for the position he seeks, a patrolman in Old Forge Borough, nor do the circumstances of Council's June 2005 vote give rise to an inference of discrimination." (*Id.*).

As previously discussed, there are no issues of fact that Keslosky's certification expired in 1999, that the Borough sent him a letter in 2004 outlining the steps necessary to re-certify as a police officer, and that Keslosky refused to comply with these steps. As such, it is clear that Keslosky was not otherwise qualified for the position upon which he bases his claim, specifically, a police officer in the Old Forge Borough. Plaintiff's argument that the

lack of certification by MPOETC is insufficient to demonstrate that he was not qualified is incorrect. Keslosky points to several facts to refute Defendants' assertion that he was not qualified to serve as a police officer, including that "[Keslosky] was a 25 year veteran of the police force[,] Chief Avvisato testified that he was qualified[, and e]veryone who testified said he was a good police officer" (Doc. 140, at 37). These are merely peripheral assertions that do not create a triable issue of fact sufficient for Plaintiff to meet his *prima facie* burden under *McDonnell Douglas* to demonstrate he was qualified for the position he sought. Keslosky was not certified as a police officer, and therefore could not legally perform the duties of that position.[23]

Keslosky argues that the requisite adverse action is not only comprised of Plaintiff's suspension, but rather, "is ongoing." (Doc. 140, at 36). These "ongoing" adverse actions are seemingly based on the Borough's non-submission of a Change of Status Form and other actions it took that prevented Keslosky from returning to work. (*Id.*). However, the Commonwealth Court found that Keslosky's certification expired in 1999, and that any requests by Keslosky "to have the Borough schedule him for training were made after June 30, 2001, and are irrelevant", *Keslosky*, 73 A.3d at 671. Thus, even assuming that the Borough did take actions which could be considered adverse and there was evidence of an unlawful motive on the part of Old Forge in its dealings with Keslosky, Plaintiff's lack of

---

[23] Because Plaintiff was not qualified to perform the duties of a municipal police officer, and therefore meet his burden to establish a *prima facie* claim of discrimination, the Court need not address the fourth element of *McDonnell Douglas* analysis, specifically, whether the circumstances of the adverse employment action give rise to an inference of discrimination.

police officer certification, a pre-requisite to service as a municipal police officer, renders

him unable to establish a *prima facie* case of discrimination. The law is clear that Keslosky

must have been certified in order to work as a police officer.

Summary judgment will therefore be entered in favor of the Borough of Old Forge on

Plaintiff's claims of discrimination on account of national origin and ethnicity both because

the claims are time-barred and Plaintiff fails to make a *prima facie* case.

### 3. Retaliation

To establish a *prima facie* Title VII retaliation claim, an employee must show that "(1)

[he] engaged in activity protected by Title VII; (2) the employer took an adverse employment

action against [him]; and (3) there was a causal connection between [his] participation in the

protected activity and the adverse employment action." *Moore v. City of Philadelphia,* 461

F.3d 331, 340-341 (3d Cir. 2006)(quoting *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir.

1995)). If the employee establishes his *prima facie* claim, the *McDonnell Douglas* approach

applies, shifting the burden to the employer to advance a legitimate, non-retaliatory reason

for its conduct. *Id.* at 342 (quoting *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.

1997)). If the employer provides such a reason, the plaintiff must then "be able to convince

the factfinder both that the employer's proffered explanation was false, and that retaliation

was the real reason for the adverse employment action." *Id.* (quoting *Krouse,* 126 F.3d at

500-501).

Plaintiff argues that the protected activity at issue includes speaking out against the Borough, police department, Civil Service Commission, Mayor, other Council members, the Police Pension Fund, and the Police Officers' Association; filing grievances, appeals, a Heart & Lung claim, and workers' compensation claim; and requesting records under right to know laws. (Doc. 140, at 38).

Preliminarily, speaking out against a variety of people and requesting records under right to know laws do not facially implicate the protection or prohibitions of the PHRA or Title VII, thereby precluding Plaintiff from meeting the first element of a retaliation claim. Plaintiff offers no evidence that any of the aforementioned activities involve his race, color, religion, sex, or national origin, or that a separate cause of action exists under the PHRA and Title VII which would allow this activity to be considered in determining whether his activity was protected under these statutes. Similarly, with respect to Plaintiff's filing of grievances and appeals, Plaintiff neither specifies what he is referring to, nor offers evidence that this activity would be protected under the invoked statutes. Additionally, as previously discussed with respect to Count II (First Amendment retaliation), Plaintiff has failed to present sufficient evidence to show a material issue of fact as to a causal connection between any of his purported protected activities of speaking out and any adverse employment action.

Plaintiff's claim also fails with respect to his allegations of retaliation based on his filing of a workers compensation claim. "[T]he Pennsylvania Supreme Court held that a

cause of action exists under Pennsylvania law for wrongful discharge of an employee who

files a claim for workers' compensation benefits [and a]lthough the Pennsylvania courts

have yet to enumerate the elements of this cause of action, several federal district courts in

Pennsylvania have analogized this cause of action to a retaliatory discharge claim under

Title VII", an approach the Third Circuit has approved. *Dunsmuir v. May Dept. Stores Co.*,

120 Fed.Appx. 927, 929 (3d Cir. 2005)(internal quotation marks omitted). However, even

assuming that Plaintiff's filing of his claim constitutes protected activity, and his suspension

in 2005 constitutes an adverse employment action, he does not demonstrate a causal

connection between this protected activity and the Borough's actions. First, Plaintiff's claim

was filed on March 5, 2001, and denied by Workers' Compensation Judge William Hall on

October 15, 2002. The Commonwealth Court affirmed this decision on February 25, 2004.

Consequently, even though Keslosky's workers' compensation claim had already been filed

and denied, the Borough Council nonetheless voted to reinstate him in December, 2003,

demonstrating that the claim did not negatively impact their ultimate decision, and Plaintiff

offers no evidence to the contrary. Second, Keslosky's claim, filed in 2001, is temporally

vastly distant from the Borough's adverse action of suspending him in 2005, weakening any

inference of a causal link between the two events. Third, even if the Court were to find that

Plaintiff established his *prima facie* case, the Borough has put forth a legitimate, non-

retaliatory reason for its conduct, specifically, Keslosky's lack of certification necessary to

perform the duties of a municipal police officer, which the Commonwealth Court agreed was

necessary. Consequently, Plaintiff is unable to show that the Borough's proffered reason was false or pre-textual.[24]

As a result of Plaintiff's failure to point to specific evidence on the record to establish a genuine issue of material fact with respect to Plaintiff's claims under the PHRA and Title VII, Defendants are entitled to judgment as a matter of law with on Counts VI, VII, VIII, and IX of Plaintiff's Amended Complaint.

## VI. CONCLUSION

For all of the foregoing reasons, the Court will grant Old Forge's motion for summary judgment on all of Plaintiff's claims except those brought under USERRA and PMAA as limited herein (Doc. 104). A separate Order follows.

Robert D. Mariani
United States District Judge

---

[24] This same analysis applies to Keslosky's claims with respect to retaliation under the PHRA and Title VII due to his Heart & Lung claim.