THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN MATHIS, EXECUTOR          :
FOR THE ESTATE OF                 :
MICHAEL B. KESLOSKY, III, DECEASED, :
                                  :
        Plaintiff,                :
    v.                            :        3:08-CV-1240
                                  :        (JUDGE MARIANI)
BOROUGH OF OLD FORGE, et al.,     :
                                  :
        Defendants.               :

<u>MEMORANDUM OPINION</u>

I.  INTRODUCTION

A three-day jury trial was held in the above-captioned matter in July of 2017. At the conclusion of the trial, the jury returned a verdict in favor of Defendant Borough of Old Forge and against Plaintiff Michael Keslosky. Specifically, the jury found that (1) Defendant did not violate Keslosky's reemployment rights under the Uniformed Services Employment and Re-Employment Rights Act ("USERRA"), and (2) Plaintiff did not prove by a preponderance of the evidence that his military service and/or membership in the uniformed service was a motivating factor in any adverse employment action that Defendant committed. (*See* Doc. 280). Now before the Court is Plaintiff Michael Keslosky's Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) (Doc. 287) and his Post-Trial Motion for a New Trial Pursuant to Federal Rule of Civil Procedure 59 (Doc. 288). For the reasons set forth below, the Court will deny both motions.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the factual background of this case is thoroughly familiar to all parties and has been discussed at length by this Court before (*see generally*, Mem. Op. Granting in Part and Denying in Part, Summ. J. to Borough of Old Forge Defs., Doc. 167), a detailed discussion of the facts of the case is unnecessary here.  For purposes relevant to the present motions, the action involves allegations that Defendant Borough of Old Forge violated Plaintiff Michael Keslosky's reemployment rights under 38 U.S.C. § 4313 of USERRA, and further that Defendant discriminated against Plaintiff because of his military status in violation of both § 4311 of USERRA and Pennsylvania state law.  A detailed discussion of the procedural history follows.

Plaintiff, Michael Keslosky, filed his Complaint (Doc. 1) on June 30, 2008.  On December 29, 2008, he filed an Amended Complaint (Doc. 35) against Defendants Borough of Old Forge, Borough of Old Forge Council, Borough of Old Forge Police Department, Old Forge Borough Police Officers' Association, Old Forge Civil Service Commission, Lawrence Semenza, Anthony Torquato, Jr., David Scarnato, Alan Heyen, Shirley Helbing, James Peperno, Jr., and James Minella.  The Amended Complaint set forth nine counts: Count I, against all defendants, asserted a violation of Plaintiff's constitutional right to due process in the form of pre- and post-deprivation hearings; Count II, against all defendants, asserted a First Amendment retaliation claim; Count III, against all defendants, asserted a violation of 42 U.S.C. § 1983; Count IV, against all defendants, asserted a violation of the Uniformed

Services Employment & Re-employment Rights of Members ("USERRA") under 38 U.S.C. § 4301 *et seq.;* Count V, against all defendants, asserted a violation of the Pennsylvania Department of Military and Veterans Affairs Act ("PMAA") under 51 Pa.C.S. § 7101 *et seq.;* Count VI, against the Borough of Old Forge and Old Forge Borough Police Department, asserted a violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), specifically, discrimination on account of national origin/ancestry; Count VII, against the Borough of Old Forge and Old Forge Borough Police Department, asserted a violation of the PHRA, 43 P.S. § 955(a), specifically, discrimination on account of religion; Count VIII, against the Borough of Old Forge and Old Forge Borough Police Department, asserted a violation of the PHRA, 43 P.S. § 955(d), specifically, retaliation; and Count IX, against the Borough of Old Forge and Old Forge Borough Police Department, asserted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Doc. 35).

The late Honorable James M. Munley addressed Defendants' Motions to Dismiss (Docs. 18, 26) by dismissing: (1) Plaintiff's procedural due process claims, including Count I in its entirety; (2) all claims against the individual defendants in their official capacities; (3) Defendants Borough of Old Forge Council, Borough of Old Forge Police Department, and Borough of Old Forge Civil Service Commission from the case; and (4) the claim for punitive damages against the Borough of Old Forge. Judge Munley denied the motions to dismiss in all other respects. (Doc. 38).

On October 22, 2009, Defendant Borough of Old Forge filed a Joinder Complaint, joining the Municipal Police Officers Education and Training Commission ("MPOETC") as an additional defendant.  (Doc. 52).

In May 2012, following the completion of discovery, the remaining defendants, MPOETC (Doc. 101), Borough of Old Forge, Lawrence Semenza, Anthony Torquato, Jr., David Scarnato, Alan Heyen, Shirley Helbing, and James Minella (Doc. 104), the Old Forge Borough Police Officers' Association (Doc. 106), and James. J. Peperno (Doc. 108) filed Motions for Summary Judgment.

On March 5, 2013, this Court issued an Order (Doc. 159) staying and administratively closing the case pending the resolution of Keslosky's appeal to the Pennsylvania Commonwealth Court of an order of the Court of Common Pleas of Lackawanna County denying Plaintiff's Petition for Review of the Old Forge Civil Service Commission's decision affirming the Old Forge Borough Council's June 15, 2005 suspension of Keslosky without pay or benefits until he obtained a current MPOETC certification (*see* Doc. 157, Ex. 2).  On July 23, 2013, the Commonwealth Court affirmed the decision of the Court of Common Pleas of Lackawanna County.  *Keslosky v. Old Forge Civil Serv. Comm'n and Old Forge Borough,* 73 A.3d 665 (Pa. Commw. Ct. 2013) (holding that substantial evidence supported finding that

Keslosky's police officer certification expired in 1999, and that Keslosky's claim that the Old

Forge Borough caused his certification to lapse lacked merit).[1]

This Court re-opened this action on October 8, 2013 and, upon the request of both

the Borough of Old Forge and Keslosky (Doc. 160), the Court held oral argument on

Defendants' motions for summary judgment.  During oral argument, with the consent of

Plaintiff, the Court dismissed Defendant Old Forge Borough Police Officers' Association with

respect to all causes of action in the case.  (Unoff. Hr'g Tr., Oct. 23, 2013, at 52–53, 71).

On April 29, 2014, the Pennsylvania Supreme Court denied Keslosky's Petition for

Allowance of Appeal from the Order of the Commonwealth Court. (*See* Doc. 165).

On December 11, 2014, this Court granted Defendant James Peperno and Third-

Party Defendant MPOETC's Motions for Summary Judgment in full (*see* Docs. 169, 170,

171, 172).  The Court also granted summary judgment in favor of Defendants Lawrence

Semenza, Anthony Torquato, Jr., David Scarnato, Alan Heyen, Shirley Helbing, and James

Minella on all claims against them, and granted summary judgment in favor of the Borough

of Old Forge on each of Plaintiff's claims except those brought under USERRA and the

PMAA.  (Docs. 167, 168).

---

[1] In the July 23, 2013 decision, the Commonwealth Court also held that the Court of Common
Pleas of Lackawanna County properly denied Keslosky's request for back pay.  *Keslosky,* 73 A.3d at 672
(holding Keslosky's claim for backpay fails first because he did not raise the issue in the Borough hearing,
and second because backpay cannot be ordered for any period of time that an officer is not certified, and
Keslosky had not been MPOETC certified since June 1999).

A jury trial was held in this case on July 10, 11, and 12, 2017.[2]  Following its deliberations, the jury found in favor of Defendant Borough of Old Forge.  Specifically, the jury answered "NO" to both of the following special verdict questions:

(1) Did Defendant Borough of Old Forge violate Plaintiff Michael Keslosky's re-employment rights under USERRA?

(2) Did Plaintiff prove by a preponderance of the evidence that his military service and/or membership in the uniformed service was a motivating factor in any adverse employment action you find the Defendant committed?

(Doc. 280).

The Court entered judgment in favor of the Borough of Old Forge and against Plaintiff Keslosky on July 13, 2017 (Doc. 281).  Plaintiff thereafter filed the instant Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) (Doc. 287) and Post-Trial Motion for a New Trial Pursuant to Federal Rule of Civil Procedure 59 (Doc. 288).

On May 29, 2018, Defendant filed a Notice pursuant to Federal Rule of Civil Procedure 25(a)(1) informing the Court that Plaintiff Michael Keslosky died on May 7, 2018. (Doc. 306).  On June 4, 2018, this Court granted Attorney Schermerhorn's Motion for Substitution of Party (Doc. 307) substituting Stephen Mathis, Executor of the Estate of Michael B. Keslosky, as Plaintiff to continue this action.  (Doc. 308).

---

[2] Although jury selection and trial were originally scheduled to commence on May 11, 2015 (*see* Doc. 174), due to Plaintiff Keslosky's health, the trial was not able to be held until July of 2017.

### III.   STANDARD OF REVIEW

#### A.  Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(a),

> [i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>> (A) resolve the issue against the party; and
>> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).  Under Rule 50(b),

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b).

The Court can only address issues raised in a Rule 50(b) motion which were first raised in a timely Rule 50(a) motion.  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172 (3d Cir. 1993) ("In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion.").  "Absent a motion in accordance with Federal Rule of Civil Procedure 50(a), judicial reexamination of the evidence

abridges [a party's] right to a trial by jury." *Id.* at 1173 (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 183 (3d Cir. 1992)).

However, if the issues raised in a Rule 50(b) motion have been properly preserved, the Court may grant a motion for judgment as a matter of law if,

> viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.

*Id.* at 1166 (internal citations omitted). In doing so, "the court should review the record as a whole, [but] must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). "Although sometimes worded differently depending on the timing of the motion, the standard for reviewing the denial of a pre-verdict and a post-verdict motion for judgment as a matter of law is essentially the same." *Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1234 n.8 (4th Cir. 1996) (citing 5A Moore's Federal Practice ¶ 50.01-1 at 50-21 (1996)).

"[J]udgment as a matter of law should be granted sparingly . . . ." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004). *See also, Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 n.11 (3d Cir. 1999)("A litigant with the burden of persuasion is entitled to judgment as a matter of law at the close of the evidence only in the very rare case where a decision in its favor is mandated by evidence the trier of fact is not at liberty to disbelieve and no inference contrary to its position can be drawn from the

undisputable facts.") (citing Wright & Miller, *Federal Practice & Procedure* § 2535, at 328-29 (1995)); *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (A motion for judgment as a matter of law "'should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.'")(quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).  Nonetheless, "more than a scintilla of evidence is needed to sustain a verdict.  Accordingly, 'we will grant judgment as a matter of law where the record is critically deficient of the minimum quantum of evidence in support of the verdict.'"  *CGB Occupational Therapy, Inc.,* 357 F.3d at 383 (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)) (internal alterations omitted).

### B.  Motion for a New Trial

In addition to a motion for judgment as a matter of law, a losing party may also move for a new trial or to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59.  *See* Fed. R. Civ. P. 50(b) (allowing Rule 50(b) movant to "include an alternative or joint request for a new trial under Rule 59").

"The court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  Fed. R. Civ. P. 59(a)(1)(A).  The Court may grant a new trial "purely on a question of law;" or to correct a previous ruling "on a matter that initially rested within the discretion of the court, e.g. evidentiary rulings or prejudicial

statements made by counsel;" or "because [the Court] believes the jury's decision is against

the weight of the evidence;" among other grounds.  *Klein v. Hollings*, 992 F.2d 1285, 1289-

1290 (3d Cir. 1993) (internal citations omitted).

While the Court has wide discretion to order a new trial to correct rulings that initially

rested in its discretion, it has relatively narrow discretion to overturn a verdict on the

grounds that the verdict is against the weight of the evidence.  *Id.*  This is because

> where no undesirable or pernicious element has occurred or been introduced
> into the trial and the trial judge nonetheless grants a new trial on the ground
> that the verdict was against the weight of the evidence, the trial judge in
> negating the jury's verdict has, to some extent at least, substituted his judgment
> of the facts and the credibility of the witnesses for that of the jury.  Such an
> action effects a denigration of the jury system and to the extent that new trials
> are granted the judge takes over, if he does not usurp, the prime function of the
> jury as the trier of the facts.

*Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3d Cir. 1960).

> Accordingly, the district court ought to grant a new trial on the basis that the
> verdict was against the weight of the evidence only where a miscarriage of
> justice would result if the verdict were to stand.  Where the subject matter of
> the litigation is simple and within a layman's understanding, the district court is
> given less freedom to scrutinize the jury's verdict than in a case that deals with
> complex factual determinations . . . .

*Williamson v. Consol. Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir. 1991) (internal citations and

quotations omitted).

## IV.  ANALYSIS

As previously set forth, the only remaining claims for trial arose under USERRA and

the PMAA.  Plaintiff's first claim alleged that the Borough of Old Forge failed to properly re-

employ him as required under § 4313(a)(4) of USERRA following his return from active military service.  Plaintiff's second claim alleged that the Borough of Old Forge discriminated against him based on his military status, in violation of § 4311 of USERRA and the PMAA.[3]

Plaintiff's present Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) (Doc. 287) is directed only at his reemployment claim brought under § 4313(a)(4) of USERRA.[4]  Plaintiff's Post-Trial Motion for New Trial Pursuant to Federal Rule of Civil Procedure 59 (Doc. 288) requests a new trial as to both his reemployment claim and discrimination claims.  The Court will address each motion in turn.

### A.   Renewed Motion for Judgment as a Matter of Law

Plaintiff first renews his motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on his reemployment claim brought under § 4313 of USERRA (Doc. 287).

---

[3] Because the PMAA's discrimination provisions are interpreted the same way as USERRA's discrimination provisions, a finding in favor of Defendant on Plaintiff's USERRA discrimination claim also constituted an adjudication in favor of Defendant on the PMAA claim.  *See Murphy v. Radnor Twp.*, 542 F.App'x 173, 180 (3d Cir. 2013) ("under PMAA's very terms, we believe PMAA should be interpreted in conformity with USERRA, and we will apply the same two-step burden-shifting framework to [discrimination] claims brought under PMAA as we do to claims under USERRA.").

[4] Plaintiff properly only moves for judgment under Rule 50(b) on his reemployment claim as he did not make a Rule 50(a) motion at trial on his discrimination claims.   (*See* Trial Tr., July 12, 2017, at 40-49). (*See also*, Doc. 298, at 2 n.1)(Plaintiff stating in support of his brief in support of the Rule 50(b) motion that the issue of whether his military service and/or membership in the uniformed services was a motivating factor in any adverse employment action "was not subject to a motion by the Plaintiff for judgment as a matter of law.").

At the close of trial, and prior to the case being submitted to the jury, Plaintiff moved for Judgment as a Matter of Law Pursuant to Rule 50(a) on his reemployment claim, and the Court deferred ruling on the motion.  (Trial Tr., July 12, 2017, at 49-50).

In the instant motion, Plaintiff primarily argues that he is entitled to judgment as a matter of law on his reemployment claim because "the Defendant failed to meet its burden of proving whether another job was available to the Plaintiff in the Borough of Old Forge, other than a certified police officer position; and if not, whether it would have imposed an undue hardship upon the Borough."  (Doc. 298, at 4).  In essence, Plaintiff's overarching argument appears to be that, because this Court found on summary judgment that Plaintiff met the prerequisites to a § 4313 claim as set forth in § 4312, "the burden shifted to the Defendant pursuant to 38 U.S.C.S. § 4313(a)(4)" (*id.* at 4-5).

Preliminarily, Plaintiff fails to present any case law to support his assertion that Defendant had the burden to prove "whether another job was available to the Plaintiff in the Borough of Old Forge."  Instead, Plaintiff asserts that "[t]his Court clearly stated the Defendant's burden of proof with regards to the Plaintiff's USERRA claim", quoting the Court's summary judgment memorandum opinion wherein it stated: ". . . there is a question whether there were other positions [other than a police officer] available that may have required different qualifications by Keslosky, and if so, whether he would have applied for them and completed any requisite qualification and training."  (Doc. 298, at 5)(citing Doc. 167, at 50 n.20).  Of note, despite Plaintiff's unsupported statement to the contrary, nothing

12

in this quoted portion of the summary judgment opinion sets forth who has the burden of proof as to these issues.

Having made the general and unsupported claim that the burden under § 4313(a)(4) falls exclusively on the defendant, without further explanation, Plaintiff's supporting brief simply moves to the affirmative defenses set forth in 38 U.S.C. § 4312(d).  (Doc. 298, at 5-10).  In so doing, Plaintiff's arguments appear to conflate the parties' burdens of proof under § 4313(a)(4) and the defendant's burden of proof to establish its affirmative defenses under § 4312(d).  In Plaintiff's view, Defendant not only carried the burden of proof at trial on its affirmative defenses, but also both the initial and ultimate burden of proof as to Plaintiff's § 4313(a)(4) claim.  Plaintiff's reasoning thus places on the employer the sole and exclusive responsibility to effect compliance with the provisions of § 4313, absolving Plaintiff of any obligation to do so much as express an interest in any position outside of the police department.

In sum, Plaintiff states:

Despite the provisions of Section 4313(a)(4), the Borough never permitted the Plaintiff to return to work in any capacity. The Borough never informed the Plaintiff that it would be a hardship to return him to a job other than a police officer within the Borough. The Borough had a duty, at a minimum, to notify the Plaintiff that there was no other job based upon an alleged hardship to the Borough. There is not a single document in evidence that addresses any of these issues from August 1, 2004 through the date of trial. The Borough's manager testified and did not even address any these issues despite the burden being on the Defendant. The former Chief of Police and Borough Council Chairman both admitted that nothing was done to provide any other job. The former Mayor admitted it was not his job to do so, and nothing was done. The only witness presented by the Defendant was the solicitor who also

admitted nothing was ever done despite the Plaintiff meeting the eligibility criteria under USERRA. Every witness admitted that the Plaintiff was never offered any other employment. Every witness admitted that hardship was never considered. Every witness who made these admissions were employees of the Defendant, in authority positions, and their admissions are binding upon the Defendant. The testimony of the solicitor, albeit self-serving, confirmed that the requirements by the Defendant pursuant to Section 4313(a)(4) were never followed by the Borough.

The Defendant's [*sic*] admitted that it did not reemploy the Plaintiff at anytime upon his return from active duty in the Uniformed Services in August of 2004, or anytime thereafter and up to the time of trial. The Defendant failed to prove that it was a hardship to reemploy the Plaintiff in a non-police position as of August 2004, or anytime thereafter.

(Doc. 298, at 14-15).

Under USERRA, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of [USERRA]." 38 U.S.C. § 4312(a). USERRA's provisions operate to provide job security to returning veterans, namely, "Sections 4312 and 4313, the 'reemployment provisions,' entitle veterans to reemployment after military service and prescribe the positions to which they are entitled upon returning. 38 U.S.C. §§ 4312, 4313." *Petty v. Metro. Gov't of Nashville & Davidson Cnty. (Petty II)*, 687 F.3d 710, 716 (6th Cir. 2012).

To qualify for protections of § 4313, USERRA requires the returning veteran to first show that he met certain prerequisites set forth in § 4312.[5]  38 U.S.C. § 4312.  In its

---

[5] Pursuant to § 4212, a returning veteran must have given advance verbal or written notice to his employer, the cumulative length of his absence and all previous absences by reason of service must not

summary judgment memorandum opinion, the Court found that it was undisputed that

Plaintiff had satisfied the § 4312 requirements and that he was thus eligible for

reemployment under USERRA.  (Doc. 167, at 45-46).

Section 4313 of USERRA sets an order of priority to determine the appropriate re-

employment position for the returning veteran.  Generally, an individual is entitled to the

position he would have been employed in but for his service in the uniformed services, or a

position of like seniority, status and pay.  *See* 38 U.S.C. § 4313(a)(2)(A); *see also id.* at §

4313(a)(1)(A).  If the individual is not qualified to perform the duties of such a position, then

he is entitled to the position he held as of the date his leave to service in the uniformed

services commenced.  *See id.* at § 4313(a)(2)(B); *see also id.* at § 4313(a)(1)(B).

If the individual is not qualified for the position he held as of the date his leave

began, then that individual is still potentially eligible for reemployment under § 4313(a)(4).

This sub-section states that if an individual is not qualified to be employed under the

provisions of § 4313(a)(2)(A) or (B) or § 4313(a)(3), and cannot become qualified with

reasonable efforts by the employer as required under § 4313(a)(2)(B), he is nonetheless

entitled to employment

> in any other position which is the nearest approximation to [the position of
> employment in which the person would have been employed if the continuous
> employment of such person with the employer had not been interrupted by such
> service, or in the position of employment in which such person was employed

---

have exceeded five years, he must have reported to, or submitted an application for re-employment to, his
employer, and his separation from military service must have been under "honorable conditions."  38
U.S.C. § 4312; *see also Petty v. Metro. Gov't of Nashville & Davidson Cnty. (Petty I)*, 538 F.3d 431, 442
(6th Cir. 2008).

on the date of the commencement of the service in the uniformed services] which such person is qualified to perform, with full seniority.

38 U.S.C. § 4313(a)(4). As this Court ruled on summary judgment, because Plaintiff, though reinstated, was not qualified to return to his previous position as a police officer without securing MPOETC certification, a triable issue of fact remained as to whether another job was available to Keslosky under § 4313(a)(4).[6]

In the instant motion, Plaintiff claims that he is entitled to judgment as a matter of law on the basis that "because he was not qualified to return to his position as a police officer, the Defendant failed to meet its burden of proving that there were no other positions available, or he was not qualified to perform any available non-police officer duties within the Police Department, or that they were unable to qualify Plaintiff for a different job should qualifications be necessary." (Doc. 298, at 4).

Here, it is undisputed that Plaintiff was not qualified to return to his position as a police officer with the Borough of Old Forge upon his return from active duty. However, it is further undisputed that Plaintiff was also not qualified to return to his position as a police

---

[6] On summary judgment, the Court explained:

Because an individual must have a current certification prior to performing the duties of a municipal police officer and Keslosky's certification expired in 1999, Keslosky was not qualified to be reinstated in the capacity of a police officer upon his return from his military service. Further, Keslosky states that he "did not incur any disability in service" (Doc. 140 at 39) and does not found his claims under USERRA in whole or in part on § 4313(a)(3)'s protections. Accordingly, the Borough of Old Forge is entitled to summary judgment on any claim by Plaintiff that he was entitled to return to work as a police officer under § 4313(a)(2)(A) or (B) or § 4313(a)(3). However, this does not end our inquiry. An issue of fact exists as to whether another job was available to Keslosky under § 4313(a)(4) other than that of a municipal police officer.

(Doc. 167 at 48).

officer at the time he was ordered to active duty in 2003 as his MPOETC certification had expired in 1999.  On summary judgment, this Court found that, upon his return, the Borough engaged in reasonable efforts to qualify Plaintiff for a position as a municipal police officer. (*See* Doc. 167, at 50 n. 20).  However, Plaintiff actively created his own disqualification from the position of municipal police officer, despite Defendant's affirmative steps to qualify him, by refusing to take the steps necessary to become recertified as required by MPOETC under Pennsylvania state law.  *See* 37 Pa. Code § 203.13(c)(1).

Several days before Keslosky was ordered for mobilization by The Army National Guard, Defendant reinstated Keslosky as a police officer, pending completion of his MPOETC certification.[7]  (Trial Tr., July 11, 2017 at 58, 231, 239, 240).  In letter dated August 1, 2004, Keslosky informed the Old Forge Chief of Police that he had completed his service with the National Guard, and requested he "immediately be scheduled for duty and placed on the active duty roster to be placed on the municipal police roster and be scheduled for any required municipal police updates and training."  (Aug. 1, 2004 Letter from Plaintiff to Chief of Police, Pl.'s Ex. 10).  In response, on August 5, 2004, the Chief of Police sent Plaintiff a letter stating that Keslosky would need to complete the updates

---

[7] The Old Forge Borough Council voted to reinstate Keslosky, pending completion of his MPOETC certification, on December 17, 2003 after a period of absence, beginning in May 1998, due to a pending Worker's Compensation injury claim.  (Trial Tr. July 11, 2017, at 231, 239; Dec. 18, 2003 Letter from Old Forge Borough Council to Michael B. Keslosky, Def.'s Ex. 3, Pl.'s Ex. 8).  On December 18, 2003, Plaintiff delivered documents to Old Forge showing that his Army National Guard Unit to was ordered to active duty. (Trial Tr. July 11, 2017, at 60–62; Predetermination Hearing Findings of Fact and Conclusions, Pl.'s Ex. 8; Request for Military Leave of Absence to Old Forge Borough Police Department, Pl.'s Ex. 9).

necessary for his MPOETC certification by contacting "Lackawanna Junior College to check on the dates available for you to make up the mandatory updates" as well as the "Red Cross [to] obtain your certification for C.P.R. and First Aid." (Aug. 5, 2004 Letter from Chief of Police to Plaintiff, Pl.'s Ex. 11).

On August 10, 2004, Borough of Old Forge Anthony Mayor Torquato wrote to Major Richard Mooney, Executive Director of MPOETC, "request[ing his] assistance and guidance concerning [the Borough's] rights as they relate to an employee requesting to return to police duty after an extended absence." (Aug. 10, 2004 Letter from Torquato to Mooney, Def.'s Ex. 10). On August 16, 2004, Major Mooney responded to Torquato, writing that "[t]he certification for [Plaintiff] expired on June 30, 1999" and further outlined the steps necessary for Keslosky to become eligible for certification as a police officer. (Aug. 16, 2004 Letter from Mooney to Torquato, Def.'s Ex. 11). Keslosky was notified of these requirements in a September 1, 2004 letter. (Letter from Borough to Plaintiff, Pl.'s Ex. 15). In response, Keslosky's attorney, Scott Schermerhorn, sent the Borough a letter stating that Keslosky "will not submit to the physical and psychological examinations that you have scheduled for September 16, 2004. Further, he will not submit to all other requests as they are simply not required by law." (Sept. 10, 2004 Letter from Schermerhorn to Borough of Old Forge, Pl.'s Ex. 16). Keslosky testified at trial that he was aware of and approved the contents of this September 10, 2004 letter:

> Q.    All right. And I think what I heard you say on direct examination was that you reviewed this matter with your counsel before it was sent?

A.      Yes, sir.

Q.      You reviewed this letter before it was sent?

A.      I believe so.

Q.      Correct?  You approved its content before it was sent, correct?

A.      Yes.

Q.      All right.  You were fully aware of everything that was in this letter before it went out to the borough, correct?

A.      Yes, sir.

(Trial Tr., July 11, 2017, at 119-120).

In a September 28, 2004 letter, William Rinaldi, Esq., then Borough of Old Forge Solicitor, informed Attorney Schermerhorn that "until such time as your client complies with the MPOETC's requirements, the Borough of Old Forge can not schedule him for work."  (Sept. 28, 2004 Letter from William J. Rinaldi, Esq. to Scott E. Schermerhorn, Esq., Pl.'s Ex. 17).

On cross-examination, Keslosky admitted that from 2004 through the commencement of trial in 2017, he never made a written or oral request to the Old Forge Borough to work as anything other than as a police officer.  (Trial Tr., July 11, 2017, at 123, 133-135).

Despite numerous actions by the Borough to reemploy Keslosky as a police officer, he did not take the steps necessary to complete the MPOETC recertification process to

become qualified as a police officer.[8]  Plaintiff repeatedly only demanded that the Borough reemploy him as a police officer, while simultaneously creating his own disqualification from that position by refusing to comply with the requirements of MPOETC and the Borough's efforts to certify him.  The only explanation offered by Keslosky during trial was that "in my heart I believed that I was being treated as a new hire."  (Trial Tr., July 11, 2017, at 71, 76; *see also id.* at 108, 121).  However, Keslosky acknowledged that "[u]ltimately, [he] was wrong."  (*Id.* at 108).

Keslosky also testified at trial that he understood that the position of police officer was available to him upon certification with MPOETC:

> Q.      Okay.  You understood that when you were suspended you could come back once you got certified?
>
> A.      Yes, sir.

(Trial Tr., July 11, 2017, at 73, 128-129).

Thus, the undisputed testimony at trial demonstrated that had Plaintiff completed the MPOETC recertification requirements upon his return from active duty, he would have been reemployed by Defendant as a police officer.  This is the exact same position he was in before his period of service with the National Guard – he was eligible to be re-instated as a police officer upon the completion of his MPOTEC certification.  USERRA does not

---

[8] For example, the jury heard testimony that, to begin the MPOETC recertification process, the Borough scheduled Plaintiff for a physical exam on September 16, 2004 with Dr. Sallavanti (Trial Tr., July 11, 2017, at 117).  The Borough also gave Plaintiff the option of September 22, 29 or October 6 for psychological testing and interview with Dr. Louis Laguna.  (*Id.* at 118).  Plaintiff refused to submit to either exam.  (*See* Sept. 10, 2004 Letter from Schermerhorn to Borough of Old Forge, Pl.'s Ex. 16).

contemplate a statutory remedy under § 4313(a)(4) where an employer offers a returning veteran the same position he held on the date of the commencement of the uniformed service, makes all reasonable efforts to qualify the returning veteran for that position, but the veteran intentionally and actively creates his own disqualification from that position.

Even assuming that Plaintiff was eligible for reemployment under § 4313(a)(4), despite Plaintiff's arguments in his present motion that he had no burden under § 4313(a)(4), he did bear the burden at trial to prove that Defendant failed to reemploy him in an appropriate position.  38 U.S.C. § 4313(a)(4); *See also* 11th Cir. Jury Instruction 4.20 – Reemployment (Annotations and Comments – Reemployment-position claims)("Plaintiff bears the burden of proof to show that Defendant failed to reemploy [him/her] in an appropriate position, that is, the position which reflected with reasonable certainty the pay, benefits, seniority, and other job perquisites that Plaintiff would have attained but for [his/her] military service or a position of like seniority, status, and pay; or to [his/her] pre-service position; or to a position which was the nearest approximation to any of these positions.").

To meet his burden under § 4313(a)(4) that the Borough failed to reemploy him in an appropriate position, Keslosky was required to first set forth evidence at trial that an appropriate position was available in the Borough of Old Forge which reflected with reasonable certainty the pay, benefits, seniority, and other job perquisites that Plaintiff would have attained but for his military service, and that the Borough failed to reemploy him

in that position.  Defendant had the burden to prove that Keslosky was not qualified for the position(s) of reemployment which Plaintiff claims were "appropriate", *see Petty I*, 538 F.3d at 444, or that "any accommodation, training, or effort" to comply with § 4313(a)(4) to place him in an appropriate position "would impose an undue hardship on the employer", 38 U.S.C. § 4312(d)(1)(B), (d)(2)(B).

Plaintiff's Rule 50(b) argument ignores his burden at trial, instead, and without any supporting law, places on the employer the sole and exclusive burden at trial to demonstrate that it complied with the provisions of § 4313.  Rather, it was for the jury to decide whether Plaintiff had shown by a preponderance of the evidence that Defendant failed to re-employ him in an appropriate position.  To do so, evidence must have been adduced at trial demonstrating that an appropriate position existed. While an employer clearly has a statutory obligation under USERRA to place a returning service member in a position for which he is qualified, that obligation cannot be fulfilled without the employee first expressing in some way, even in the most general terms, the job(s) to which he seeks to be returned or is interested.[9]  Otherwise, the statute's reference to the employer's obligations, and in particular those expressly described as affirmative defenses, would not be necessary.

---

[9] As previously explained, and further set forth *infra,* upon Plaintiff's return from active duty, he specifically requested to be reinstated as a police officer, a position for which Defendant took reasonable efforts to qualify him. Plaintiff never requested employment in any other position or suggested an interest in, or willingness to be employed in, any position outside of that of a police officer.  Plaintiff further testified that he understood that if he obtained his MPOETC certification, he would be returned to work as a police officer.

For the afore-stated reasons, Plaintiff's argument that he is entitled to judgment as a matter of law because Defendant failed to meet its alleged burden "of proving whether another job was available to the Plaintiff in the Borough of Old Forge" (Doc. 298 at 4) is without legal support or merit.

Furthermore, regardless of the parties' respective burdens of proof, a review of the trial record shows that the evidence presented at trial created issues of fact as to whether Defendant failed to reemploy Plaintiff in an appropriate position, and thus those factual issues were properly submitted to the jury for resolution. *See CGB Occupational Therapy, Inc.*, 357 F.3d at 383 (judgment as a matter of law should be granted "where the record is critically deficient of the minimum quantum of evidence in support of the verdict.") (internal quotation marks omitted).

At trial, Keslosky testified that neither he nor his counsel ever asked the Borough for employment in any position other than that of a police officer:

> Q.      - - does Mr. Schermerhorn ever ask on your behalf give me some other job?
>
> A.      No, he doesn't.
>
> Q.      And you didn't ask for that certainly?
>
> A.      No, sir.

(Trial Tr., July 11, 2017, at 123).  Keslosky further testified that he never made a request for another job at any point from 2004 through the commencement of trial:

Q.      . . .  Can we agree that throughout 2004 you never made a request to the borough to work in any position other than a police officer position?

. . . .

A.      I believe so.

. . . .

Q.      Did you make a request in 2004 to Old Forge to work as anything other than a police officer?

A.      I'm not sure, sir.

Q.      Your lawyer did not make that request, correct?

A.      I don't believe so.

Q.      Same thing in 2005, correct?

A.      No, he did not.

Q.      And you did not in 2005, correct?

A.      No, sir.

Q.      And in 2006 you did not make that request, correct?

A.      I'm not really - - I don't think so.  I'm not sure.

Q.      Same thing with your lawyer in 2006?

A.      I don't believe, sir.

. . . .

Q.      The - - there is no written or oral request from you or your counsel in '07, '08, '09, '10, '11, '12, whatever we're up to?

A.      I may have spoken to - - because I spoke to a lot of councilmen about coming back and what other positions were available to me under USERRA.

Q.      So you have nothing in writing for any of this, correct?

A.     To the best of my knowledge, no, sir.

Q.     Okay.  For any year, all the way up to this trial, correct?

A.     To the best of my knowledge.

(Trial Tr., July 11, 2017, at 133-135).

Similarly, William Rinaldi, the Borough of Old Forge Solicitor at the time of the events at issue, explained that the Borough never offered Keslosky a job other than that of a police officer because he never made that request:

Q.     Do you agree that the Borough of Old Forge did not provide any effort whatsoever at any time from August of 2004 to the present to qualify Mr. Keslosky for a job other than a police officer?

A.     I would agree with that.

Q.     You would?

A.     The only thing you asked for was to be put on the police roster.

Q.     My question is the question do you agree with that, that the borough made no efforts?

A.     In the police department?  Or some where else in the borough?

Q.     A non-police job.  Did the borough make any efforts whatsoever to qualify him for a non-police job at any point in time?

A.     We wouldn't qualify anybody until they applied.  And I know ads have run for DPW people during the tenure of this case, and I never reviewed an application from Mike Keslosky.

Q.     So is your answer no, they did not?

A.     It was never entertained because it was never requested.

Q.    Is that a no?

A.    That's a no, yeah.

Q.    Was Mr. Keslosky reemployed by the Borough of Old Forge in any capacity from his discharge from active duty and his request in August of 2004 to the present?

A.    He was suspended until he completes his MPOETC certification.  So, no.

(Trial Tr., July 10, 2017, at 100-101).  Rinaldi further testified that the Borough did not consider offering Keslosky any other position because the Borough was waiting for him to become qualified as a police officer, which is the job to which he was reinstated:

Q.    Do you agree that the Old Forge Borough Council never offered any other position to Mr. Keslosky for which he was qualified or could have been qualified with reasonable efforts by the Borough of Old Forge?

A.    There wouldn't be a need to.  In everybody's mind he was reinstated after his Worker's Comp. claim as a police officer.  So, nobody asked council to consider anything else, other than getting him on the roster.

Q.    My answer - - my question - -

A.    So no, there was no other job offerings because he was given a job.

Q.    Okay.

A.    That job was never taken away.  He already had a job if he followed through on it.

Q.    So you agree that council never offered any other job outside of police, you would agree with that?

A.    I agree with that, we haven't.

. . . .

26

Q.      And the job he was reinstated for was what?

A.      A police officer.

Q.      Okay.  As an employee of the Borough of Old Forge, correct?

A.      You were pretty adamant in your correspondence that that's the only spot you wanted him in, so, no, there was nothing offered.

(Trial Tr., July 10, 2017, at 106-108).

In support of his reemployment claim, Keslosky testified on direct examination as to other potential jobs within the Borough of Old Forge Police Department that he personally believed would have been available to him between August 2004 and June 2005:

Q.      Do you know whether there would have been some type of job that you personally observed around the borough that was not a police officer job?

A.      Yes.

Q.      What types of jobs have you personally observed?

. . . .

Q.      We'll start with from 2000 - - August of 2004, okay, right up until the date of your suspension in June of 2005.

A.      Well, we had a police clerk's position that I could have done.  And we also had an officer designated to maintain the vehicles.  Okay?  And one of the special things that I have, I'm a certified inspection mechanic, and I can detail a vehicle as best as anyone.

And I could have done dispatching, filing, I could have assisted other officers in filing criminal complaints and affidavits of probable cause.  And there's a cumbersome thing that no officer likes to do is tracking their parking tickets, and I could do that, and I could actually relieve them of those cumbersome duties and assist them in filing their criminal complaints, their affidavits of

probable cause.   And at some point I've had officers not only from my community but from other communities - -

. . . .

Q.      Michael, the jobs that you just talked about, you - - do you need to wear a gun or have a badge?

A.      No.

Q.      Do you need to be certified?

A.      No.

(Trial Tr., July 11, 2017, at 80-81).  In direct contrast, former Old Forge Mayor Anthony

Torquato testified that the Borough of Old Forge Police Department does not employ non-

police officers, meaning those who lack the MPOETC certification required to be a police

officer:

Q.      When you were mayor from 2002 through 2005 were - - were there any positions in the police department other than police officer?

A.      No.

Q.      And was there any requirement of MPOETC certification to be a police officer in the Old Forge Police Department?

A.      Absolutely.

Q.      And why was that?

A.      Hands on - - well, how that works, the MPOETC, the state basically provides the authority for these police officers to be responsible for the - - for the authority that they do have, the arrest powers and so forth.  So, it's critical, probably like a doctor, having a doctor's license.  Without that you can't practice, it's very similar to that.  Without that certification you're not a police officer.

Q.      Did the Old Forge Police Department, while you were there did it have a dispatcher?

A.      A dispatcher?

Q.      Yes.

A.      No.

Q.      Does it have a clerical positions [*sic*]?

A.      No, sir.

Q.      Any janitorial positions?

A.      No, sir.

Q.      Anything other than police officer position?

A.      Nothing.

(Trial Tr. July 11, 2017, at 174-175).

Keslosky also testified as to the possibility of performing other jobs within the Borough but outside of the police department:

Q.      How about outside that, just what have you observed personally for administrative duties or janitorial or DPW or things like that?

A.      Well, the sewer authority has someone that does administrative, and I could do the clerical duties there.  Could have assisted the borough manager with her clerical duties.  There was at one point an inspector's position with the zoning officer.  They - - in the last several years gave him an assistant.  I could have also done that.

(*Id.* at 81).

However, another factual dispute is presented through the direct examination testimony of Rinaldi, who stated that other positions within the Borough of Old Forge were substantially different from the job of police officer.

Q.     Okay.  Separate from the police department - - Old Forge Borough has other employees, correct?

A.     That's correct.

Q.     Are they governed by a collective bargaining agreement?

A.     Since prior to my tenure, and specific, any other employee of the borough is covered in the DPW, Department of Public Works Department.

Q.     And for the borough, are you involved in the negotiation of both of these documents?

A.     Yes.  We negotiated a contract with the DPW department and we negotiated a contract with the police department.

. . . .

Q.     Mr. Rinaldi, is there - - is the compensation that is paid to the employees governed by the DPW collective bargaining agreement?

A.     Yes.

Q.     Is it comparable to the police, professional employees in the police department?

A.     No, it's less.

Q.     All right.  Are there differences between pensions that are earned by DPW versus pensions that are earned by police?

A.     The - - there is a difference.  The pension for police officers is designated by the state.  The borough may or may not have to pay into it, it depends on the solvency of the fund.  The police officers are entitled to a

vesting after 12 years.  After 25 years of service they get a hundred percent of their pension benefits, which would be 50 percent of their average last three-year's salary.

If they're injured in the line of duty they would get a disability pension equal to 70 percent of their salary.  That pension also continues for their spouses, and actually their children.  The DPW has its own pension - - when I say its own, the SCIU has a pension for them, its only during their lifetime, and we're just required to pay five cents an hour to the SCIU service employees union, and they take care of it from there.

. . . .

Q.     Can an individual who is covered by the police CDA earn the same benefit, you know, seniority, pension, by working under any DPW position?

A.     No, absolutely not.

Q.     Was it ever requested in any way in this case?

A.     No.  They're two separate entities, their own associations with their own bargaining rights, with their own benefits, by contract with the borough.

(*Id.* at 264-270).[10]

Keslosky's claim at trial under § 4313(a)(4) was that the Borough failed to reemploy

him in another position other than that of a police officer.  However, the evidence of record

at the close of trial presented material disputes of fact as to the existence of an appropriate

position, meaning one of like seniority, status, and pay, the availability of such position, and

---

[10] Although Plaintiff has misallocated the burden of proof in his § 4313(a)(4) claim, even were the Court to accept Plaintiff's legally unsupported assertion that Defendant had the "burden of proving whether another job was available to the Plaintiff in the Borough of Old Forge, other than a certified police officer position" (Doc. 298, at 4), Plaintiff is incorrect that the Borough did not present evidence as to this issue. Rather, the afore-quoted testimony by Torquato and Rinaldi, if believed, presents evidence upon which a jury could have relied in finding that no other job with the Borough was available to Plaintiff, both inside and outside of its police department.

whether Plaintiff was qualified, or could become qualified, for such a position.  It was further

an issue for the jury to determine whether, Plaintiff having created his own disqualification

from the position of a police officer, the Borough nonetheless failed to reemploy him in an

appropriate position.  A determination of these factual issues are fundamental to Plaintiff's

reemployment claim, and they were properly submitted to the jury for resolution. *See e.g.,* 1

Moore's Federal Rules Pamphlet § 50.4[2] (James Wm. Moore and Kevin Shirley)(2019)("If

there is conflicting evidence, or there is insufficient evidence to make only a 'one-way-

verdict possible, JMOL under Rule 50 is improper.").

Given the testimony of Keslosky, Rinaldi, and Torquato, set forth above, and the

documentary evidence presented at trial, the Court cannot find that the record was "critically

deficient of the minimum quantum of evidence in support of the verdict" reached by the jury

in this case, *CGB Occupational Therapy, Inc.,* 357 F.3d at 383.  In viewing the evidence in

the light most favorable to the nonmovant, Defendant Borough of Old Forge, the record

provided far "more than a scintilla of evidence" to support the jury's verdict that Defendant

did not violate Plaintiff's reemployment rights under § 4313(a)(4) of USERRA.  Thus,

Plaintiff is not entitled to judgment as a matter of law on this claim and his Rule 50(b) motion

will be denied.

### B.   Motion for a New Trial

In his second motion, Plaintiff requests that the Court grant him a new trial, pursuant

to Federal Rule of Civil Procedure 59, on both his reemployment and discrimination claims.

1.   Section 4313(a)(4) Reemployment Claim

With respect to the § 4313 reemployment claim, Plaintiff first argues that the Court "should grant Plaintiff's Motion for a New Trial on its own initiative" under the authority of Federal Rule of Civil Procedure 59(d).  Specifically, Keslosky argues "[t]he Court should order a new trial because the Defendant challenged this Court's interpretation of Section 4313(a)(4), and its application to this trial, and further used its own interpretation to misapply the law and improperly sway the jury."  (Doc. 299 at 3-4).

Plaintiff's first argument fails because the Court lacks jurisdiction to grant Plaintiff's motion for a new trial on the basis of Rule 59(d).  "A trial court is empowered to order a new trial on its own initiative 'for any reason that would justify granting one on a party's motion.'" *Pryer v. Slavic*, 251 F.3d 448, 453 (3d Cir. 2001) (citing Fed. R. Civ. P. 59(d)).  However, the court's discretion to grant a new trial on this basis is limited to a window of 28 days after the entry of judgment.  Fed. R. Civ. P. 59(d).  Because the 28-day window has long passed, the Court no longer has authority to grant a new trial in this matter on its own initiative under the authority of Rule 59(d).  *See Lesende v. Borrero*, 752 F.3d 324, 334-335 (3d Cir. 2014) ("Because the District Court failed to enter its memorandum opinion within twenty-eight days of the entry of judgment, it lacked jurisdiction under the first sentence of Rule 59(d) to consider the propriety of a new trial on liability on its own accord."); *See also Demeretz v. Daniels Motor Freight, Inc.*, 307 F.2d 469 (3d Cir. 1962) (holding the district court did not have the authority to reduce the jury's award *sua sponte* because the order had not been

entered within the time limit established under Rule 59(d)).  Therefore, Plaintiff's request for a new trial on the basis of Rule 59(d) must be rejected.

Plaintiff next argues that the Court should grant him a new trial on his reemployment claim because "the great weight of the evidence is that there was no evidence presented that the Defendant complied with Section 4313(a)(4) of USERRA." (Doc. 299 at 7).  Plaintiff argues that this is reflected by "the factual record" and "by the Defendant's admission at trial." (*Id.*).

As previously stated, a district court has narrow discretion to overturn a verdict on the grounds that the verdict is against the weight of the evidence.  *Klein*, 992 F.2d at 1289-1290.  Accordingly, a court should grant a motion for a new trial on this basis "only where a miscarriage of justice would result if the verdict were to stand."  *Williamson*, 926 F.2d at 1352.  Here, Plaintiff fails to demonstrate how a miscarriage of justice would result if the jury's verdict as to his reemployment claim were to stand.

To support his argument, Keslosky relies on portions of the testimony presented at trial that he believes are favorable to his claim that Defendant failed to reemploy him in a position other than that of a police officer, including "admissions" made by Defendant's witnesses William Rinaldi and Anthony Torquato as to their efforts to find him alternative employment within the Borough.  However, Plaintiff fails to acknowledge evidence presented at trial that refutes his claim and supports the jury's verdict.  As set forth, *supra*, issues of fact for the jury existed as to whether there were other appropriate positions available to Keslosky

34

within the Borough of Old Forge, and if so, whether he was qualified for any such position. The evidence of record is more than sufficient to reasonably support the jury's finding that Defendant did not violate Plaintiff's reemployment rights under USERRA.

First, evidence was presented at trial which could lead the jury to find that Keslosky demanded that he only be reemployed in the position of a municipal police officer with the Borough, and that he made this demand for reemployment limited to that position clear to the Borough. As previously set forth, the Borough did take reasonable steps to attempt to qualify Keslosky for an appropriate position, specifically, that of a police officer. The jury heard testimony, and saw exhibits, demonstrating that despite the Borough's efforts to re-certify Keslosky, he refused to take the necessary steps to obtain his MPOETC certification, while simultaneously demanding that he be reinstated as a police officer.  The evidence at trial further could support a finding that at no time prior to the commencement of trial did Keslosky request, or indicate any interest in, any other position, even in the most general terms.  Evidence was also presented which a jury could believe demonstrated that there were no other appropriate positions available within the Borough.  Thus, a reasonable jury could find that the Borough attempted to reemploy Keslosky to the only appropriate position available, specifically to the position of municipal police officer in the Borough of Old Forge, and solely due to Keslosky's own actions, he was not qualified for reemployment in that position, and no other appropriate positions were available for his reemployment as set forth by the statutory requirements of USERRA.

Specifically, the jury heard testimony from Keslosky on cross-examination that neither he nor his attorney ever asked the Borough for any position other than that of a police officer:

Q.      - - does Mr. Schermerhorn ever ask on your behalf give me some other job?

A.      No, he doesn't.

Q.      And you didn't ask for that certainly?

A.      No, sir.

(Trial Tr., July 11, 2017, at 123).  Keslosky further testified that he never made a request at any time from 2004 through the commencement of trial for employment in any other position:

Q.      Mr. Keslosky . . . [c]an we agree that throughout 2004 you never made a request to the borough to work in any position other than a police officer position?
. . . .

A.      I believe so.
. . . .

Q.      Did you make a request in 2004 to Old Forge to work as anything other than a police officer?

A.      I'm not sure, sir.

Q.      Your lawyer did not make that request, correct?

A.      I don't believe so.

Q.      Same thing in 2005, correct?

36

A.    No, he did not.

Q.    And you did not in 2005, correct?

A.    No, sir.

Q.    And in 2006 you did not make that request, correct?

A.    I'm not really - - I don't think so.  I'm not sure.

Q.    Same thing with your lawyer in 2006?

A.    I don't believe, sir.
. . . .

Q.    The - - there is no written or oral request from you or your counsel in '07, '08, '09, '10, '11, '12, whatever we're up to?

A.    I may have spoken to - - because I spoke to a lot of councilmen about coming back and what other positions were available to me under USERRA.

Q.    So you have nothing in writing for any of this, correct?

A.    To the best of my knowledge, no, sir.

Q.    Okay.  For any year, all the way up to this trial, correct?

A.    To the best of my knowledge.

(Trial Tr., July 11, 2017, at 133-135).

Plaintiff argues that Rinaldi "admitted that the Borough of Old Forge never provided any effort whatsoever at any time from August of 2004 to the present to qualify the Plaintiff for a job other than a police officer."  (Doc. 299 at 8).  However, Plaintiff fails to acknowledge the testimony heard by the jury to put this statement in context.  Rinaldi

testified that the first time he heard Plaintiff was interested in a job other than police officer

was the first day of trial:

> Q.      And can you, since these issues have arisen, and I'm going to say these
> issues being his return in August of '04 from the military, can you estimate for
> us how many phone calls you've had with Attorney Schermerhorn dealing with
> the issues raised in this case and other related litigation?
>
> A.      Between letters and phone calls and e-mails?  I mean, thousands.
> . . . .
>
> Q.      Can you tell us - - thousands the first time - - can you give us an estimate
> on the other types of contacts you've had?
>
> A.      I would see him in court.  I would see him every time we'd argue.  I would
> see him during depositions.  I would see him in the trials of these matters, in
> hearings.  Other than Monday is the first time I heard Mike - - Mr. Keslosky was
> ever interested in some other job in the borough besides being a police officer.

(Trial Tr. July 11, 2017, at 270-273).  Rinaldi further testified:

> Q.      Do you agree that the Borough of Old Forge did not provide any effort
> whatsoever at any time from August of 2004 to the present to qualify Mr.
> Keslosky for a job other than a police officer?
>
> A.      I would agree with that.
>
> Q.      You would?
>
> A.      The only thing you asked for was to be put on the police roster.
>
> Q.      My question is the question do you agree with that, that the borough
> made no efforts?
>
> A.      In the police department?  Or some where else in the borough?
>
> Q.      A non-police job.  Did the borough make any efforts whatsoever to
> qualify him for a non-police job at any point in time?

A.      We wouldn't qualify anybody until they applied.  And I know ads have run for DPW people during the tenure of this case, and I never reviewed an application from Mike Keslosky.

Q.      So is your answer no, they did not?

A.      It was never entertained because it was never requested.

Q.      Is that a no?

A.      That's a no, yeah.

Q.      Was Mr. Keslosky reemployed by the Borough of Old Forge in any capacity from his discharge from active duty and his request in August of 2004 to the present?

A.      He was suspended until he completes his MPOETC certification.  So, no.

(Trial Tr., July 10, 2017, at 100-101).  Rinaldi additionally explained that the Borough also did not consider offering Keslosky any other position because they were waiting for him to become qualified as a police officer, which is the job to which he had been reinstated:

Q.      Do you agree that the Old Forge Borough Council never offered any other position to Mr. Keslosky for which he was qualified or could have been qualified with reasonable efforts by the Borough of Old Forge?

A.      There wouldn't be a need to.  In everybody's mind he was reinstated after his Worker's Comp. claim as a police officer.  So, nobody asked council to consider anything else, other than getting him on the roster.

Q.      My answer - - my question - -

A.      So no, there was no other job offerings because he was given a job.

Q.      Okay.

> **A.**      That job was never taken away.  He already had a job if he followed through on it.
>
> **Q.**      So you agree that council never offered any other job outside of police, you would agree with that?
>
> **A.**      I agree with that, we haven't.
> . . . .
>
> **Q.**      And the job he was reinstated for was what?
>
> **A.**      A police officer.
>
> **Q.**      Okay.  As an employee of the Borough of Old Forge, correct?
>
> **A.**      That's what he requested, yes.
>
> **Q.**      So other than a police officer, nobody offered any job to this day, correct?
>
> **A.**      You were pretty adamant in your correspondence that that's the only spot you wanted him in, so, no, there was nothing offered.

(Trial Tr., July 10, 2017, at 106-108).  Rinaldi further testified that he did not have the

opportunity to discuss the availability of other jobs with Keslosky's attorney:

> **Q.**      At what point in time would that have been a good time for the borough through you to have that discussion as to, you can't be a police officer, we all know that, what about another job, what else do we have here?  Was there ever that discussion?
>
> **A.**      You didn't allow me the opportunity to make that discussion.  You were insisting he be certified as a police officer.

(Trial Tr., July 12, 2017, at 14-15).

Keslosky and Rinaldi's testimony provides a sufficient basis for the jury to reasonably

believe that the Borough did not attempt to qualify Plaintiff for, or place Plaintiff in, another

position outside the Police Department because it had reinstated him as a police officer

subject to Keslosky completing the requirements for acquisition of MPOETC certification,

the job he was "pretty adamant" was the only job he wanted, and that Keslosky never made

a request for, or indicated an interest in, any other position.  Further, the jury could have

believed Rinaldi's testimony that he was not given the opportunity to have a discussion

about employing Keslosky in another position in light of Plaintiff's, and his counsel's,

"insist[ence]" that he be certified as a police officer.

With respect to the availability of non-police positions within the police department,

evidence was presented which could establish that the Borough of Old Forge Police

Department did not employ non-MPOETC certified police officers.  Although Keslosky

testified that he personally believed there were other positions available to him in the police

department that did not require MPOETC certification, this testimony was contradicted by

the testimony of Torquato and Rinaldi, creating a credibility determination for the jury to

determine.  At trial, Keslosky testified:

> Q.      Do you know whether there would have been some type of job that you
> personally observed around the borough that was not a police officer job?
>
> A.      Yes.
>
> Q.      What types of jobs have you personally observed?
> . . . .
>
> Q.      We'll start with from 2000 - - August of 2004, okay, right up until the date
> of your suspension in June of 2005.

A.      Well, we had a police clerk's position that I could have done.  And we also had an officer designated to maintain the vehicles.  Okay?  And one of the special things that I have, I'm a certified inspection mechanic, and I can detail a vehicle as best as anyone.

And I could have done dispatching, filing, I could have assisted other officers in filing criminal complaints and affidavits of probable cause.  And there's a cumbersome thing that no officer likes to do is tracking their parking tickets, and I could do that, and I could actually relieve them of those cumbersome duties and assist them in filing their criminal complaints, their affidavits of probable cause.  And at some point I've had officers not only from my community but from other communities - -
. . . .

Q.      Michael, the jobs that you just talked about, you - - do you need to wear a gun or have a badge?

A.      No.

Q.      Do you need to be certified?

A.      No.

(Trial Tr., July 11, 2017, at 80-81).

In direct contrast to Plaintiff's testimony, former Mayor Torquato specifically testified

that the clerical and dispatcher positions in the Police Department do not exist, and that the

Borough does not employ non-MPOETC certified officers:

Q.      When you were mayor from 2002 through 2005 were - - were there any positions in the police department other than police officer?

A.      No.

Q.      And was there any requirement of MPOETC certification to be a police officer in the Old Forge Police Department?

A.      Absolutely.

42

Q.      And why was that?

A.      Hands on - - well, how that works, the MPOETC, the state basically provides the authority for these police officers to be responsible for the - - for the authority that they do have, the arrest powers and so forth.  So, it's critical, probably like a doctor, having a doctor's license.  Without that you can't practice, it's very similar to that.  Without that certification you're not a police officer.

Q.      Did the Old Forge Police Department, while you were there did it have a dispatcher?

A.      A dispatcher?

Q.      Yes.

A.      No.

Q.      Does it have a clerical positions [*sic*]?

A.      No, sir.

Q.      Any janitorial positions?

A.      No, sir.

Q.      Anything other than police officer position?

A.      Nothing.

(Trial Tr. July 11, 2017, at 174-175).  The jury also heard testimony from Rinaldi on this same issue:

Q.      While that issue of scheduling classes, obtaining MPOETC certification, while that was going on up to this point was there any discussion between you, the mayor, borough council, about putting him in another job?

**A.**      No.  By law we can't pay a police officer unless they have a MPOETC card.

**Q.**      Okay.  I'm not talking about a police officer position.  Put him in another job that wasn't a police officer position?

**A.**      There were no other jobs in the police department, and I don't recall any openings in the DPW.

(Trial Tr. July 10, 2017, at 112).  Rinaldi further testified as to the impossibility of employing a non-police officer in the Police Department, because "under the borough contract with the police department, the borough code, under our own ordinances you can't have a non-police officer in the police department.  We had no positions there.  It would be trying to legislate an entirely new hybrid position in that department."  (Trial Tr. July 12, 2017, at 15).

Thus, evidence was presented at trial to allow the jury to make the necessary factual and credibility evaluations to determine whether other non-police officer positions were available in the Borough of Old Forge Police Department and whether the Borough could lawfully employ Keslosky within its police department in the absence of MPOETC certification.

There was also sufficient evidence for the jury to find that there were no other appropriate jobs available in the Borough of Old Forge outside of the Police Department. Keslosky presented only his own testimony that he personally believed certain other jobs were available in the Borough:

**Q.**      How about outside that, just what have you observed personally for administrative duties or janitorial or DPW or things like that?

> A.     Well, the sewer authority has someone that does administrative, and I could do the clerical duties there.  Could have assisted the borough manager with her clerical duties.  There was at one point an inspector's position with the zoning officer.  They - - in the last several years gave him an assistant.  I could have also done that.

(Trial Tr. July 11, 2017, at 81).  However, Keslosky did not present any evidence to support his general belief that a position may have been available within the DPW or otherwise within the Borough.  Nor was there any evidence that any such position would reflect with reasonable certainty the pay, benefits, seniority, and other job perquisites that Keslosky would have attained but for his military service, or that it was a position of like seniority, status and pay, or a position which was the nearest approximation of these positions.

Thus, even if the jury determined that other jobs were available within the Borough outside of the Police Department, there was evidence presented at trial sufficient for the jury to find that those jobs were substantially different from that of a police officer, and were not "appropriate" positions.  Section 4313(a)(4) allows for reemployment in a position that is the nearest approximation to the individual's previous position in terms of seniority, status, and pay, if that individual is entitled to reemployment under that Section.  38 U.S.C. § 4313(a)(4).  At trial, Rinaldi testified at length as to the differences between the police officer position and other positions within the Department of Public Works in terms of salary, benefits, and collective bargaining agreements:

> Q.     Okay.  Separate from the police department - - Old Forge Borough has other employees, correct?

> A.     That's correct.

Q.      Are they governed by a collective bargaining agreement?

A.      Since prior to my tenure, and specific, any other employee of the borough is covered in the DPW, Department of Public Works Department.

Q.      And for the borough, are you involved in the negotiation of both of these documents?

A.      Yes.   We negotiated a contract with the DPW department and we negotiated a contract with the police department.
. . . .

Q.      Mr. Rinaldi, is there - - is the compensation that is paid to the employees governed by the DPW collective bargaining agreement?

A.      Yes.

Q.      Is it comparable to the police, professional employees in the police department?

A.      No, it's less.

Q.      All right.   Are there differences between pensions that are earned by DPW versus pensions that are earned by police?

A.      The - - there is a difference.   The pension for police officers is designated by the state.   The borough may or may not have to pay into it, it depends on the solvency of the fund.   The police officers are entitled to a vesting after 12 years.  After 25 years of service they get a hundred percent of their pension benefits, which would be 50 percent of their average last three-year's salary.

If they're injured in the line of duty they would get a disability pension equal to 70 percent of their salary.  That pension also continues for their spouses, and actually their children.  The DPW has its own pension - - when I say its own, the SCIU has a pension for them, its only during their lifetime, and we're just required to pay five cents an hour to the SCIU service employees union, and they take care of it from there.

Q. Was it ever considered - - or strike that.  Was it ever requested by plaintiff in this case who has been hired by the borough as a police officer to work in a non-police position covered by the DPW contract?

A.       Never since my tenure there.

. . . .

Q.       Can an individual who is covered by the police CDA earn the same benefit, you know, seniority, pension, by working under any DPW position?

A.       No, absolutely not.

Q.       Was it ever requested in any way in this case?

A.       No.  They're two separate entities, their own associations with their own bargaining rights, with their own benefits, by contract with the borough.

(Trial Tr. July 11, 2017 at 264-270).  This testimony provided the jury with a sufficient basis to find that no other jobs were available in the Borough, or that if there were any such jobs, they were not comparable in pay, benefits, and seniority to the position of police officer and that the statutory provisions of USERRA did not entitle Keslosky to any of these positions outside of the police department.

"[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson*, 926 F.2d at 1353.  The Third Circuit has characterized this as a "stringent standard" necessary "to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury."  *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (internal quotation marks omitted).

47

Here, based on the evidence presented to the jury, the verdict does not cry out to be overturned or shock the conscience.  There was sufficient evidence presented during the trial to support the jury's finding that the Borough of Old Forge did not violate Plaintiff's reemployment rights under USERRA.  The jury's verdict was not against the weight of the evidence, and "a miscarriage of justice" will not result in allowing the verdict to stand.  Thus, Plaintiff is not entitled to a new trial on his reemployment claim under § 4313(a)(4).

## 2.   Section 4311 Discrimination Claim

With respect to his § 4311 discrimination claim, Plaintiff requests a new trial on the basis that "the verdict of the jury was against the weight of the evidence with regards to whether Plaintiff's military status rose to the level of a motivating or substantial factor in the Defendant's adverse employment action, as required to establish a claim pursuant to 38 U.S.C. §4311."  (Doc. 299 at 13).

Section 4311 of USERRA, "the 'discrimination provision,' prohibits employers from discriminating against veterans on the basis of their military services.  38 U.S.C. § 4311." *Petty II*, 687 F.3d at 716.  Specifically, § 4311 prohibits an employer from denying a military service member "initial employment, reemployment, retention in employment, promotion, or any benefit of employment ... on the basis of that membership, ... performance of service, ... or obligation." 38 U.S.C. § 4311(a).  This provision is violated "if the person's membership, ... service, ... or obligation for service ... is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of

48

such membership." *Id.* at § 4311(c)(1).  By these very terms, USERRA "establishes a two-step burden-shifting framework by which to analyze such claims [of discrimination]."

*Murphy v. Radnor Twp.*, 542 F.App'x 173, 176 (3d Cir. 2013).

> First, the plaintiff alleging the discriminatory act bears the initial burden of showing that the employee's military service was a substantial or motivating factor in the adverse employment action.
>
> If the plaintiff meets his burden, the burden of proof then shifts to the employer, who must prove that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service. This standard of proof is the "but for" test.

*Id.* at 176-177 (internal citations and quotations omitted).  "Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration."  *Id.* at 177.

Thus, in order to prevail on his § 4311 discrimination claim, Plaintiff was required to first prove to the jury, by a preponderance of the evidence, that his military status was a motivating or substantial factor in the Defendant's adverse employment action.  To determine whether an individual's military status was a motivating factor in the employer's adverse employment action, the jury was permitted to consider factors such as, but not limited to, proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of

certain employees compared to other employees with similar work records or offenses. *See Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

At the conclusion of the trial, the jury returned a verdict finding that Keslosky had not "prove[n] by a preponderance of the evidence that his military service and/or membership in the uniformed service was a motivating factor in any adverse employment action" Defendant may have committed. (Doc. 280, at Question 2). Having found that Plaintiff failed to meet his burden, the burden of proof did not shift to the Defendant and thus the jury did not answer whether the Defendant had proved that it would have taken the same adverse employment action regardless of Plaintiff's military service.

Upon review of the evidence presented at trial, a reasonable jury could have found that Plaintiff failed to prove by a preponderance of the evidence that his membership or service in the uniformed service was a motivating factor in any adverse employment action taken by the Borough of Old Forge.

Here, in arguing that the jury's verdict as to the discrimination claim was against the weight of the evidence, Plaintiff first references an August 10, 2004 letter from then-Mayor Torquato to the Borough Council, the Borough Manager, and then-Solicitor Rinaldi, and the testimony relating to this letter. Plaintiff reasons that because the Court found at summary judgment that this letter presented a triable issue of fact as to whether Plaintiff's military status was a motivating factor in Defendant's adverse employment actions, then the jury should have found the same to, in fact, be a motivating factor. (Doc. 299 14-15; *see* Mem.

Op. Granting in Part and Denying in Part, Summ. J. to Borough of Old Forge Defs., Doc. 167 at 55).[11]

With respect to the August 10, 2004 letter at issue, after Plaintiff wrote to the Old Forge Chief of Police on August 1, 2004 and informed him that he had been "honorably released from active duty," then-Mayor Torquato wrote an August 10, 2004 letter to "All Members of Borough Council[;] Margaret Mazza, Borough Manager[;] Chief Frank Avvisato[; and] Mr. William Rinaldi, Esquire," wherein he provided the recipients with "information ... provided to [him] at [his] request to have additional details regarding Mr. Keslosky's separation from the U.S. Army and National Guard." (Aug. 1, 2004 Letter from Plaintiff to Chief of Police, Pl.'s Ex. 10; Aug. 10, 2004 Letter from Mayor Torquato to Borough Council Members, Pl.'s Ex. 12). In the letter, Mayor Torquato explained:

> [he] had requested this additional information from Mr. Keslosky in an effort to protect the Borough of Old Forge from being subjected to a situation involving possible medical conditions or health issues which may directly relate to the suitability of Mr. Keslosky to return to employment in the Old Forge Police Department.

(*Id.*). At trial, Torquato testified as to his motivation for sending the letter:

---

[11] Plaintiff further argues that "the jury erred for the same reasons set forth in the Plaintiff's argument related to why the jury's verdict was against the weight of the evidence on the issue of whether the Defendant violated Section 4313(a)(4)" and therefore, if the jury erred with respect to the § 4313(a)(4) claim, "it was impossible for the jury to find the same evidence as a motivating factor in support of a finding of discrimination under Section 4311 of USERRA." (Doc. 299, at 15). Having set forth this vague, confusing, and arguably incoherent assertion, Plaintiff provides no reasoning to explain why any asserted error with respect to the reemployment claim renders the jury's determination as to the discrimination claim "impossible" or to otherwise demonstrate why the jury's finding as to the discrimination claim was erroneous or against the weight of the evidence.

Q.      All right.  Did you understand that in August of 2004 he returned - - or I'm sorry, in the summer of 2004 he returned from the military?

A.      Yes, I am [*sic*].

Q.      And how did you become aware of that?

A.      I received a memo from, again, then Chief Avvisato I believe, with a copy of Mr. Keslosky's discharge papers.

Q.      Okay.  When you received that, what did you do?

A.      Well, I - - there were some issues.  I acknowledged the fact that I had some issues with some of the information contained or redacted from the document.

Q.      Okay.

A.      There were some questions in my mind about what was redacted and why they were redacted, so - -

Q.      And what did you do about that?

A.      I brought it up to council.
. . . .

Q.      Is this the text of the letter you wrote from [*sic*] council?

A.      Yes, it is.

Q.      And again, your - - what was your concern again?

A.      Well, the concerns I had were, you know, you're looking at a document, certain areas of the document were blacked out; they were redacted.  So, for example, the reason for the discharge - - honorable, those are the document - - the parts that I thought were important for looking out for the borough's interest to see why - - you know, what were they?  Were they just personal information or was there something there that should have been known to the borough.

(Trial Tr., July 11, 2017, at 181-182).

The jury also heard testimony from Keslosky during cross-examination that he believed Torquato's request for additional information in response to his August 1, 2004 letter was reasonable:

Q.     Okay.  So now you come back and you present to the borough the document that you - - your counsel talked about earlier, I think it's Plaintiff's Exhibit 10.  And you present the borough a letter that you - - to Chief Avvisato, is that correct?

A.     Yes, sir.

Q.     All right.  And this is that document, correct?  Do you see it in front of you?

A.     What was the date of the letter?

Q.     The date of the letter is August 1 - -

A.     Yes, uh-hum.

Q.     - - 2004?

A.     That's correct.

Q.     All right.  And just for the record, on the bottom of this is P-10.

A.     Yes.

Q.     All right.  So, in the body of this letter what you were saying is that you have been honorably released from the Army?

A.     Uh-hum.

Q.     And you've enclosed a DD-214, correct?

A.     Yes.
. . . .

Q.      All right.  And this document, at the bottom where my finger is pointing, at the bottom underneath where there are signatures?

A.      Yes.

Q.      This portion of the document is missing, correct?

A.      Well, the top also is.

Q.      There's redactions at the top and there's redactions at the bottom.

A.      Yeah.  Those are personal items that - - as per what I was told by the Army, that my own employer was not entitled to.

Q.      Okay.  But this document does not say you were honorably discharged in any way, shape or form?

A.      No, sir, it does not.  That's page one.
. . . .

Q.      This - - you did not provide anything which indicated how you were - - what the terms of your discharge were?

A.      Not at that time.

Q.      All right.   And the mayor subsequently asked you to provide that, correct?

A.      That's correct.

Q.      And you did provide that subsequently?

A.      Yes, sir, I provided page 4.

Q.      And that was a reasonable request by the mayor, would you not agree?

A.      I believe so.

(Trial Tr. July 11, 2017, at 99-101).  This testimony from Torquato and Keslosky provided the jury with a reasonable basis to find the August 10, 2004 letter did not demonstrate, or support a finding, that any adverse employment action on the part of the Borough of Old Forge was motivated by Plaintiff's military status or duty.

The jury heard further testimony from Torquato at trial which, if believed, could support a finding that Defendant's actions were not motivated by Plaintiff's military status. For example, Torquato testified that after Keslosky was deployed, this had no impact on his department and was not a concern for him:

> Q.      Okay.  Once you found out that he had been activated for military deployment, what did you do?
>
> A.      Nothing.
>
> Q.      And why was that?
>
> A.      Well, there was nothing - - there was nothing for me to do.  I mean, he was technically deployed in the military for whatever purpose that he was deployed for, I wasn't aware of it, but it didn't impact my department so therefore it wasn't really a concern of mine.

(Trial Tr. July 11, 2017, at 180-181).  Torquato also testified that he "was very strong on the position that no officer, whether that be Mr. Keslosky or anyone else, would work in my department, be put on a schedule without having the proper credentials", explaining that he "cared because not only the integrity of the police department is on the line, but the official recognition of that department."  (*Id.* at 178).

Torquato testified that after Keslosky returned from active service, the Mayor had no issue with reemploying Keslosky as a police officer upon the completion of his MPOETC certification.  With respect to Keslosky's request to be scheduled on the police roster, Torquato stated:

> Well, my position was then, and if I had served continuously to this point, his request to be put back on the schedule, as long as the borough had hired him and he met the requirements in having the certifications and so forth, there wouldn't have been no reason why he wouldn't have been added to the schedule.

(Trial Tr., July 11, 2017, at 183).

In addition to Torquato's testimony, the jury heard and saw a significant amount of testimony, as set forth throughout this opinion, which could lead the trier of fact to conclude that the Borough of Old Forge's actions in attempting to qualify Keslosky as a police officer demonstrate that the Borough did not take into account, consider, or condition its employment actions on Plaintiff's military status or duty.

For these reasons, the August 10, 2004 letter, and surrounding events, relied upon by Keslosky in arguing that the verdict was against the weight of the evidence, do not entitle Keslosky to relief pursuant to Rule 59.

In further support of his assertion that the verdict was against the weight of the evidence, Plaintiff asserts that this Court erred when it precluded Plaintiff's counsel from eliciting "certain testimony" from Steven Lowe.[12]

At trial, Plaintiff called Steven Lowe, a Police Officer for the Borough of Old Forge from 2003 to 2008, as a witness.  (Trial Tr. July 10, 2017, at 131).  On direct examination, Plaintiff's counsel inquired: "Prior to being hired full-time, what if any problems did you have with the police department with your military status and being a veteran?".  (*Id.* at 134).  The Court overruled Defendant's objection to this question and Lowe responded as follows:

> I believe I was third on the list after I took the test for full-time. I should have received ten points due to the fact I was in the military. I didn't receive them. I asked Larry Semenza about them, and he stated that it was an oversight and he would talk to the commission about putting it on.

(*Id.* at 134-135).  At that time, Defendant again objected and the Court explained that "what we're talking about here is not relevant to the issues in this case."  (*Id.* at 135).

Under the Federal Rules of Evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Irrelevant evidence is not

---

[12] Plaintiff's challenge to an evidentiary ruling at trial is not properly raised in support of an argument that the verdict is against the weight of the evidence.  Rather, a Court may grant a new trial pursuant to Rule 59 for a number of reasons including to correct a previous ruling "on a matter that initially rested within the discretion of the court, e.g. evidentiary rulings or prejudicial statements made by counsel" or "because [the Court] believes the jury's decision is against the weight of the evidence".  *Klein,* 992 F.2d at 1289-1290.  Thus, consideration of whether a party is entitled to a new trial on the basis of an asserted evidentiary error by the Court is separate from consideration of whether the verdict was against the weight of the evidence.  Nonetheless, because Plaintiff argues that this evidentiary ruling goes to the weight of the evidence, the Court considers the argument in this section of the memorandum opinion.

admissible and relevant evidence is admissible unless otherwise provided by the

Constitution, federal statute, Federal Rules of Evidence, or other rules prescribed by the

Supreme Court.  Fed. R. Evid. 402.

Plaintiff states that Lowe's testimony was relevant because "Lowe was to testify that

he was denied his 10 point hiring preference as veteran of the uniformed services, by the

Defendant, Borough of Old Forge, in 2006, and threatened to bring a lawsuit." (Doc. 299, at

15). Plaintiff thus asserts that the Court erred in sustaining Defendant's second objection to

Lowe's testimony for two reasons.  First, Plaintiff explains that "circumstantial factors to

prove discrimination are to be considered by the fact finder." (*Id*.).  Plaintiff argues that:

> the purpose [of Lowe's testimony] was to establish that Mr. Semenza, as an
> agent of the Defendant, i.e., Officer in Charge did not wish to have any military
> veteran in the police ranks due to the threat it imposed upon him, i.e. hiring
> preference, in his ascension to the rank of Chief of Police. Due to [the] objection
> being upheld, the Plaintiff was unable to establish this important evidence in
> his claim of discrimination.

(Doc. 299, at 16).  Plaintiff's second argument asserts that:

> The testimony that was to be elicited was to prove that the Defendant had a
> pattern of expressed hostility towards members of the military. The Plaintiff
> could have argued to the jury that Steve Lowe had to threaten a lawsuit to
> establish his veteran's preference for hiring, just as the Defendant violated
> USERRA's Section 4313(a)(4) which was clearly delineated as a means to
> keep the Plaintiff, who also had veteran's hiring preference, from attaining the
> position of Chief over Mr. Semenza.

(*Id*.). Plaintiff's arguments fail for a number of reasons.

Preliminarily, Plaintiff ignores the scope of his discrimination claim, as limited by the

Court on summary judgment:

> In the present case, as a matter of law, Keslosky could not return to the Borough of Old Forge as a police officer. Therefore, Plaintiff cannot demonstrate that the Borough discriminated against him under § 4311 with respect to § 4313(a)(2)(A) or (B) or § 4313(a)(3). Plaintiff's cause of action under § 4311 is only viable if there was a position available to him pursuant to the catch-all provision of § 4313(a)(4).

(Doc. 167, at 52).  As a result of the limited nature of the discrimination claim, Lowe's testimony as to any hostility by Semenza towards military veterans in the Borough of Old Forge Police Department is of little to no relevance where it was undisputed at the time of trial that Keslosky could not have been reemployed "in the police ranks" due to his lack of certification.

Similarly, Plaintiff's assertion that Lowe's testimony may have helped establish that the Borough, through Semenza, violated USERRA "as a means to keep the Plaintiff . . . from attaining the position of Chief over Mr. Semenza" ignores this Court's finding on summary judgment, and the undisputed evidence at trial, that Keslosky, through his own actions, was never re-certified as a police officer after his MPOETC certification expired in 1999.  He thus *could not* have attained the position of Chief over Semenza as he was never qualified to be a police officer at any point after 1999.

In addition, with respect to Semenza, as the Court explained in its summary judgment opinion:

> Plaintiff is also unable to bring a USERRA and PMAA claim against Semenza. On August 1, 2004, Keslosky notified the Old Forge Borough Chief of Police, Frank Avvisato, that he had been "honorably released from active duty" and wished to be reinstated.  (Aug. 1, 2004 Letter from Keslosky to Avvisato, Doc. 105, Ex. 19).  Semenza was not voted Officer in Charge until January or

February of 2005 (Dep. of Lawrence Semenza, at 51-52), and was appointed Chief of Police on June 15, 2005 (Notes of Special Meeting of June 15, 2005, Doc. 105, Ex. 54).  Plaintiff points to no evidence on the record indicating that prior to January, 2005, Semenza had the ability to hire or fire Keslosky, that he was Keslosky's immediate supervisor, or that the Old Forge Police Chief had delegated any employment-related responsibilities to Semenza that would have placed Semenza within the definition of an "employer" pursuant to USERRA at the time Keslosky was originally seeking reinstatement upon his return from the armed service.

(Doc. 167, at 41 n.14).  Just as on summary judgment, Plaintiff did not present any evidence at trial that Semenza, at any time after Keslosky returned from military duty, had any hiring or firing authority over Plaintiff or that any employment-related responsibilities within the police department had been delegated to Semenza.  To the contrary, Mayor Torquato testified that "the operation and administration of the police department" was part of his job, including scheduling and "oversee[ing] the administrative details of the department." (Trial Tr., July 11, 2017, at 169, 170).  Torquato further testified that the Borough council was in charge of hiring and firing police officers.  (*Id.* at 170, 177).  Further, to the extent that Plaintiff contends that he was entitled to a position outside of the police department, there was also no evidence that Semenza had any control over, or authority to act on behalf of, the Borough outside of the police department, and therefore Lowe's testimony was entirely irrelevant to the jury's determination as to whether the Borough discriminated against Keslosky by not reemploying him in a different position in the Borough.

As a result, Plaintiff's assertion that Lowe's excluded testimony would "establish that Mr. Semenza, as an agent of the Defendant, i.e., Officer in Charge did not wish to have any

military veteran in the police ranks due to the threat it imposed on him, i.e. hiring preference, in his ascension to the rank of Chief of Police," and would be relevant to his § 4311 discrimination claim as circumstantial evidence that the "employer's expressed hostility towards members protected by USERRA" (Doc. 299 at 16) is without merit.  As the Court ruled at summary judgment, Semenza was not an agent of the Borough of Old Forge at the time Keslosky was originally seeking reinstatement upon returning from the armed service, in August of 2004.  (Doc. 167, at 41 n.14).  Even assuming Semenza said or did anything to Lowe that might have expressed hostility towards military members protected by USERRA, it would not have represented the Borough of Old Forge's actions at the time Plaintiff was seeking reemployment in 2004.  Thus, any testimony from Lowe regarding Semenza is not probative of any fact of consequence in this action.

Finally, despite the irrelevance of Lowe's testimony as to Semenza's alleged hostility towards military veterans, Lowe did testify as to his belief that Semenza was disrespectful of veterans.  At trial, Lowe testified as follows:

> Q.   At any time during your employment have you personally heard the chief of police, Larry Semenza at that time, degrade or speak ill of veterans?
>
> A.   Yes.
>
> Q.   Do you have an example?
>
> A.   He would disrespect Pat Walsh, who was airborne military.

(Trial Tr., July 10, 2017, at 136).  Thus, the jury did hear testimony that, in Lowe's opinion, Semenza "had a pattern of expressed hostility towards members of the military" (Doc. 299,

at 16), and the jury was free to consider this testimony in weighing the evidence and reaching its verdict.

Consequently, any testimony by Lowe that he was "denied his 10 point hiring preference as veteran of the uniformed services, by the Defendant, Borough of Old Forge, in 2006, and threatened to bring a lawsuit" (Doc. 299, at 15) was of no relevance to the issues before the jury where that testimony did not set forth any facts which were "of consequence in determining the action", Fed. R. Civ. P. 401.

In sum, Plaintiff's arguments with respect to why the verdict was against the weight of the evidence are without support. Here, it was Plaintiff's burden to prove that his military status was a motivating factor in any adverse employment action taken by the Defendant. A reasonable trier of fact could find, in light of the testimony and exhibits presented at trial, that Plaintiff failed to meet his burden. Thus, the Court finds that the evidence presented at trial provided the jury with a sufficient basis to allow a finding that Keslosky's military status was not a motivating factor in any adverse employment action taken by the Borough of Old Forge. The jury's verdict was not against the weight of the evidence presented on Plaintiff's § 4311 discrimination claim, and "a miscarriage of justice" will not result in allowing the verdict to stand. Therefore, Plaintiff is not entitled to a new trial on this claim.

### 3.  Additional Bases for New Trial

Finally, Plaintiff requests that the Court grant him a new trial due to several alleged errors by the Court at trial. Specifically, Plaintiff asserts that the Court erred by (1) admitting

Defendant's exhibits 10, 11, 23, as well as related testimony from witnesses, and (2) by giving Jury Instruction 12A. (Doc. 299, at 17-20). The Court will address these arguments in turn.

Plaintiff states that the Court erred in admitting, "over objection", the following exhibits: (1) Defendant's Exhibit 10, an August 10, 2004 letter from Mayor Torquato to MPOETC; (2) Defendant's Exhibit 11, an August 16, 2004 letter from Major Mooney to Mayor Torquato; and (3) Defendant's Exhibit 23, a February 22, 2005 letter from Major Mooney to Semenza. (Doc. 299 at 17). Plaintiff objects to the admission of these letters on the basis that each one references "a highly prejudicial and irrelevant opinion of a psychiatrist, Dr. Rieger, from a workers' compensation case years prior to the issue in this case, i.e. whether the Defendant met its burden under Section 4313(a)(4) as of August 2004, or thereafter." (Id.). At trial, Plaintiff only provided substantive argument during his objection to Defendant's Exhibit 11. He renewed this objection without any further argument when Defendant later moved for the admission of Exhibits 10 and 23. (Trial Tr. July 11, 2017 at 103-105, 184, 256-257). As Plaintiff presented only a single argument at trial and in his brief with respect to all three of Defendant's exhibits, the Court addresses the admissibility of all three exhibits in a single analysis.

On July 11, 2017, during cross-examination of Keslosky, Defendant's counsel asked Plaintiff to review a document marked as Defendant's Exhibit 11. (Trial Tr., July 11, 2017, at 103). Keslosky confirmed that the letter was correspondence from Major Mooney,

director of MPOETC, to the Borough manager, and that he had seen and reviewed the letter prior to trial.  (*Id.*).  Having laid the foundation for the letter, Defendant moved for the letter's admission, to which Plaintiff objected.

The letter at issue, dated August 16, 2004, is written by Major Mooney to Mayor Torquato and explains that Keslosky's MPOETC certification expired June 30, 1999 and sets forth the necessary documents and examinations which must be submitted in an "application for certification packet" in order for Keslosky "to become eligible for certification as a police officer." (Def.'s Ex. 11). One of the documents/examinations required for certification was a "Psychological Examination Report." (*Id.*).  Following the enumeration of the required documents/examinations, the letter states:

> We would suggest that when the appointment is made for psychological testing and interview that a release of psychiatric information is executed which would authorize the release of the psychiatric findings provided by Dr. Wolfram Rieger at the time of the Workers' Compensation Appeal Hearing to the licensed psychologist hired by the Old Forge Borough to provide such services.  At the time of psychological testing, a determination of fitness for police duty is evaluated against the essential tasks of a police officer and psychological standards outlined in § 203.11(a)(7)(i-iii) of 37 Pa. Code Chapter 203.

(*Id.*).

In objecting to the admission of this letter, Plaintiff's counsel explained that he was only objecting to the portion of the letter that referenced Dr. Wolfram Rieger's findings:

> MR. SCHERMERHORN:   I don't have an objection to the letter, except for just the last paragraph that indicates the psychiatric findings provided by Dr. Reiger and the Work Comp.  It's not relevant to the issue of August 1, '04 and moving forward.  And this letter is just going to be used later with another attempt to

bring in the actual like report or talking about the report of Reiger.  That's not even relevant.

(Trial Tr. July 11, 2017, at 104).

Later that same day of trial, Defendant's Exhibit 23 was admitted over Plaintiff's renewed objection "to a part of it."  (*Id.* at 257).  With the exception of the first sentence, Defendant's Exhibit 23, a letter dated February 23, 2005 from Major Mooney to Sgt. Semenza, is identical to Exhibit 11.

Defendant's Exhibit 10, also offered into evidence on July 11, 2017, is a letter dated August 10, 2004 from Mayor Torquato to Major Mooney, entitled "Employer's Rights to Request Psychiatric Examination."  (Def.'s Ex. 10).  As explained by Torquato at trial, Defendant's Exhibit 11, dated August 16, 2004, was a response to this letter of August 10, 2004.  (Trial Tr., July 11, 2017, at 186-187).  The August 10, 2004 letter "request[s] direction and guidance from your organization [MPOETC] as to the rights we have as the employer to demand complete psychiatric and physical examinations of Mr. Keslosky before he is allowed to re-join our police department."  (Def.'s Ex. 10).  The letter also states:

> I will also mention Dr. Wolfgaang [*sic*] Rieger, MD, Clinical Associate Professor of Psychiatry at the University of Pennsylvania testified on the borough's behalf in the original Worker's Compensation hearing.  Dr. Rieger issued a report based on his psychiatric evaluation of Mr. Keslosky dated October 9, 2001.  In part his report included the following quotation: <u>"When I examined Mr. Keslosky he was not disabled from a psychiatric point of view.  However, he should not return to any type of police work because his underlying paranoid personality disorder makes him unsuitable for such work."</u>

(*Id.*) (emphasis in original).

Here, the first exhibit at issue offered into evidence to which Plaintiff objected was

Defendant's Exhibit 11.  At trial, after engaging in a Rule 403 balancing analysis, the Court

ruled that Defendant's Exhibit 11 was admissible:

> MR. DURKIN (Defendant's counsel):    It's part of the case, your Honor.  I mean, this is an official requirement from MPOETC that everyone acknowledges.  It sets the standard.  This is what he had to do.  He had to do. You know, you can't remove from the case one of the things he had to do was provide Reiger's [*sic*] report.
>
> THE COURT:    This is - - unquestionably I understand.  This is unquestionably whether Richard Mooney - - Major Mooney sent to the borough outlining what the requirements were for MPOETC certification, is it not?  Is there a dispute as to that?
>
> MR. SCHERMERHORN (Plaintiff's counsel):    Oh, no.  That's why I said I only have an objection to the last paragraph, that I didn't want it published to the jury.  And the letter itself I don't have a problem with.  It's just I can't separate out the paragraph without objecting to.
>
> THE COURT:    If the letter is admissible it's admissible without my ability to redact it.  I mean, unless - - you're asking me essentially to redact this letter?
>
> MR. SCHERMERHORN:    Well, Major Mooney is making the suggestion about something with medical and what they should do.
>
> THE COURT:    It's in connection with what appears to be his requirement of a psychological examination report.
>
> MR. SCHERMERHORN:    From years before.  And there was already a fitness for duty 12/18 of - -
>
> THE COURT:    I understand that.  But my point is Mr. Mooney has made it clear that he believes that a psychological examination report must be provided as part of the MPOETC certification, and this is his suggestion for compliance with that.  So, I don't know how it's not relevant.  And if I do - - if I do a basic Rule 403 balancing test here, I think the probative value here is not outweighed by the danger of unfair prejudice.  So I'm going to allow it in.

(Trial Tr. July 11, 2017, at 104-105).

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.  The Rule 403 balancing between the probative value of the evidence sought to be excluded and the prejudicial effect if the evidence is admitted, is "at its core, an essentially discretionary one that gives the trial court significant latitude to exclude evidence." *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 156 (3d Cir. 2002).  *See also, McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) ("A trial court is afforded substantial discretion when striking a Rule 403 balance with respect to proffered evidence.") (internal citation and quotation marks omitted).  As such, to show an abuse of discretion, the party asserting error "must show the district court's action was arbitrary, fanciful or clearly unreasonable", and the trial court's exercise of discretion will not be disturbed "unless no reasonable person would adopt the district court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002) (internal citations and quotation marks omitted); *see also, Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 (3d Cir. 1990) ("[A] trial judge's decision to admit or exclude evidence under Fed. R. Evid. 403 may not be reversed unless it is arbitrary and irrational.") (internal citation and quotation marks omitted).[13]

---

[13] As the Supreme Court has explained:
In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings. This Court has acknowledged:

Here, a Rule 403 balancing test with respect to the references to Dr. Rieger's psychiatric report demonstrates that the evidence was both relevant and that any prejudice was not substantially outweighed by the evidence's probative value.

First, as Major Richard Mooney stated in the August 16, 2004 letter, a psychological examination is a necessary component in obtaining MPOTEC certification, which is required to be a municipal police officer in Pennsylvania.  Thus, mention of a psychiatric report in connection with one of the requirements of obtaining MPOETC certification is relevant to this matter as "it has [a] tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action," Fed. R. Evid. 401.

In addition, Mayor Torquato, in seeking the guidance of MPOETC's director by letter of August 10, 2004, had a legitimate basis to make reference to the report of Dr. Rieger because the report was issued in connection with Keslosky's Workers' Compensation claim.  That claim was founded on Keslosky's assertion that he had suffered a psychological injury while previously working as a police officer for the Borough of Old Forge.  It was thus

---

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403...." *United States v. Abel*, 469 U.S. 45, 54, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, p. 4-16 (3d ed. 1999).

*Sprint/United Mgmt Co. v. Mendelsohn,* 552 U.S. 379, 384 (2008).

appropriate for Torquato to raise this issue with Mooney as psychological fitness is one criterion which must be met for MPOETC certification.  The probative value of the reference to Rieger's report, because it addresses a central issue relating to MPOETC certification, is entirely relevant and presented no danger of unfair prejudice.

The reference to Dr. Rieger's psychiatric findings was also relevant to, and probative of, Keslosky's § 4311 discrimination claim.[14]  Had Plaintiff proved that any adverse employment action by Defendant was motivated by Plaintiff's military status, the burden would have shifted to Defendant to show that it nonetheless would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service. *Murphy*, 542 F.App'x at 176-177.  As a result, the references to Dr. Rieger's report were relevant to the jury's determination of whether Defendant had other, non-discriminatory reasons for any adverse employment action that it may have taken.[15]  Further, any prejudice which may have arisen due to the references to this report was minimal in comparison to the probative value of this evidence.

Finally, it must be noted that it was Plaintiff who first referenced Dr. Rieger at trial. Plaintiff's counsel called Frank Avvisato, former Chief of Police for the Borough of Old Forge

---

[14] Although Plaintiff's brief only addresses the relevance and prejudice of Exhibits 10, 11, and 23, with respect to his § 4313(a)(4) reemployment claim, these exhibits are also relevant to, and probative of, the federal and state law discrimination claims.

[15] The fact that the jury never reached this issue in returning its verdict is not relevant to the Court's analysis where, at the time the evidence was presented, Defendant bore the burden of proving that it had other, non-discriminatory reasons, for its adverse employment action should the jury have later found that Plaintiff had met his burden on the discrimination claims.

from 1989 to 2005, as a witness.  (Trial Tr., July 11, 2017, at 3, 6).  Because Mr. Avvisato

was deceased, portions of his deposition testimony were read into evidence.  During his

deposition read to the jury, Avvisato testified that, at some time after Torquato was elected

Mayor, Avvisato was called to the Mayor's office to discuss a letter to MPOETC with

Torquato and Semenza. (*Id.* at 10).  Avvisato explained that "[t]he letter was regarding

Officer Keslosky and something to do with a claim that he made and recommendations or

references from a doctor down in Philadelphia." (*Id.* at 11).  Avvisato testified thereafter:

> **Q**. In the letter that you're referencing to MPOETC, I believe at one point-- it's
> in the evidence somewhere—there was a letter written with regards to a
> reference to a Worker's Compensation claim?
>
> **A**. That's it.
>
> **Q**. And a report by the Borough's independent Dr. Reiger, does that refresh
> your memory?
>
> **A**. Yes, that refreshes my memory, yes.

(*Id.* at 12).  Avvisato later characterized his meeting with Torquato and Semenza about the

letter as follows:

> It was a very short conversation. I didn't want to be there. They showed me the
> letter. They asked what I thought. And I really didn't give them any information.
> If you want to do it, I said, do it. It's up to you. That's the first I heard of the
> doctor's information that was in the letter, Dr. Reiger.

(Trial Tr., July 11, 2017, at 16).  Thus, prior to Defendant's requests to move Exhibits 10,

11, and 23 into evidence, Plaintiff had already raised the issue of Dr. Rieger's report, and

testimony had been presented to the jury that Dr. Rieger had made "recommendations" about Keslosky's mental health which the Borough found necessary to provide to MPOETC.

A Rule 403 balancing analysis thus demonstrates that the Court did not abuse its discretion in finding the relevance of the psychiatric report referenced in Defendant's Exhibits 10, 11, and 23 was not substantially outweighed by a danger of unfair prejudice to Plaintiff.  For the aforementioned reasons, Plaintiff's argument that the reference to Dr. Rieger's psychiatric report was prejudicial or misleading to the jury in violation of Federal Rule of Evidence 403 fails.

Plaintiff additionally requests a new trial on the basis that "[t]he Court erred in the giving of Jury Instruction #12A to the jury as it was confusing and mislead the jury as to the placement of the burden of the Defendant for all issues related to § 4313(a)(4) of USERRA." (Doc. 299 at 19).  Plaintiff specifically objects to the following portion of Jury Instruction 12A:

> Mr. Keslosky bears the burden of proof to show that the Borough of Old Forge failed to re-employ him in an appropriate position, that is, the position which reflected with reasonable certainty the pay, benefits, seniority and other job perquisites that Plaintiff would have attained but for his military service or a position of like seniority, status and pay or to his pre-service position or to a position which was the nearest approximation to any of these positions.  The Borough of Old Forge bears the burden of proof to show that Mr. Keslosky was not qualified for the re-employment Plaintiff claims.

(Jury Charge, Doc. 279, at 9; *see also*, Trial Tr. July 12, 2017, at 131).[16]  Plaintiff asserts that this instruction "was confusing because it makes it appear that the Plaintiff has the burden of proof to show that the Borough of Old Forge failed to re-employ him in an appropriate position."  (Doc. 299 at 19-20).

To correct any alleged confusion, Plaintiff asserts that the Court should have adopted the jury instruction he states that he suggested during the charge conference. Plaintiff posits the instruction should have read: "you must decide whether the Borough of Old Forge failed to use reasonable efforts to enable the Plaintiff to become qualified in [the] nearest approximation to the position he had prior to leaving for service in the uniformed services."  (Doc. 299 at 19).

"Rule 49 of the Federal Rules of Civil Procedure grants district courts wide discretion to craft special verdict forms and interrogatories using 'any method that the court considers appropriate.'  *See also* 9B Wright & Miller, *Federal Practice and Procedure* § 2506 (3d ed. 2014). Trial courts 'must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue.'  Fed.R.Civ.P. 49(a)."  *Sprinkle v. AMZ Mfg. Corp.*, 567 F.App'x. 163, 164-165 (3d Cir. 2014).  A court's refusal to give an instruction requested by a party is not an abuse of discretion where matters were adequately covered in the other instructions given to the jury.  *Mulholland v. Hoffer*, 2007 WL 1276915 at *8

---

[16] The Court relied upon the Eleventh Circuit Court of Appeals Model Civil Jury Instructions in formulating the first sentence of this instruction.  The final sentence of the instruction, addressing Defendant's burden of proof, is derived from the Sixth Circuit's decision in *Petty I*.

(E.D.Pa. 2007) (citing *United States v. George*, 625 F.2d 1081, 1087 (3d Cir. 1980);

*Delgrande v. Temple Univ.*, 1997 WL 560176, at *2 (E.D.Pa. 1997), *aff'd* 151 F.3d 1024 (3d

Cir. 1998)).  *See also, Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1124 (3d Cir. 1992)

("a trial judge has broad discretion concerning the particular language used in a jury

instruction.").

> A party has no vested interest in any particular form of instructions; the language of the charge is for the trial court to determine. If, from the entire charge, it appears that the jury has been fairly and adequately instructed, . . . then the requirements of the law are satisfied.

*James v. Continental Ins. Co.*, 424 F.2d 1064, 1065 (3d Cir. 1970).  *See also, Tigg*, 962

F.2d at 1123 (explaining that the "'charge, taken as a whole and viewed in light of the

evidence, [must] fairly and adequately submit[ ] the issues in the case to the jury.'") (quoting

*Link v. Mercedes-Benz of N. Am.*, 788 F.2d 918, 920 (3d Cir. 1986)) (alterations in original).

Here, the Court's instruction with respect to Plaintiff's burden of proof was adopted

from the Eleventh Circuit Pattern Jury Instructions, as Plaintiff acknowledges (Doc. 299, at

19) and satisfied the elements of § 4313(a)(4) necessary for the jury to understand to make

its finding.  *See* 11th Cir. Jury Instruction 4.20 – Reemployment.  The Court's instructions

explained the requirements of USERRA, its protections, the order of priority to determine

which reemployment position is appropriate, what constitutes an "appropriate position", and

how to determine if it is of like seniority, status, and pay.  (*See* Doc. 279, at 8-10). As "[a]

party has no vested interest in any particular form of instructions," and "the language of the

charge is for the trial court to determine," the fact that Plaintiff wanted the instruction written in a different way is not a meritorious objection.

Plaintiff's supporting brief also misrepresents the Court's instruction. Plaintiff states that his "issue" is the jury's instruction's statement that "'I instruct you that the borough took reasonable measures to qualify him.'" (Doc 299 at 19). However, the instruction the Court read, and provided, to the jury stated:

> In making your decision, I instruct you that because an individual must have a current municipal police officer's education and training commission certification prior to performing the duties of a municipal police officer and because Michael Keslosky's police officer certification expired in 1999, he was not qualified to be reinstated in the capacity of a police officer upon his return from military service. Further, I instruct you that the Borough took reasonable measures to qualify Michael Keslosky *for the position of police officer*.

(Doc. 279, at 10-11; Trial Tr. July 12, 2017, at 132) (emphasis added).

Thus, in support of his argument, Plaintiff's brief misstates and improperly truncates the Court's instruction, omitting critical language provided to the jury. As there was no triable issue of fact as to whether Plaintiff was qualified for his pre-service position of police officer, his eligibility for reemployment, if any, would derive from § 4313(a)(4). It was necessary to instruct the jury on this matter. Under § 4313(a)(4), it was also necessary to instruct the jury that Plaintiff's lack of qualification for his pre-service position of police officer was not due to the Borough's failure to take reasonable measures to qualify him. Plaintiff's misrepresentation of this Court's instruction incorrectly suggests that the Court instructed the jury that Defendant took reasonable efforts to qualify Plaintiff for *some position other than*

*police officer*.  The Court gave no such instruction.  The question of whether Defendant took reasonable efforts to qualify Plaintiff for some position other than that of a police officer was explicitly left for the jury to determine.  Thus, the Court's instruction, read as a whole, properly instructs the jury on the relevant law under USERRA and its reemployment provisions.

Plaintiff argues that the Court's instruction is "confusing because it makes it appear that the Plaintiff has the burden of proof to show that the Borough of Old Forge failed to re-employ him in an appropriate position." (Doc. 299 at 19-20).  However, as set forth by the Eleventh Circuit, this is a correct statement of Plaintiff's burden at trial under § 4313(a)(4) and Plaintiff has provided no case law or other authority to support his assertion that the Eleventh Circuit's instruction was inaccurate or confusing.

Finally, in his Motion for a New Trial, Plaintiff submits that the "Court erred in dismissing at summary judgment all of Plaintiff's claims set forth in his Amended Complaint, except those brought under USERRA and PMAA." (Doc. 299 at 20).  In doing so, "Plaintiff incorporates his Memorandum of Law and Statement of Material Facts (and answer to Defendant's Statement of Material Facts) in opposition to the Defendant's Motion for Summary Judgment herein for the purpose of (1) reconsideration, and (2) to preserve all issues addressed by the Court in its Memorandum Decision dated December 11, 2014 (ECF Doc. 167) for appeal to the Third Circuit Court of Appeals once the Plaintiff's motions for post-trial relief are decided in this matter." (*Id.*).

Despite Plaintiff presenting this argument in his Motion for a New Trial, Plaintiff's request is in actuality a motion to alter or amend a judgment pursuant to Rule 59(e), which is otherwise considered as a motion for reconsideration. As such, "[a] proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co.,* 52 F.3d at 1218). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-128 (2d ed. 1995)). "Motions under Rule 59(e) should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Ruscavage v. Zuratt*, 831 F.Supp. 417, 418 (E.D. Pa. 1993).

Here, it is unnecessary to reach the merits of Plaintiff's motion for reconsideration as he has not put forward any argument in support of any of the three grounds for a Rule 59(e) motion. As to the claims dismissed by the Court at summary judgment, Plaintiff has pointed to no intervening change in controlling law, no availability of new evidence, and nothing to demonstrate a need to correct clear error of law or prevent manifest injustice. Plaintiff devotes a single sentence of his brief to this reconsideration request, which the Court has quoted in full above. As such, Plaintiff has provided no reason for the Court to reconsider

any part of its summary judgment decision.  Further, Plaintiff's attempt to "incorporate" his prior summary judgment filings is inappropriate and must be rejected where the Middle District of Pennsylvania Local Rules specifically prohibit such action.  *See* M.D.Pa. L.R. 7.8(a) ("No brief may incorporate by reference all or any portion of any other brief.").

Therefore, Plaintiff's request for a new trial on the basis that the Court erred in dismissing at summary judgment all of Plaintiff's claims set forth in his Amended Complaint, except those brought under USERRA and PMAA, will be denied.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b) (Doc. 287) and his Post-Trial Motion for a New Trial Pursuant to Federal Rule of Civil Procedure 59 (Doc. 288) will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge